# 25-2380-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄

TUFAMERICA INC., DBA TUFF CITY RECORDS,

*Plaintiff-Appellant,*

*v.*

SONGS OF UNIVERSAL, INC.,

*Defendant-Appellee,*

UNIVERSAL MUSIC PUBLISHING, INC.,

*Defendant.*

————————————

*On Appeal from the United States District Court
for the Southern District of New York*

## REDACTED APPENDIX

PARNESS LAW FIRM, PLLC
*Attorneys for Plaintiff-Appellant*
136 Madison Avenue, 6th Floor
New York, New York 10016
212-447-5299



**Table of Contents**

**Page**

District Court Docket Entries ................................................................. A1

Rule 7.1 Statement of Defendant Universal Music Publishing, Inc.,
    dated September 23, 2024 ................................................................. A11

Letter from Joelle A. Milov to the Honorable Dale E. Ho
    regarding Universal Companies' Motion to Seal,
    dated September 23, 2024 ................................................................. A12

Declaration of Joelle A. Milov in Support of Universal
    Companies' Motion to Seal, dated September 23, 2024 ................ A16

Amended Complaint, dated October 28, 2024 ...................................... A18

        Exhibit A to Amended Complaint -
        Copy of "Impeach the President"
        Copyright Registration ............................................................... A30

Rule 7.1 Statement of Defendant Songs of Universal, Inc.,
    dated November 12, 2024 ................................................................. A34

Defendant's Notice of Motion to Dismiss,
    dated November 12, 2024 ................................................................. A35

Defendant's Memorandum of Law in Support of
    Motion to Dismiss, dated November 12, 2024 .............................. A36

Declaration of Lawrence Ferrara, Ph.D.,
    dated November 8, 2024 ................................................................. A64

Declaration of Joelle A. Milov in Support of Defendant's
    Motion to Dismiss, dated November 12, 2024 .............................. A68

        Exhibit A to Milov Declaration -
        " Impeach the President" performed
        by The Honey Drippers
        (Audio File being provided)...................................................... A70

# **Table of Contents**
## **(Continued)**

**Page**

Exhibit B to Milov Declaration -
"Real Love" performed by Mary J. Blige
(Audio File being provided) ...................................................... A72

Exhibit C to Milov Declaration -
Printout from Billboard Magazine's website
concerning Mary J. Blige ........................................................... A74

Exhibit D to Milov Declaration -
Printout from the Recording Academy's Grammy
Awards website concerning Mary J. Blige ............................... A78

Exhibit E to Milov Declaration -
Printout from the United States Copyright
Office concerning the registration of the
composition of "Real Love" ...................................................... A82

Exhibit F to Milov Declaration -
Printout from the Recording Industry Association
concerning Mary J. Blige's album, What's the 411 ................. A85

Exhibit G to Milov Declaration -
Printout from the Recording Industry Association
concerning Mary J. Blige's single, "Real Love" ..................... A87

Exhibit H to Milov Declaration -
Printout from Billboard Magazine's website
concerning the "Billboard Hot 100" on December 5, 1992 ..... A89

Exhibit I to Milov Declaration -
Printout of a portion of a February 16, 2024 article,
"The 500 Greatest Songs of All Time,"
published by Rolling Stone ...................................................... A97

Exhibit J to Milov Declaration -
Redacted Excepts from Settlement Agreement
and General Release between TufAmerica, Inc.
and UMG Recordings, Inc., dated July 1, 2022 ..................... A112

**Table of Contents**
**(Continued)**

Page

Letter from Joelle A. Milov to the Honorable Dale E. Ho
regarding Universal Companies' Motion to Seal,
dated November 12, 2024 ....................................................... A115

Declaration of Joelle A. Milov in Support of Universal
Companies' Motion to Seal, dated November 12, 2024 ............... A119

Letter from Joelle A. Milov to the Honorable
Dale E. Ho regarding Motion to Stay Discovery,
dated November 15, 2024 ............................................. A121

Redacted Memorandum of Law in Opposition to
Defendant's Motion to Dismiss, dated November 26, 2024 ......... A124

Declaration of Ethan Lustig, Ph.D.,
dated November 26, 2024 ............................................. A143

    Exhibit 1 to Lustig Declaration -
    Curriculum Vitae of Ethan Lustig, Ph.D. ............................... A148

    Exhibit 2 to Lustig Declaration -
    "Impeach the President" Drums only
    (Audio File being provided) .................................................. A155

Declaration of Hillel I. Parness, for Plaintiff,
in Opposition to Motion to Dismiss Amended Complaint,
dated November 26, 2024 ............................................. A156

    Exhibit 1 to Parness Declaration -
    Redacted Settlement Agreement and General Release
    between TufAmerica, Inc. and UMG Recordings, Inc.,
    dated July 1, 2022 .................................................. A157

Redacted Letter Motion for Leave to File Redacted Complete
Copy of Settlement Agreement, dated November 26, 2024 ......... A169

Order of the Honorable Dale E. Ho, dated November 26, 2024 .......... A171

iii

**Table of Contents**
**(Continued)**

**Page**

Defendant's Reply in Further Support of Motion to Dismiss,
dated December 3, 2024 .................................................................. A175

Order of the Honorable Dale E. Ho, dated April 24, 2025 ................... A190

Detailed Record View of "Impeach the President"
Copyright Registration ..................................................... A194

Alaga Records Disc Jacket, AL-1017-A ............................................. A195

Alaga Records Disc Jacket, AL-1017-B ............................................. A196

Opinion and Order of the Honorable Dale E. Ho,
dated September 23, 2025, Appealed From .................................. A197

Judgment of United States District Court Southern District
of New York, entered September 23, 2025, Appealed From ......... A208

Notice of Appeal, dated September 29, 2025 ...................................... A209

**A1**

SDNY CM/ECF NextGen Version 1.8.4

**Query    Reports    Utilities    Help    Log Out**

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:24-cv-02585-DEH

| | |
|---|---|
| TufAmerica, Inc. v. Universal Music Publishing, Inc. | Date Filed: 04/04/2024 |
| Assigned to: Judge Dale E. Ho | Date Terminated: 09/23/2025 |
| Cause: 17:501 Copyright Infringement | Jury Demand: Plaintiff |
| | Nature of Suit: 820 Copyright |
| | Jurisdiction: Federal Question |

**Plaintiff**

**TufAmerica, Inc.**
*doing business as*
Tuff City Records

represented by **Hillel Ira Parness**
Parness Law Firm, PLLC
136 Madison Avenue, 6th Floor
New York, NY 10007
212-447-5299
Fax: 646-722-3301
Email: hip@hiplaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Universal Music Publishing, Inc.**
*TERMINATED: 10/30/2024*

represented by **Joelle Anne Milov**
Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036
(212)-790-9200
Fax: (212)-575-0671
Email: jam@cll.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Stephen Mandel**
Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036
(212) 790-9291
Fax: (212) 575-0671
Email: rsm@cll.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Songs of Universal, Inc.**

represented by **Richard Stephen Mandel**
(See above for address)
*LEAD ATTORNEY*

**A2**

SDNY CM/ECF NextGen Version 1.8.4

*ATTORNEY TO BE NOTICED*

**Joelle Anne Milov**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/04/2024 | 1 | COMPLAINT against Universal Music Publishing, Inc.. (Filing Fee $ 405.00, Receipt Number ANYSDC-29178147)Document filed by TufAmerica, Inc.. (Attachments: # 1 Exhibit Complaint EX A SR0000136339 IMPEACH THE PRESIDENT).(Parness, Hillel) (Entered: 04/04/2024) |
| 04/04/2024 | 2 | REQUEST FOR ISSUANCE OF SUMMONS as to Universal Music Publishing, Inc., re: 1 Complaint. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 04/04/2024) |
| 04/04/2024 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 04/04/2024) |
| 04/04/2024 | 4 | AO 121 COPYRIGHT - NOTICE OF SUBMISSION BY ATTORNEY. AO 121 Form Copyright for case opening submitted to court for review..(Parness, Hillel) (Entered: 04/04/2024) |
| 04/05/2024 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Dale E. Ho. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 04/05/2024) |
| 04/05/2024 | | Magistrate Judge Gary Stein is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 04/05/2024) |
| 04/05/2024 | | Case Designated ECF. (pc) (Entered: 04/05/2024) |
| 04/05/2024 | | ***NOTICE TO ATTORNEY TO ELECTRONICALLY FILE CIVIL COVER SHEET. Notice to Attorney Hillel Ira Parness. Attorney must electronically file the Civil Cover Sheet. Use the event type Civil Cover Sheet found under the event list Other Documents. (pc) (Entered: 04/05/2024) |
| 04/05/2024 | 5 | CIVIL COVER SHEET filed..(Parness, Hillel) (Entered: 04/05/2024) |
| 04/05/2024 | 6 | ELECTRONIC SUMMONS ISSUED as to Universal Music Publishing, Inc...(pc) (Entered: 04/05/2024) |
| 04/05/2024 | 7 | AO 121 FORM COPYRIGHT - CASE OPENING - SUBMITTED. In compliance with the provisions of 17 U.S.C. 508, the Register of Copyrights is hereby advised that a court action has been filed on the following copyright(s) in the U.S. District Court Southern District of New York. Form e-mailed to Register of Copyrights..(pc) (Entered: 04/05/2024) |
| 04/10/2024 | 8 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 5/29/2024 at 03:00 PM before Judge Dale E. Ho. The conference will be held via Microsoft Teams. The parties should dial in by calling (646) 453-4442 and entering the Phone Conference |

| | | |
|---|---|---|
| | | ID: 924 732 025, followed by the pound (#) sign. SO ORDERED (Signed by Judge Dale E. Ho on 4/10/2024) (ks) (Entered: 04/10/2024) |
| 05/16/2024 | 9 | EX PARTE LETTER MOTION to Adjourn Conference addressed to Judge Dale E. Ho from Hillel I. Parness dated May 16, 2024. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 05/16/2024) |
| 05/20/2024 | 10 | ORDER granting 9 Letter Motion to Adjourn Conference. Application GRANTED. The initial pretrial conference is ADJOURNED from May 29, 2024, to June 14, 2024, at 2:00 P.M. EST. The parties shall join the conference by dialing (646) 453 - 4442 and entering the conference ID: 924 732 025, followed by the pound sign (#). The parties shall file the required joint status letter and proposed case management plan by June 6, 2024. So Ordered. Initial Conference set for 6/14/2024 at 02:00 PM before Judge Dale E. Ho. (Signed by Judge Dale E. Ho on 5/20/2024) (sgz) (Entered: 05/20/2024) |
| 06/06/2024 | 11 | EX PARTE LETTER MOTION to Adjourn Conference addressed to Judge Dale E. Ho from Hillel I. Parness dated June 6, 2024. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 06/06/2024) |
| 06/07/2024 | 12 | ORDER granting 11 Letter Motion to Adjourn Conference. Application GRANTED. The initial pretrial conference is ADJOURNED from June 14, 2024, to July 17, 2024, at 3:00 P.M. EST. The parties shall join the conference by dialing (646) 453 - 4442 and entering the conference ID: 924 732 025, followed by the pound sign (#). The parties shall file the required pretrial materials by July 10, 2024. In light of Plaintiff's representations that it is in communication with Defendant, further extensions will not be granted absent a showing of compelling circumstances. So Ordered. The Clerk of Court is respectfully directed to close the motion at ECF No. 11. Initial Conference set for 7/17/2024 at 03:00 PM before Judge Dale E. Ho. (Signed by Judge Dale E. Ho on 6/7/2024) (rro) (Entered: 06/07/2024) |
| 07/01/2024 | 13 | WAIVER OF SERVICE RETURNED EXECUTED. Universal Music Publishing, Inc. waiver sent on 6/24/2024, answer due 8/23/2024. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 07/01/2024) |
| 07/09/2024 | 14 | THIRD LETTER MOTION to Adjourn Conference addressed to Judge Dale E. Ho from Hillel I. Parness dated July 9, 2024. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 07/09/2024) |
| 07/10/2024 | 15 | ORDER granting 14 Letter Motion to Adjourn Conference. Application GRANTED. The initial pretrial conference is ADJOURNED to September 4, 2024, at 10:00 A.M. EST. The parties shall join the conference by dialing (646) 453 -4442 and entering the conference ID: 924 732 025, followed by the pound sign (#). The parties shall file the required materials by August 28, 2024. In light of the repeated extensions and Plaintiff's representations that Defendant is aware of this lawsuit, further extensions will not be granted absent a showing of extraordinary circumstances. So Ordered.. (Signed by Judge Dale E. Ho on 7/10/2024) Initial Conference set for 9/4/2024 at 10:00 AM before Judge Dale E. Ho. (ks) (Entered: 07/10/2024) |
| 08/21/2024 | 16 | NOTICE OF APPEARANCE by Richard Stephen Mandel on behalf of Universal Music Publishing, Inc...(Mandel, Richard) (Entered: 08/21/2024) |
| 08/21/2024 | 17 | NOTICE OF APPEARANCE by Joelle Anne Milov on behalf of Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 08/21/2024) |
| 08/21/2024 | 18 | LETTER MOTION for Extension of Time to File Answer re: 1 Complaint *or Otherwise Move* addressed to Judge Dale E. Ho from Richard S. Mandel dated August 21, 2024. Document filed by Universal Music Publishing, Inc...(Mandel, Richard) (Entered: 08/21/2024) |

A4

| 08/22/2024 | 19 | ORDER granting 18 Letter Motion for Extension of Time to Answer. Application GRANTED. UMP's deadline to answer or otherwise respond to the Complaint is extended to September 23, 2024. SO ORDERED. The Clerk of Court is respectfully requested to terminate ECF No. 18.. (Signed by Judge Dale E. Ho on 8/22/2024) Universal Music Publishing, Inc. answer due 9/23/2024 (ks) (Entered: 08/22/2024) |
|---|---|---|
| 08/28/2024 | 20 | STATUS REPORT. *Joint Status Letter* Document filed by TufAmerica, Inc.. (Attachments: # 1 Proposed Order Proposed Joint Case Management Plan and Scheduling Order). (Parness, Hillel) (Entered: 08/28/2024) |
| 08/29/2024 | 21 | ORDER: It is hereby ORDERED that the initial pretrial conference is CANCELLED. If the parties wish to proceed with the conference, they shall promptly file a letter on ECF so the conference can be reinstated on the Court's calendar. The case management plan and scheduling order will issue separately. SO ORDERED. (Signed by Judge Dale E. Ho on 8/29/2024) (ks) (Entered: 08/29/2024) |
| 08/29/2024 | 22 | ORDER: It is hereby ORDERED that the initial pretrial conference is CANCELLED. If the parties wish to proceed with the conference, they shall promptly file a letter on ECF so the conference can be reinstated on the Court's calendar. The case management plan and scheduling order will issue separately. SO ORDERED. (Signed by Judge Dale E. Ho on 8/29/2024) (ks) (Entered: 08/29/2024) |
| 08/29/2024 | 23 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). The case is to be tried to a jury. Motions due by 11/4/2024. Expert Deposition due by 3/19/2025. Fact Discovery due by 2/3/2025. Depositions due by 2/3/2025. Expert Discovery due by 3/19/2025. Telephone Conference set for 4/2/2025 at 10:30 AM before Judge Dale E. Ho. Theparties shall join the conference by dialing (646) 453 - 4442 and entering the conferenceID: 354080233, followed by the pound sign (#). Pretrial Order due by 4/18/2025. The parties are ORDERED to file a status letter at the close of fact discovery (i.e., on February 3, 2025). The parties shall be ready for trial as of two weeks following the deadline for the proposed Joint Pretrial Order. Counsel for the parties have conferred and their best estimate of the length of trial is 3-5 days. SO ORDERED (Signed by Judge Dale E. Ho on 8/29/2024) (ks) (Entered: 08/29/2024) |
| 09/23/2024 | 24 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Universal Music Group N.V. for Universal Music Publishing, Inc.. Document filed by Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 09/23/2024) |
| 09/23/2024 | 25 | MOTION to Dismiss . Document filed by Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 09/23/2024) |
| 09/23/2024 | 26 | MEMORANDUM OF LAW in Support re: 25 MOTION to Dismiss . . Document filed by Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 09/23/2024) |
| 09/23/2024 | 27 | DECLARATION of Lawrence Ferrara in Support re: 25 MOTION to Dismiss .. Document filed by Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 09/23/2024) |
| 09/23/2024 | 28 | DECLARATION of Joelle A. Milov in Support re: 25 MOTION to Dismiss .. Document filed by Universal Music Publishing, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J).(Milov, Joelle) (Entered: 09/23/2024) |

| 09/23/2024 | 29 | LETTER MOTION to Seal *by Defendant Universal Music Publishing, Inc. and Non-Party UMG Recordings, Inc.* addressed to Judge Dale E. Ho from Joelle A. Milov dated September 23, 2024. Document filed by Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 09/23/2024) |
|---|---|---|
| 09/23/2024 | 30 | DECLARATION of Joelle A. Milov in Support re: 29 LETTER MOTION to Seal *by Defendant Universal Music Publishing, Inc. and Non-Party UMG Recordings, Inc.* addressed to Judge Dale E. Ho from Joelle A. Milov dated September 23, 2024.. Document filed by Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 09/23/2024) |
| 09/23/2024 | 31 | ***SELECTED PARTIES***DECLARATION of Joelle A. Milov in Support re: 29 LETTER MOTION to Seal *by Defendant Universal Music Publishing, Inc. and Non-Party UMG Recordings, Inc.* addressed to Judge Dale E. Ho from Joelle A. Milov dated September 23, 2024.. Document filed by Universal Music Publishing, Inc., TufAmerica, Inc.. (Attachments: # 1 Exhibit A - Docket Entry No. 28-10 is the Redacted version)Motion or Order to File Under Seal: 29 .(Milov, Joelle) (Entered: 09/23/2024) |
| 10/02/2024 | 32 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 25 MOTION to Dismiss ., 29 LETTER MOTION to Seal *by Defendant Universal Music Publishing, Inc. and Non-Party UMG Recordings, Inc.* addressed to Judge Dale E. Ho from Joelle A. Milov dated September 23, 2024. addressed to Judge Dale E. Ho from Hillel I. Parness dated October 2, 2024. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 10/02/2024) |
| 10/03/2024 | 33 | ORDER granting 32 Letter Motion for Extension of Time to File Response/Reply. Application GRANTED. Parties shall adhere to the schedule proposed in the endorsed letter. The Clerk of Court is respectfully directed to terminate ECF No. 32. SO ORDERED.. (Signed by Judge Dale E. Ho on 10/2/2024) Responses due by 10/28/2024 Replies due by 11/12/2024. (ks) (Entered: 10/03/2024) |
| 10/21/2024 | 34 | CONSENT LETTER addressed to Judge Dale E. Ho from Hillel I. Parness dated October 21, 2024 re: Stipulation to Amend Caption. Document filed by TufAmerica, Inc.. (Attachments: # 1 Proposed Order [So Ordered] Stipulation to Amend Caption).(Parness, Hillel) (Entered: 10/21/2024) |
| 10/28/2024 | 35 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** AMENDED COMPLAINT amending 1 Complaint against Universal Music Publishing, Inc. with JURY DEMAND.Document filed by TufAmerica, Inc.. Related document: 1 Complaint. (Attachments: # 1 Exhibit Amended Complaint EX A Copyright Registration). (Parness, Hillel) Modified on 10/29/2024 (jgo). (Entered: 10/28/2024) |
| 10/29/2024 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Hillel Ira Parness to RE-FILE re: Document No. 35 Amended Complaint,. The filing is deficient for the following reason(s): all of the parties listed on the pleading were not entered on CM ECF; the wrong party/parties whom the pleading is against were selected. Docket the event type Add Party to Pleading found under the event list Complaints and Other Initiating Documents.. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (jgo)** (Entered: 10/29/2024) |
| 10/29/2024 | | ADD PARTY FOR PLEADING. Defendants/Respondents Songs of Universal, Inc. added. Party added pursuant to 35 Amended Complaint,.Document filed by TufAmerica, Inc.. Related document: 35 Amended Complaint,..(Parness, Hillel) (Entered: 10/29/2024) |

# A6

| 10/29/2024 | 36 | AMENDED COMPLAINT amending 1 Complaint against Songs of Universal, Inc. with JURY DEMAND.Document filed by TufAmerica, Inc.. Related document: 1 Complaint. (Attachments: # 1 Exhibit Amended Complaint EX A Copyright Registration).(Parness, Hillel) (Entered: 10/29/2024) |
| 11/04/2024 | 37 | NOTICE OF APPEARANCE by Richard Stephen Mandel on behalf of Songs of Universal, Inc...(Mandel, Richard) (Entered: 11/04/2024) |
| 11/05/2024 | 38 | NOTICE OF APPEARANCE by Joelle Anne Milov on behalf of Songs of Universal, Inc... (Milov, Joelle) (Entered: 11/05/2024) |
| 11/12/2024 | 39 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Universal Music Group N.V. for Songs of Universal, Inc.. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 40 | MOTION to Dismiss . Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 41 | MEMORANDUM OF LAW in Support re: 40 MOTION to Dismiss . . Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 42 | DECLARATION of Lawrence Ferrara in Support re: 40 MOTION to Dismiss .. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 43 | DECLARATION of Joelle A. Milov in Support re: 40 MOTION to Dismiss .. Document filed by Songs of Universal, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J).(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 44 | LETTER MOTION to Seal addressed to Judge Dale E. Ho from Joelle A. Milov dated November 12, 2024. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 45 | DECLARATION of Joelle A. Milov in Support re: 44 LETTER MOTION to Seal addressed to Judge Dale E. Ho from Joelle A. Milov dated November 12, 2024.. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 46 | MOTION to Dismiss - *Correcting Docket Entry No. 40*. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 47 | MEMORANDUM OF LAW in Support re: 40 MOTION to Dismiss . *Correcting Docket Entry No. 41*. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 48 | DECLARATION of Lawrence Ferrara - Correcting Docket Entry No. 42 in Support re: 40 MOTION to Dismiss .. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 49 | DECLARATION of Joelle A. Milov - Correcting Docket Entry No. 43 in Support re: 40 MOTION to Dismiss .. Document filed by Songs of Universal, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J).(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 50 | LETTER MOTION to Seal - *Correcting Docket Entry No. 44* addressed to Judge Dale E. Ho from Joelle A. Milov dated November 12, 2024. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
| 11/12/2024 | 51 | DECLARATION of Joelle A. Milov - Correcting Docket Entry No. 45 in Support re: 50 LETTER MOTION to Seal - *Correcting Docket Entry No. 44* addressed to Judge Dale E. |

| | | Ho from Joelle A. Milov dated November 12, 2024.. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/12/2024) |
|---|---|---|
| 11/12/2024 | 52 | ***SELECTED PARTIES***DECLARATION of Joelle A. Milov in Support re: 50 LETTER MOTION to Seal - *Correcting Docket Entry No. 44* addressed to Judge Dale E. Ho from Joelle A. Milov dated November 12, 2024.. Document filed by Songs of Universal, Inc., TufAmerica, Inc.. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 50 .(Milov, Joelle) (Entered: 11/12/2024) |
| 11/13/2024 | 53 | LETTER addressed to Judge Dale E. Ho from Joelle A. Milov dated November 13, 2024 re: Docket Entries 40-45. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/13/2024) |
| 11/15/2024 | 54 | LETTER MOTION to Stay *Discovery* addressed to Judge Dale E. Ho from Joelle A. Milov dated November 15, 2024. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 11/15/2024) |
| 11/26/2024 | 55 | MEMORANDUM OF LAW in Opposition re: 46 MOTION to Dismiss - *Correcting Docket Entry No. 40.* . Document filed by TufAmerica, Inc.. (Attachments: # 1 Affidavit Declaration of Ethan Lustig, Ph.D., # 2 Exhibit EX 1: CV of Ethan Lustig, Ph.D., # 3 Affidavit Declaration of Hillel I. Parness in Opposition to Motion to Dismiss, # 4 Exhibit EX 1: Settlement Agreement REDACTED)(Parness, Hillel) (Entered: 11/26/2024) |
| 11/26/2024 | 56 | LETTER MOTION to Seal addressed to Judge Dale E. Ho from Hillel I. Parness dated November 26, 2024. Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 11/26/2024) |
| 11/26/2024 | 57 | ***SELECTED PARTIES***DECLARATION of Hillel I. Parness in Support re: 56 LETTER MOTION to Seal addressed to Judge Dale E. Ho from Hillel I. Parness dated November 26, 2024.. Document filed by TufAmerica, Inc., Songs of Universal, Inc.. (Attachments: # 1 Exhibit EX 1: Settlement Agreement UNREDACTED)Motion or Order to File Under Seal: 56 .(Parness, Hillel) (Entered: 11/26/2024) |
| 11/27/2024 | 58 | ORDER terminating 40 Motion to Dismiss; terminating 44 Letter Motion to Seal. The Court is in receipt of the endorsed letter. Defendant Songs of Universal, Inc.'s request is GRANTED. The Court shall disregard ECF Nos. 40-45. The Clerk of Court is respectfully directed to terminate ECF Nos. 40 and 44. SO ORDERED.. (Signed by Judge Dale E. Ho on 11/22/2024) (ks) (Entered: 11/27/2024) |
| 11/27/2024 | 59 | ORDER granting 50 Letter Motion to Seal. The Court is in receipt of the endorsed sealing request. Defendant's application is GRANTED. The document in question, ECF No. 52-1, is a "judicial document" in that it is relevant to this Court's performance of its judicial function. See Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019). Thus, there's a "strong presumption" of public access to it, and the Court may not order it sealed without making a "specific, on-the-record finding that sealing is necessary to preserve higher values" and issuing a "narrowly tailored" sealing order. Id. Here, the Court finds that sealing, in the form of a partial redaction, is necessary to preserve higher values. The information that Defendant seeks to have redacted relates to the terms of a settlement agreement between Plaintiff and a commercial non-party. It is well-established that sensitive commercial information is not afforded a presumption of public access. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). It is also common in this district for courts to order sealing or redaction of documents in the name of a third party's personal privacy interests. See Under Seal v. Under Seal, 273 F. Supp.3d 460, 467 (S.D.N.Y. 2017). Defendant seeks to use the document as a whole to support its motion to dismiss, but the specific information to be redacted (i.e., the settlement terms and amount) has no bearing on the merits of Defendant's motion. Absent such relevance, the Court finds that partial sealing (i.e., redacting this information) is appropriate. Cf. United States v. Amodeo, 71 |

**A8**

| | | |
|---|---|---|
| | | F.3d 1044, 1050 (2d Cir. 1995) (finding low presumption of public access to documents and testimony that "play only a negligible role in the [Court's] performance of [its] Article III duties."). Moreover, the Court also finds that the request is sufficiently narrowly tailored insofar as it redacts only financial information that is confidential and commercially sensitive. Cf. Johnson v. Esports Entertainment Group, Inc., No. 22 Civ. 10861, 2023 WL 6035668, at *2 (S.D.N.Y. Sept. 14, 2023) ("The Court finds that the redactions are narrowly tailored as they do not redact non-financial terms that are relevant to this action."). For the reasons outlined above, Defendant's application is GRANTED. Defendant shall file a redacted version of the document on the public docket. SO ORDERED. The Clerk of Court is directed to terminate ECF No. 50.. (Signed by Judge Dale E. Ho on 11/26/2024) (ks) (Entered: 11/27/2024) |
| 12/03/2024 | 60 | LETTER MOTION to Seal addressed to Judge Dale E. Ho from Joelle A. Milov dated December 3, 2024. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 12/03/2024) |
| 12/03/2024 | 61 | DECLARATION of Joelle A. Milov in Support re: 60 LETTER MOTION to Seal addressed to Judge Dale E. Ho from Joelle A. Milov dated December 3, 2024.. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 12/03/2024) |
| 12/03/2024 | 62 | ***SELECTED PARTIES***DECLARATION of Joelle A. Milov in Support re: 60 LETTER MOTION to Seal addressed to Judge Dale E. Ho from Joelle A. Milov dated December 3, 2024.. Document filed by Songs of Universal, Inc., TufAmerica, Inc... (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)Motion or Order to File Under Seal: 60 .(Milov, Joelle) (Entered: 12/03/2024) |
| 12/03/2024 | 63 | REPLY MEMORANDUM OF LAW in Support re: 46 MOTION to Dismiss - *Correcting Docket Entry No. 40*. . Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 12/03/2024) |
| 12/31/2024 | 64 | LETTER addressed to Judge Dale E. Ho from Joelle A. Milov dated December 31, 2024 re: Proposed Protective Order. Document filed by Songs of Universal, Inc.. (Attachments: # 1 Proposed Order Proposed Protective Order).(Milov, Joelle) (Entered: 12/31/2024) |
| 01/02/2025 | 65 | LETTER MOTION to Stay *Pending Decision on Defendant's Motion to Stay* addressed to Judge Dale E. Ho from Joelle A. Milov dated January 2, 2024. Document filed by Songs of Universal, Inc...(Milov, Joelle) (Entered: 01/02/2025) |
| 01/03/2025 | 66 | ORDER granting 54 Letter Motion to Stay. Application GRANTED. All discovery deadlines are STAYED pending the Court's resolution of Defendant's Motion to Dismiss. SO ORDERED. The Clerk of Court is respectfully directed to terminate ECF Nos. 54 and 65. (Signed by Judge Dale E. Ho on 1/3/2025) (tg) (Entered: 01/03/2025) |
| 04/24/2025 | 67 | ORDER denying as moot 56 Motion to Seal; granting 60 Motion to Seal; granting 29 Motion to Seal. Therefore, the settlement agreement shall be filed in redacted form in accordance with Defendant's proposal. For the reasons explained above: The Motion to Seal at ECF No. 29 is GRANTED. The Motion to Seal at ECF No. 60 is GRANTED. The Motion to Seal at ECF No. 56 is DENIED AS MOOT. ECF Nos. 31-1, 55, 56, 57, and 62 shall remain under seal with access limited to the applicable parties. By May 1, 2025, Plaintiff shall file three documents on the public docket, all of which shall be redacted in accordance with Defendant's proposals at ECF No. 62: (1) the full, twelve page settlement agreement; (2) Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 55; and (3) Plaintiff's Letter Motion to Seal, ECF No. 56. The Clerk of Court is respectfully directed to terminate ECF Nos. 29, 56, and 60. SO ORDERED.. (Signed by Judge Dale E. Ho on 4/24/2025) (ks) (Entered: 04/24/2025) |

A9

| 05/02/2025 | 68 | REDACTION to 55 Memorandum of Law in Opposition to Motion, by TufAmerica, Inc.. (Parness, Hillel) (Entered: 05/02/2025) |
| 05/02/2025 | 69 | REDACTION to 57 Declaration in Support of Motion, *EX 1 - Settlement Agreement and Release* by TufAmerica, Inc..(Parness, Hillel) (Entered: 05/02/2025) |
| 05/02/2025 | 70 | REDACTION to 57 Declaration in Support of Motion, *LETTER MOTION to Seal addressed to Judge Dale E. Ho from Hillel I. Parness dated November 26, 2024* by TufAmerica, Inc..(Parness, Hillel) (Entered: 05/02/2025) |
| 09/23/2025 | 71 | OPINION AND ORDER re: 25 MOTION to Dismiss . filed by Universal Music Publishing, Inc.,46 MOTION to Dismiss - *Correcting Docket Entry No. 40*. filed by Songs of Universal, Inc.. For the reasons explained above, Defendant's Motion to Dismiss is GRANTED. Under Rule 15, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, courts may deny leave to amend in cases of futility. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962). "Futility arises when a proposed amended complaint could not withstand a motion to dismiss." Singh v. Deloitte LLP, 123 F.4th 88, 93 (2d Cir. 2024). Here, amendment would be futile because TufAmerica cannot plead facts sufficient to establish the "substantial similarity" between "Impeach the President" and "Real Love." Therefore, this case is DISMISSED WITH PREJUDICE. The Clerk of Court is respectfully requested to terminate ECF Nos. 25 and 46. The Clerk of Court is also directed to enter judgment and terminate this case. SO ORDERED. (Signed by Judge Dale E. Ho on 9/23/2025) (ks) Transmission to Orders and Judgments Clerk for processing. (Entered: 09/23/2025) |
| 09/23/2025 | 72 | CLERK'S JUDGMENT re: 71 Opinion & Order. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated September 23, 2025, Defendant's Motion to Dismiss is GRANTED. Under Rule 15, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, courts may deny leave to amend in cases of futility. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962). "Futility arises when a proposed amended complaint could not withstand a motion to dismiss." Singh v. Deloitte LLP, 123 F.4th 88, 93 (2d Cir. 2024). Here, amendment would be futile because TufAmerica cannot plead facts sufficient to establish the "substantial similarity" between "Impeach the President" and "Real Love." Therefore, this case is DISMISSED WITH PREJUDICE; accordingly, the case is closed. (Signed by Clerk of Court Tammi M Hellwig on 9/23/2025) (Attachments: # 1 Notice of right to appeal) (nd) (Entered: 09/23/2025) |
| 09/29/2025 | 73 | NOTICE OF APPEAL from 72 Clerk's Judgment,,,, 71 Memorandum & Opinion,,,,. Document filed by TufAmerica, Inc.. Filing fee $ 605.00, receipt number ANYSDC-31781672. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Parness, Hillel) Modified on 9/30/2025 (nd). (Entered: 09/29/2025) |
| 09/30/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 73 Notice of Appeal,..(nd) (Entered: 09/30/2025) |
| 09/30/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 73 Notice of Appeal, filed by TufAmerica, Inc. were transmitted to the U.S. Court of Appeals..(nd) (Entered: 09/30/2025) |
| 10/01/2025 | 74 | LETTER MOTION for Extension of Time *to file Motion for Attorneys' Fees and Costs*. addressed to Judge Dale E. Ho from Joelle A. Milov dated October 1, 2025. Document filed by Songs of Universal, Inc., Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 10/01/2025) |
| 10/02/2025 | 75 | MEMO ENDORSEMENT on re: 74 LETTER MOTION for Extension of Time *to file Motion for Attorneys' Fees and Costs*. addressed to Judge Dale E. Ho from Joelle A. Milov |

| | | |
|---|---|---|
| | | dated October 1, 2025. filed by Songs of Universal, Inc., Universal Music Publishing, Inc., ENDORSEMENT: The Court is in receipt of the endorsed letter. Plaintiff shall file a response by October 9, 2025. SO ORDERED. (ks)( Responses due by 10/9/2025) (Entered: 10/02/2025) |
| 10/03/2025 | 76 | LETTER MOTION for Extension of Time *to File a Motion for Attorneys' Fees and Costs Pending Decision on Defendant's Motion to Extend* addressed to Judge Dale E. Ho from Joelle A. Milov dated October 3, 2025. Document filed by Songs of Universal, Inc., Universal Music Publishing, Inc...(Milov, Joelle) (Entered: 10/03/2025) |
| 10/07/2025 | 77 | ORDER terminating 76 Letter Motion for Extension of Time. The Court is in receipt of the endorsed letter. Defendant's deadline to file a motion for attorney's fees is ADJOURNED sine die pending the Court's resolution of Defendant's motion to extend, ECF No. 74. Plaintiff shall respond to the motion to extend by October 9, 2025 as stated in the Court's Order at ECF No. 75. SO ORDERED. The Clerk of Court is respectfully directed to terminate ECF No. 76. (Signed by Judge Dale E. Ho on 10/6/2025) (jjc) (Entered: 10/07/2025) |
| 10/09/2025 | 78 | LETTER RESPONSE in Opposition to Motion addressed to Judge Dale E. Ho from Hillel I. Parness dated October 9, 2025 re: 74 LETTER MOTION for Extension of Time *to file Motion for Attorneys' Fees and Costs.* addressed to Judge Dale E. Ho from Joelle A. Milov dated October 1, 2025. . Document filed by TufAmerica, Inc...(Parness, Hillel) (Entered: 10/09/2025) |
| 10/14/2025 | 79 | ORDER granting 74 Letter Motion for Extension of Time. The Court is in receipt of the endorsed letter. Defe1ral of the fees issue is appropriate until after the appeal in the case is resolved. See Ema Financial, LLC v. Vystnr Corp., No. 19-cv -1545, 2024 WL 4907848, at *1 (S.D.N.Y. Aug. 5, 2024). Defendants' request to defer briefing on fees until after the appeal in this case is resolved is GRANTED. The parties are directed to file a status letter within 7 days of issuance of a mandate from the Second Circuit, with a proposed briefing schedule on fees, if necessary. SO ORDERED. The Clerk of the Court is respectfully directed to terminate ECF No. 74.. (Signed by Judge Dale E. Ho on 10/14/2025) (ks) (Entered: 10/14/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/19/2025 08:54:30 | | | |
| PACER Login: | phpappeals1039 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:24-cv-02585-DEH |
| Billable Pages: | 9 | Cost: | 0.90 |

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                                        :

               Plaintiff,                      :    Case No. 1:24-cv-2585-DEH

          v.                                       :    **RULE 7.1 STATEMENT OF**
                                                   **DEFENDANT UNIVERSAL**
UNIVERSAL MUSIC PUBLISHING, INC.,            :    **MUSIC PUBLISHING, INC.**

              Defendant.                     :

-------------------------------------------------------------x

     Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned attorney of

record for Defendant Universal Music Publishing Inc. ("UMP") certifies that UMP is a wholly

owned indirect subsidiary of Universal Music Group N.V., a Netherlands public limited

company, and no other publicly held company owns 10% or more of the stock of UMP.


Dated: September 23, 2024

                      COWAN, LIEBOWITZ & LATMAN, P.C.


                      _____
                      Richard S. Mandel (rsm@cll.com)
                      Joelle A. Milov (jam@cll.com)
                      114 West 47th Street
                      New York, NY 10036-1525
                      212.790.9200 (Telephone)
                      212.575.0671 (Facsimile)

                      *Attorneys for Defendant Universal*
                      *Music Publishing, Inc.*



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Joelle A. Milov**
(212) 790-9247
jam@cll.com

September 23, 2024

<u>VIA ECF</u>

Hon. Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square, Courtroom 905
New York, New York 10007

> Re:    *TufAmerica, Inc. d/b/a Tuff City Records v. Universal Music Publishing, Inc.*,
> 24- cv-2585 (DEH): Defendant and Non-Party UMG Recordings, Inc.'s Letter
> <u>Motion to Seal</u>

Dear Judge Ho:

We represent Defendant Universal Music Publishing, Inc. ("Defendant") in the above-referenced action. We also represent non-party UMG Recordings, Inc. ("UMG") in connection with this motion to seal. Defendant and UMG (collectively, "Sealing Movants") write to request leave to file one document, submitted in connection with Defendant's Motion to Dismiss ("Defendant's Motion to Dismiss"), in redacted form. Sealing Movants request permission to redact portions of a document that includes confidential, commercially sensitive information of UMG that is also subject to a confidentiality provision (collectively, the "Requested Redactions"). The Requested Redactions are identified by yellow highlighting in Exhibit A to the Declaration of Joelle A. Milov in Support of Defendant and Non-Party UMG's Motion to Seal. The Requested Redactions have been redacted from Exhibit J to the Declaration of Joelle A. Milov (ECF Dkt #28-10) in Support of Defendant's Motion to Dismiss, filed concurrently with this Motion to Seal.

In its Complaint, Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff") alleges that the composition "Real Love" contains an uncleared sample from its composition, "Impeach the President." Compl., ECF Doc. No. 1, ¶ 11. On this basis, Plaintiff alleges that "Real Love" infringes the musical composition of "Impeach the President." There exist two separate copyrights in music—one related to the composition of a work and the other to a sound recording—and the alleged infringement of a composition does not ineluctably follow from the infringement of a sound recording. *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019); *see, e.g.*, *Newton v. Diamond*, 349 F.3d 591 (9th Cir. 2003). Nonetheless, Plaintiff insinuates that Defendant infringes the *composition* of "Impeach the President" because non-party UMG settled Plaintiff's claim of infringement based on "Real Love" having allegedly sampled the *sound recording* of "Impeach the President." *See* Compl. ¶¶ 11-13. According to

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
September 23, 2024
Page 2

Plaintiff, Defendant's failure to compensate it for the alleged usage of an uncleared sample of "Impeach the President" in the composition of "Real Love" "is difficult to reconcile with the fact that Plaintiff reached an agreement with UMG [] [the "UMG Agreement"] with respect to the presence of the uncleared sample from 'Impeach the President' on the master sound recording of 'Real Love.'" *Id.* ¶¶ 12-13.

Although the UMG Agreement, which contains a confidentiality provision, was not attached to the Complaint, it was incorporated by reference and can be considered in conjunction with Defendant's Motion to Dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Sealing Movants seek to submit a redacted portion of the first page of the UMG Agreement, as well as a non-redacted signature page from the agreement, in connection with Defendant's Motion to Dismiss to show that Plaintiff was aware of its claim more than three years prior to filing the Complaint, as is relevant to Defendant's statute of limitations argument. Defendant also wishes to refer to that portion of the UMG Agreement in which UMG disclaimed any admission of liability or wrongdoing to controvert Plaintiff's description of the agreement.

The Requested Redactions comport with Second Circuit case law, which applies the three-step test described in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Under this test, the Court must determine: (1) whether the documents subject to a sealing request qualify as "judicial documents"; (2) the weight of the presumption of public access attaching to any judicial document; and (3) if any countervailing factors or higher values outweigh the right of public access to any judicial documents. *Id.* at 119–20. This Court has "considerable discretion in determining whether good cause exists to overcome the presumption of open access" to documents filed on its docket. *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000).

First, the request is consistent with the Second Circuit's recognition that the right of public access to judicial documents is not absolute, and that the "court must balance competing considerations" and seal documents or information where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *See Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). The Requested Redactions are "narrowly tailored" because they only redact confidential, commercially sensitive, and previously non-disclosed business and commercial information that should be protected from disclosure. *See Vinci Brands LLC v. Coach Servs.*, No. 23-cv-5138, 2023 WL 6289969, at *2 (S.D.N.Y. Sept. 27, 2023) ("[W]here the parties seek to redact financial information such as licensing fees and [a] loan amount, production timelines and information about manufacturers, suppliers or distributors, the proposed redactions are narrowly tailored to protect against competitive harm, which outweighs the presumption of access accorded to these filings.").

Second, the Requested Redactions relate to information that is irrelevant to the merits of Defendant's motion to dismiss. Defendant seeks to submit a portion of the UMG Agreement for the sole purposes of showing that Plaintiff had long been aware of this matter and that UMG disclaimed liability in the agreement; any specific settlement term is not relevant to the grounds on which Defendant moves to dismiss. "Where testimony or documents play only a negligible

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
September 23, 2024
Page 3

role in the performance of Article III duties, the weight of the presumption [of access] is low and amounts to little more than a prediction of public access absent a countervailing reason." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). Under these circumstances, sealing by redaction is appropriate. *See Monk v. Goldman Sachs & Co. LLC*, No. 22-CV-6056 (JMF), 2023 2023 WL 22618, at *7 (S.D.N.Y. Jan. 3, 2023) ("[T]he Court concludes that the settlement amount may be redacted from the Settlement Agreement. The settlement amount had no relevance to the Goldman Defendants' motion to compel arbitration, and the law favors confidentiality of such information to incentivize the resolution of disputes."); *Rubik's Brand Ltd. v. Glambeau, Inc.*, No. 17-cv-6559, 2021 WL 1085338, at *2 (S.D.N.Y. Mar. 22, 2021) (agreeing to seal preliminary report that was "only marginally relevant to the claims asserted in this case"). The Requested Redactions involve a contract resolving a dispute about a *sound recording* copyright that is not at in this dispute regarding a copyright in the *musical composition* of a work and therefore provides no specific benefit to the public. If this Court grants the request to redact, the public will still have ample information available to it to understand the underlying dispute. *See Dependable Sales & Serv., Inc. v. TrueCar, Inc*., 311 F. Supp. 3d 653, 666 (S.D.N.Y. 2018) (permitting proposed redactions where a "member of the public reviewing the parties' redacted submissions . . . would have information sufficient to understand the parties' arguments and the Court's adjudication").

Third, there is a strong countervailing interest in maintaining the confidentiality of competitively sensitive business information. The Requested Redactions include sensitive and confidential commercial information, including sales information, the disclosure of which would cause competitive harm to non-party UMG in the music industry because it could affect UMG in negotiating future settlements or licensing agreements. *See, e.g.*, *Rubik's Brand*, 2021 WL 1085338, at *1 (agreeing that disclosure of trademark licensing agreement "could harm [plaintiff] and/or its business partners by disadvantaging them in negotiating future licensing agreements."). Courts in this District routinely seal documents related to royalty and sales figures. *See, e.g.*, *Red Hawk, LLC v. Colorforms Brand LLC*, 2024 WL 1075282, at *1-2 (S.D.N.Y. Feb. 9, 2024) (granting motion to seal when parties requested redactions, included "confidential royalty rates between [defendant] and a third party, . . . financial terms of a contract between [defendant] and a third party, and confidential sales information."). The competitive disadvantages that would flow to UMG if such information were disclosed outweigh the general public interest in disclosure. *See Lugosch*, 435 F.3d at 120. Moreover, the Requested Redactions are narrowly tailored just to avoid competitive harm. *See, e.g.*, *Rubik's Brand*, 2021 WL 1085338, at *2 (agreeing that disclosure of testimony related to "projected sales, net sales, and revenue figures for the relevant time period . . . cover material that, if disclosed, would competitively harm Flambeau[, because] . . . a competitor could use information concerning sales figures to upend the puzzle cube market and disrupt the Quick Cube's business model. Further, the Court also finds that the proposed redactions are narrowly tailored to avoid that potential harm.").

Fourth, the public interest in the details that Defendant seeks to redact is limited compared to the interest of private parties, including the legitimate privacy interest of non-party

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
September 23, 2024
Page 4


UMG.  Indeed, the Second Circuit has held that "'the privacy interest of innocent third parties . . . should weigh heavily in a court's balancing equation.'"  *Amodeo*, 71 F.3d at 1050 (citation omitted).  For example, when parties in *Red Hawk, LLC v. Colorforms Brand LLC* requested that the court allow them to redact information related to "confidential royalty rates between [defendant] and a third party, . . . financial terms of a contract between [defendant] and a third party, and confidential sales information", the court found that "as nonparties to this litigation, [defendant]'s contractual counterparties—including licensees and licensors—have a legitimate privacy interest that 'should weigh heavily in a court's balancing equation'"  2024 WL 551543, at *1-2 (quoting *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79-90 (2d Cir. 1990)).  The Court should similarly find here that UMG's privacy interest in its confidential contractual terms, which includes confidential royalty information, should weigh heavily in the court's balancing analysis.

For these reasons, Sealing Movants respectfully requests that the Court permit the Requested Redactions identified by highlighting in Exhibit A to the Declaration of Joelle A. Milov in Support of Defendant and UMG's Motion to Seal.  We thank the Court for its attention to this matter.


Respectfully,

COWAN, LIEBOWITZ & LATMAN, P.C.
*Attorneys for Defendant and UMG Recordings, Inc.*


By:_____
        Joelle A. Milov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                        :

               Plaintiff,            :   Case No. 1:24-cv-2585-DEH

          v.                              :

UNIVERSAL MUSIC PUBLISHING, INC.,       :

              Defendant.           :
-------------------------------------------------------------x

### DECLARATION OF JOELLE A. MILOV IN SUPPORT OF DEFENDANT AND NON-PARTY UMG'S MOTION TO SEAL

    1.    I am an attorney at Cowan, Liebowitz & Latman, P.C., attorneys for Defendant Universal Music Publishing, Inc. ("Defendant"). This firm also represents non-party UMG Recordings, Inc. ("UMG" and with Defendant, collectively, "Sealing Movants") in connection with this motion to seal. I submit this declaration in support of Defendant and UMG's Motion to Seal. This declaration is based on my personal knowledge of the events and matters discussed herein.

    2.    Attached hereto as <u>Exhibit A</u> is a true and correct copy of portions of a Confidential Settlement Agreement and General Release between Plaintiff TufAmerica, Inc. and non-party UMG. The portions of the document that Sealing Movants seek to redact are highlighted in yellow.

    3.    Sealing Movants have submitted a publicly accessible version of the document with redactions over the yellow highlighted portions of the document. That redacted document was submitted as Exhibit J to the Declaration of Joelle A. Milov (ECF Dkt #28-10) in Support of Defendant's Motion to Dismiss, filed concurrently with this Motion to Seal.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT.  EXECUTED ON SEPTEMBER 23, 2024 AT PITTSBURGH, PENNSYLVANIA.


Joelle A. Milov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

TUFAMERICA, INC. d/b/a TUFF CITY RECORDS,

                                    Plaintiff,          Index No. 24-cv-2585-DEH

    - against-                                          **AMENDED COMPLAINT**

SONGS OF UNIVERSAL, INC.                                **JURY TRIAL DEMANDED**

                                    Defendant.

-------------------------------------------------------------------X

     Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff"), by and through its

undersigned attorneys, hereby files this Amended Complaint against Songs of Universal, Inc.[1]

("Defendant"), and alleges as follows:

## NATURE OF THIS ACTION

     1.     This is an action for copyright infringement, and for declaratory and injunctive

relief.

## JURISDICTION AND VENUE

     2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a),

as this matter involves, *inter alia*, violation of a federally-registered copyright.  Plaintiffs seek a

declaratory judgment under the Declaratory Judgment Act pursuant to 28 U.S.C. § 2201.

     3.     Venue in this district is proper as to Defendant pursuant to 28 U.S.C. §

1391(b)(1), (2) and (3), and New York Civ. Prac. L. & R. §§ 301 and 302(a)(3)(i) and (ii),

because Defendant (a) does business from one or more New York City addresses, (b) regularly

---

[1] The parties have stipulated to amend the caption and the pleadings to replace Universal Music Publishing, Inc. with Songs of Universal, Inc.  ECF 34.  Anticipating that the Court will So-Order the parties' stipulation, Plaintiff has revised the caption in accordance therewith.

does and solicits business, and engages in a persistent course of conduct, and derives substantial

revenue from goods used or consumed or services rendered, in the state of New York, (c)

because Defendant expects or should reasonably expect its services to have consequences in the

state of New York, and (d) because Defendant derives substantial revenue from interstate and

international commerce.

## THE PARTIES

4.     Plaintiff is a New York corporation located at 439 West 43rd Street, New York,

New York 10036.  Plaintiff owns and administers the copyrights to tens of thousands of musical

recordings and compositions from the genres of Blues, Rhythm and Blues, Jazz, Funk, Soul,

Hip-Hop, New Orleans and Latin Music, much of which might otherwise fall into obscurity.

5.     Defendant is a California corporation and one of the world's leading global music

publishers, with places of business at 2105 Colorado Avenue, Santa Monica, California 90404

and 1755 Broadway, New York, New York 10019.

6.     Defendant conducts systematic and continuous business in the State of New York,

including but not limited to, reproducing, distributing, and publicly performing, and/or

authorizing the reproduction, distribution, and public performance of musical compositions.

## FACTUAL SUMMARY

7.     Plaintiff is owner of all rights in and to the musical composition entitled "Impeach

the President," and holds a U.S. Copyright Registration (SR0000136339) in connection with that

musical composition and sound recording of the composition.

8.     A true and correct copy of Copyright Registration SR0000136339 is attached

hereto as **Exhibit A**.

9.     The "deposit copy" submitted to the U.S. Copyright Office in connection with the

registration was the commercially-released sound recording (in vinyl record format) of the

2

composition.

10.    As a matter of law, the scope of the copyright registration for the "Impeach the President" musical composition encompasses – at an absolute minimum – all of the sounds that can be perceived on the audio recording submitted as its "deposit copy," and the corresponding compositional elements.

11.    Defendant is the music publisher of the musical composition entitled "Real Love."  "Real Love" was recorded by Mary J. Blige for UMG Recordings, Inc. ("UMG").

12.    At the time of the release of "Real Love," both the sound recording and musical composition contained uncleared samples and interpolations from "Impeach the President."

13.    "Real Love" sampled drum sounds and copied the corresponding compositional elements from the opening of Audio Two's "Top Billin'," which in turn sampled those same drum sounds and copied those same corresponding compositional elements from "Impeach the President."

14.    "Top Billin'" is a compositional interpolation of the drum composition in "Impeach the President."

15.    "Real Love," by sampling drum sounds and copying the corresponding compositional elements from "Top Billin'," also sampled drum sounds and copied the corresponding compositional elements from "Impeach the President."

16.    "Real Love" is a compositional interpolation of the drum composition in "Impeach the President."

17.    By way of example, "Top Billin'," beginning at time index 0:00,[2] demonstrates a

_____

[2] All time indices herein refer to the commercially-released sound recordings of the musical compositions.

strong musicological similarity with "Impeach the President," beginning at time index 0:22, as

shown in the figure below, which compares the drums at time index 0:22 of "Impeach the

President" (above) with 0:00 of "Top Billin'" (below) (red boxes indicate identical drum

rhythms):



18.    "Real Love" samples the drum sounds and corresponding compositional elements

from "Top Billin'" with limited modifications.

19.    Among the limited modifications are the addition of an extra hi-hat layer, mostly

on the eighth notes.

20.    As a result, "Real Love," by way of example, not only incorporates the drum

sounds and corresponding compositional elements from "Impeach the President" that were used

in "Top Billin'," but modifies "Top Billin'" in a manner that brings "Real Love" closer,

musicologically, to "Impeach the President," as shown in the figures below[3] (red squares and

circles show identical drum rhythms):

---

[3] This transcription was prepared by Defendant's expert, and is assumed to be accurate solely for
purposes of this pleading.



21.    Plaintiff has advised Defendant repeatedly of the presence of the uncleared

samples and corresponding compositional elements from "Impeach the President" in "Real

Love," and Defendant has repeatedly refused to engage Plaintiff in substantive negotiations to

rectify the foregoing, let alone agreed to compensate Plaintiff for the past infringement or on an

ongoing basis.

22.    Defendant's refusal to cooperate with Plaintiff is difficult to reconcile with the

fact that Plaintiff reached an agreement with UMG Recordings, Inc. with respect to the presence

of the uncleared samples from "Impeach the President" on the master sound recording of "Real

Love."

<div align="center">

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Copyright Infringement)**

</div>

23.    Plaintiff repeats, realleges and incorporates herein by reference each and every

<div align="center">5</div>

allegation contained above as though the same were set forth herein.

24.    Plaintiff is the owner of the musical composition "Impeach the President."

25.    Plaintiff holds a federal copyright registration for the musical composition "Impeach the President."

26.    Defendant, or people acting at its direction or under its control, had access to the musical composition "Impeach the President."

27.    Defendant, or people acting at its direction or under its control, without the permission or consent of Plaintiff, and without authority, incorporated uncleared samples and corresponding compositional elements from the musical composition "Impeach the President" into the musical composition "Real Love."

28.    The musical composition "Real Love" is substantially similar to the musical composition "Impeach the President."

29.    Defendant, or people acting at its direction or under its control, without the permission or consent of Plaintiff, and without authority, have publicly performed or otherwise exploited uncleared samples and corresponding compositional elements from the musical composition "Impeach the President" by virtue of their public performance or exploitation of the musical composition "Real Love."

30.    Defendant's conduct constitutes infringement of Plaintiff's exclusive rights under the Copyright Act, pursuant to 17 U.S.C. § 501, including but not limited to: (A) the right to publicly perform the musical composition "Impeach the President," 17 U.S.C. § 106(4) (the copyright owner has the exclusive right to perform and authorize others to perform the copyrighted work publicly); and (B) the right to prepare derivative works of the musical composition "Impeach the President," 17 U.S.C. § 106(2) (the copyright owner has the exclusive

right to prepare and authorize others to prepare derivative works based on a copyrighted work).

31.    Defendant's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

32.    As a direct and proximate result of Defendant's infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to its actual damages plus Defendant's profits from infringement, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

33.    In the alternative, at Plaintiff's election, Plaintiff is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), of up to $150,000.

34.    Defendant's conduct has caused, is causing, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to immediately stop exploiting the musical composition "Impeach the President," and by extension the musical composition "Real Love," and stop making the musical composition "Real Love" available for use by others.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment)**

35.    Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

36.    Pursuant to 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

37.    Plaintiff is the owner of the musical composition "Impeach the President."

38.     Plaintiff holds a federal copyright registration for the musical composition "Impeach the President."

39.     Defendant, or people acting at its direction or under its control, had access to the musical composition "Impeach the President."

40.     The musical composition "Real Love" is substantially similar to the musical composition "Impeach the President."

41.     Defendant, or people acting at its direction or under its control, without the permission or consent of Plaintiff, and without authority, incorporated uncleared samples and corresponding compositional elements from the musical composition "Impeach the President" into the musical composition "Real Love."

42.     Defendant, or people acting at its direction or under its control, without the permission or consent of Plaintiff, and without authority, have publicly performed or otherwise exploited uncleared samples and corresponding compositional elements from the musical composition "Impeach the President" by virtue of their public performance or exploitation of the musical composition "Real Love."

43.     Defendant's conduct constitutes infringement of Plaintiff's exclusive rights under the Copyright Act, pursuant to 17 U.S.C. § 501, including but not limited to: (A) the right to publicly perform the musical composition "Impeach the President," 17 U.S.C. § 106(4) (the copyright owner has the exclusive right to perform and authorize others to perform the copyrighted work publicly); and (B) the right to prepare derivative works of the musical composition "Impeach the President," 17 U.S.C. § 106(2) (the copyright owner has the exclusive right to prepare and authorize others to prepare derivative works based on a copyrighted work).

44.     Defendant's acts of infringement have been willful, intentional, and purposeful, in

disregard of and indifferent to the rights of Plaintiff.

45.     Plaintiff repeatedly notified Defendant in writing of Plaintiff's ownership rights in the musical composition "Impeach the President," and on February 13, 2024 advised Defendant that if it did not immediately cease and desist from exploiting the musical composition "Impeach the President" by February 23, 2024, Plaintiff would pursue legal action against them.

46.     Defendant did not respond to Plaintiff by February 23, 2024.

47.     By reason of the foregoing, there is a present controversy between Plaintiff and Defendant regarding Defendant's infringement of Plaintiff's copyright in the musical composition "Impeach the President."

48.     Plaintiff seeks a declaration that it is the owner of all rights in and to the musical composition "Impeach the President," and a declaration that Defendant's ongoing exploitation of the musical composition "Impeach the President," through the incorporation of uncleared samples and corresponding compositional elements from the musical composition "Impeach the President" in the musical composition "Real Love" constitutes copyright infringement.

49.     Upon entry of an order granting the sought after Declaratory Judgment, Plaintiff requests the Court order Defendant to pay attorney's fees pursuant to 17 U.S.C. ¶ 505, and expenses incurred by Plaintiff in connection with this action.

<div align="center">

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Injunctive Relief)**

</div>

50.     Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

51.     Plaintiff is the owner of the musical composition "Impeach the President."

52.     Plaintiff holds a federal copyright registration for the musical composition

<div align="center">9</div>

"Impeach the President."

53.     Defendant, or people acting at its direction or under its control, had access to the musical composition "Impeach the President."

54.     The musical composition "Real Love" is substantially similar to the musical composition "Impeach the President."

55.     Defendant, or people acting at its direction or under its control, without the permission or consent of Plaintiff, and without authority, incorporated uncleared samples and interpolations from the musical composition "Impeach the President" into the musical composition "Real Love."

56.     Defendant, or people acting at its direction or under its control, without the permission or consent of Plaintiff, and without authority, have publicly performed or otherwise exploited uncleared samples and corresponding compositional elements from the musical composition "Impeach the President" by virtue of their public performance or exploitation of the musical composition "Real Love."

57.     Defendant's conduct constitutes infringement of Plaintiff's exclusive rights under the Copyright Act, including but not limited to: (A) the right to publicly perform the musical composition "Impeach the President," 17 U.S.C. § 106(4) (the copyright owner has the exclusive right to perform and authorize others to perform the copyrighted work publicly); and (B) the right to prepare derivative works of the musical composition "Impeach the President," 17 U.S.C. § 106(2) (the copyright owner has the exclusive right to prepare and authorize others to prepare derivative works based on a copyrighted work).

58.     Defendant's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

59.     As a direct and proximate result of the copyright infringement and other violations detailed herein, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendant, and anyone acting at its direction or under its control, from infringing Plaintiff's copyright in the musical composition "Impeach the President," pursuant to 17 U.S.C. § 502 and common law principles of contract law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff TufAmerica, Inc. d/b/a Tuff City Records, prays for judgment against Defendant Songs of Universal, Inc. as follows:

1.  Damages to Plaintiff for Defendant's willful infringement of Plaintiff's copyright in the musical composition "Impeach the President";

2.  Declaratory Judgment that Plaintiff is the owner of the copyright in the musical composition "Impeach the President," that Defendant has infringed Plaintiff's copyright in the musical composition "Impeach the President," and that Defendant must pay Plaintiff for the damages arising from said infringement;

3.  For preliminary and permanent injunctive relief enjoining and restraining Defendant, and anyone acting at its direction or under its control, from further exploiting the musical composition "Impeach the President";

4.  For pre- and post-judgment interest according to law;

5.  For reimbursement of Plaintiff's expenses, including attorney's fees, incurred in connection with the enforcement of its rights; and

6.  For such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: New York, New York          PARNESS LAW FIRM, PLLC
      October 28, 2024

                                   By: __/s/ Hillel I. Parness__
                                   Hillel I. Parness (HP-1638)
                                   136 Madison Ave., 6th Floor
                                   New York, New York  10016
                                   (212) 447-5299
                                   hip@hiplaw.com
                                   *Attorneys for Plaintiff TufAmerica, Inc.*
                                     *d/b/a Tuff City Records*

# EXHIBIT A



# COPY OF REGISTRATION

# SR 136-339

**NOTE: due to the nature of the storage medium (microfilm), the attached photocopies are the best possible copies available.**

**FORM SR**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

SR    136 339

SR                    SRU

EFFECTIVE DATE OF REGISTRATION

**NOV 25 1991**

Month        Day        Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼

"Impeach The President" /      (as performed by
"Roy C.'s Theme Song"          The Honey Drippers)

PREVIOUS OR ALTERNATIVE TITLES ▼

Alaga Records AL 1017

NATURE OF MATERIAL RECORDED ▼ See instructions

☒ Musical    ☐ Musical-Dramatic

☐ Dramatic    ☐ Literary

☐ Other

**2**

NAME OF AUTHOR ▼      (a/k/a Roy C., and
Roy C. Hammond          a/k/a The Honey Drippers)

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼
1934

Was this contribution to the work a
"work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____ USA _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK
Anonymous?    ☐ Yes ☒ No
Pseudonymous?  ☐ Yes ☒ No
If the answer to either
of these questions is
"Yes," see detailed
instructions.

**NOTE**
Under the law

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed ▼
sound recording, performance, composition

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed ▼

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO
THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No

NATURE OF AUTHORSHIP  Briefly describe nature of the material created by this author in which copyright is claimed ▼

**3**

YEAR IN WHICH CREATION OF THIS
WORK WAS COMPLETED  This information
must be given
1973  ◀ Year  in all cases.

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information  Month ▶ October  Day ▶ 1  Year ▶ 1973
ONLY if this work
has been published.       USA                         ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the
same as the author given in space 2 ▼

Tuff City Records
161 West 54th Street, Suite 704
New York, NY 10019

See instructions
before completing
this space

APPLICATION RECEIVED
NOV 25 1991
ONE DEPOSIT RECEIVED
NOV 25 1991
TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named
in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

by written agreement

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of ___ pages

SR    136 339

| EXAMINED BY | *61* | FORM SR |
| CHECKED BY | | |

☐ CORRESPONDENCE
Yes

☐ DEPOSIT ACCOUNT
FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form

☐ This is the first application submitted by this author as copyright claimant

☐ This is a changed version of the work, as shown by space 6 on this application

If your answer is "Yes," give Previous Registration Number ▼          Year of Registration ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates ▼

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

See instructions
before completing
this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name ▼                                          Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Tuff City Records
161 West 54th Street, Suite 704
New York, NY 10019
Att: Aaron Fuchs
Area Code & Telephone Number ▶ (212) 262-0385

Be sure to
give your
daytime phone
◄ number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check one ▼

☐ author

☐ other copyright claimant

☒ owner of exclusive right(s)

☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Aaron Fuchs                                    date ▶ November 21, 1991

Handwritten signature (X) ▼
X _____ *[signature]*

**MAIL CERTIFICATE TO**

Name ▼
Tuff City Records

Number/Street/Apartment Number ▼
161 West 54th Street, Suite 704

City/State/ZIP ▼
New York, NY 10019

Certificate
will be
mailed in
window
envelope

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Non-refundable $10 filing fee
   in check or money order
   payable to Register of Copyrights
3. Deposit material

MAIL TO:
Register of Copyrights
Library of Congress
Washington, DC 20559

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 or in any written statement filed in connection with the application, shall be fined not more than $2,500.

July 1989—100,000                                    U.S. GOVERNMENT PRINTING OFFICE: 1989—241:429 00003

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                              :

               Plaintiff,                 :    Case No. 1:24-cv-2585-DEH

               v.                              :    **RULE 7.1 STATEMENT OF**
                                         **DEFENDANT UNIVERSAL**
SONGS OF UNIVERSAL, INC.,                  :    **MUSIC PUBLISHING, INC.**

               Defendant.                :

------------------------------------------------------------------x

      Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned attorney of

record for Defendant Songs of Universal, Inc. ("SOU") certifies that its ultimate parent is

Universal Music Group, N.V., a Netherlands public limited company, and no other publicly held

company owns 10% or more of the stock of SOU.

Dated: November 12, 2024

                         COWAN, LIEBOWITZ & LATMAN, P.C.

                         */s/Joelle A. Milov*_____
                         Richard S. Mandel (rsm@cll.com)
                         Joelle A. Milov (jam@cll.com)
                         114 West 47th Street
                         New York, NY 10036-1525
                         212.790.9200 (Telephone)
                         212.575.0671 (Facsimile)

                         *Attorneys for Defendant Songs of Universal, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                               :

                Plaintiff,              :    Case No. 1:24-cv-2585-DEH

           v.                              :    **DEFENDANT'S NOTICE OF**
                                            **MOTION TO DISMISS**

SONGS OF UNIVERSAL, INC.,                            :

              Defendant.              :

-------------------------------------------------------------x

      PLEASE TAKE NOTCE that upon the accompanying Memorandum of Law in Support

of Songs of Universal, Inc.'s ("Defendant") Motion to Dismiss; the Declaration of Lawrence

Ferrara, Ph.D., dated November 8, 2024; the Declaration of Joelle A. Milov, Esq., dated

November 12, 2024, and the exhibits annexed thereto; and all of the papers and proceedings

heretofore had herein, Defendant hereby moves this Court, before the Honorable Dale E. Ho,

United States District Judge, Southern District of New York, at the United States Courthouse, 40

Foley Square, New York, New York 10007, for an Order pursuant to Fed. R. Civ. P. 12(b)(6) in

favor of Defendant, dismissing the Amended Complaint filed by TufAmerica, Inc., or otherwise

limiting Plaintiff's relief to three years of damages prior to the time when it filed the Complaint,

and granting such other and further relief as the Court may deem just and proper.

Dated:  November 12, 2024           COWAN, LIEBOWITZ & LATMAN, P.C.


                            By: /s/ Joelle A. Milov
                                Richard S. Mandel (rsm@cll.com)
                                Joelle A. Milov (jam@cll.com)
                        114 West 47th Street
                        New York, New York 10036
                        (212) 790-9200

                        *Attorneys for Defendant Songs of Universal, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                          :

              Plaintiff,              :    Case No. 1:24-cv-2585-DEH

          v.                          :    **ORAL ARGUMENT REQUESTED**

SONGS OF UNIVERSAL, INC.,                :

            Defendant.            :

-----------------------------------------------------------------x

### DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTS ........................................................................................................................... 3

ARGUMENT ................................................................................................................. 6

I.    THE MOTION TO DISMISS STANDARD .................................................... 6

II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT
      SUFFICIENTLY ALLEGE THAT THE WORKS ARE SUBSTANTIALLY SIMILAR
      AND THE WORKS ARE ALSO NOT SUBSTANTIALLY SIMILAR AS A MATTER
      OF LAW ............................................................................................................ 8

      A. Plaintiff Has Failed to Plead that any Appropriated Elements are Original ............... 10

      B. An Ordinary Observer Would Not Recognize the Protectable Portions of "Impeach
         the President" in "Real Love". ....................................................................... 11

      C. The Fragmented Literal Similarity Test Should Not Be Used, but Even if it Is, the
         Works are Not Substantially Similar Because Any Use of Plaintiff's Work is
         Quantitatively and Qualitatively De Minimis............................................ 13

      D. The UMG Agreement is Irrelevant to Plaintiff's Claims............................. 16

III.  THE STATUTE OF LIMITATIONS LIMITS ANY POTENTIAL RECOVERY.......... 17

IV.   PLAINTIFF'S SECOND AND THIRD CLAIMS ARE REMEDIES, NOT CAUSES OF
      ACTION, AND MUST BE DISMISSED ........................................................ 20

V.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH NO FURTHER
      LEAVE TO AMEND ........................................................................................ 21

CONCLUSION............................................................................................................. 22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Canas v. Whitaker*,
  No. 19-cv-06031, 2019 WL 2287789 (W.D.N.Y. May 29, 2019)............................................22

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998)................................................................................................13

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)............................................................................................6, 18

*Charles v. Seinfeld*,
  410 F. Supp. 3d 656 (S.D.N.Y. 2019)................................................................................20

*Clanton v. UMG Recordings, Inc.*,
  556 F. Supp. 3d 322 (S.D.N.Y. 2021)................................................................................10

*Effie Film, LLC v. Pomerance*,
  909 F. Supp. 2d 273 (S.D.N.Y. 2012)..................................................................................7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..............................................................................................................8

*Francescatti v. Germanotta*,
  No. 11-cv-5270, 2014 WL 2767231 (N.D. Ill. June 17, 2014)............................................12

*Greene v. Warner Music Grp.*,
  No. 23-cv-1555, 2024 WL 3045966 (S.D.N.Y. June 18, 2024)............................................19

*Gottwald v. Jones*,
  No. 11-cv-1432, 2011 WL 4344038 (S.D.N.Y. Sep. 12, 2011)..................................10, 11, 12

*Hines v. BMG Rights Mgmt. (US) LLC*,
  694 F. Supp. 3d 341 (S.D.N.Y. 2023)................................................................................11

*Hines v. Roc-A-Fella Records, LLC*,
  No. 19-CV-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020) ......................................6, 8, 9

*Howard v. Records*,
  615 F. Supp. 3d 190 (W.D.N.Y. 2022)................................................................................19

*Island Software & Comput. Serv. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005)..................................................................................................7

*Johnson v. Magnolia Pictures LLC*,
    No. 18-cv-9337, 2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019) ......................................20, 21

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995)...................................................................................................11

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011)..................................................................................................18

*Luar Music Corp. v. Universal Music Grp.*,
    847 F. Supp. 2d 299, 310 (D.P.R. 2012)..............................................................................18

*Matthews v. City of N.Y.*,
    No. 23-cv-3959, 2024 WL 4135483 (S.D.N.Y. Sep. 10, 2024) ......................................21, 22

*May v. Sony Music Entm't*,
    399 F. Supp. 3d 169 (S.D.N.Y. 2019)...................................................................................20

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015)..............................................................................10, 11

*Minder Music, Ltd. v. Mellow Smoke Music Co.*,
    No. 98-cv-4496, 1999 WL 820575 (S.D.N.Y. Oct. 13, 1999).................................................18

*N. Music Corp. v. King Record Distrib. Co.*,
    105 F. Supp. 393 (S.D.N.Y. 1952)........................................................................................11

*Neu Prods. Inc. v. Outside Interactive, Inc.*,
    No. 23-cv-4125, 2024 WL 2992351 (S.D.N.Y. June 13, 2024) ..............................................21

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) .........................................................................................15, 17

*Peabody & Co. LLC v. Wayne*,
    No. 22-cv-10316, 2024 WL 552495 (S.D.N.Y. Feb. 12, 2024) ..........................................7, 12

*Perry v. Mary Ann Liebert, Inc.*,
    No. 17-cv-5600, 2018 WL 2561029 (S.D.N.Y. June 4, 2018) ..............................................6, 8

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)..........................................................................................7, 9, 11

*Pickett v. Migos Touring, Inc.*,
    420 F. Supp. 3d 197 (S.D.N.Y. 2019).....................................................................................4

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)..................................................................................................18

29988/008/4746568

*Pyatt v. Raymond*,
    No. 10-cv-8764, 2011 WL 2078531 (S.D.N.Y. May 19, 2011) ..........................................7, 12

*Ringgold v. Black Entm't Tv, Inc.*,
    126 F.3d 70 (2d Cir. 1997)...................................................................................................13

*Robbins Music Corp. v. Weinstock*,
    107 F. Supp. 102 (S.D.N.Y. 1952)...................................................................................8, 18

*Rose v. Hewson*,
    No. 17-cv-1471, 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ...................................................10

*Sandoval v. New Line Cinema Corp.*,
    147 F.3d 215 (2d Cir. 1998)...........................................................................................14, 15

*Smith v. New Line Cinema*,
    No. 03-cv-5274, 2004 WL 2049232 (S.D.N.Y. Sept. 13, 2004) ...........................................21

*Straughter v. Raymond*,
    No. 08-cv-2170, 2011 WL 3651350 (C.D. Cal. Aug. 19, 2011) .................................................8

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)...............................................................................................21

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013)...............................................................14, 15, 16, 20

*TufAmerica, Inc. v. WB Music Corp.*,
    67 F. Supp. 3d 590 (S.D.N.Y. 2014).............................................................................1, 9, 15

*Vasquez v. Reece Sch.*,
    No. 1:22-cv-5986, 2024 WL 497433 (S.D.N.Y. Feb. 8, 2024) ...............................................22

*VMG Salsoul, LLC v. Ciccone*,
    824 F.3d 871 (9th Cir. 2016) .............................................................................................13

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985).....................................................................................14

*Weber v. Geffen*,
    63 F. Supp. 2d 458 (S.D.N.Y. 1999)...................................................................................19

*Williams v. Broadus*,
    No. 99-cv-10957, 2001 WL 984714 (S.D.N.Y. Aug. 27, 2001)....................................8, 13, 14

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)...............................................................................................14

iv

**Statutes**

17 U.S.C. §114(b) ..........................................................................................................4, 17

17 U.S.C. § 507 .................................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 6

Fed. R. Evid. 201 ................................................................................................................7

1 Nimmer on Copyright § 2.05[B].....................................................................................17

4 Nimmer on Copyright § 13.03 ........................................................................................9

v

Defendant Songs of Universal, Inc. ("Defendant") submits this memorandum of law in support of its motion to dismiss the Amended Complaint (ECF Dkt. # 36) (the "Am. Complaint") filed by TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) and to the extent that it seeks relief for any alleged infringement more than three years prior to the time when Plaintiff filed the Complaint.

## PRELIMINARY STATEMENT

In 1992, recording artist Mary J. Blige released her debut album, *What's the 411*, which contained the track "Real Love."  "Real Love" was a quick success, with the track reaching the Recording Industry Association of America's Gold certification by November 1992 and rising to #7 on the "Billboard Hot 100" near the end of 1992.

Now, more than 30 years after "Real Love" was released, Plaintiff appears out of the blue alleging that "Real Love" contains an uncleared "sample" of a few "drum sounds" from "Impeach the President."  Plaintiff's original complaint (ECF Dkt. #1) contained no allegations at all concerning the works' substantial similarity.  The absence of that allegation was fatal, as Plaintiff should have known, having had an earlier complaint dismissed on the same grounds a decade ago in *TufAmerica, Inc. v. WB Music Corp.*, 67 F. Supp. 3d 590 (S.D.N.Y. 2014).  As the Court explained there, Plaintiff's argument "assumes that every copying of any part of another artist's protected work is infringement.  But as Judge Newman explained for the Second Circuit . . . factual copying and actionable copying are not coextensive concepts."  *Id*. at 598.

In response to the first motion to dismiss, Plaintiff amended its complaint to add allegations concerning the similarity between "Impeach the President" and "Real Love" in the form of annotations onto the musical transcriptions that affirmatively refute Plaintiff's claim of substantial similarity.  As is apparent from simply reviewing Plaintiff's scrawled circles, it is trying to equate drum beats that are different on their face.  In any event, Plaintiff makes no

allegation as to which original components of "Impeach the President" it claims Defendant appropriated, as is required.

Moreover, these differences in the transcriptions of the relevant drum beats of the parties' compositions make plain what the ears of an ordinary listener can readily perceive: "Impeach the President" and "Real Love" sound nothing like one another in any respect that any listener could hear. While Plaintiff claims that "Real Love" sampled a separate composition, "Top Billin'", which, in turn, sampled "Impeach the President," *if "Top Billin'" sampled "Impeach the President", the amount sampled of "Impeach the President" was less than 1 second of a nearly 4-minute song, which is less than .5% of that work, which is not actionable*. Not surprisingly then, when the works are compared, they are so plainly different that a lay listener would be unable to discern any part of "Impeach the President" in "Real Love."

With no plausible allegations concerning substantial similarities in the compositions of the works, Plaintiff seeks to fill the gap by implying that Defendant is liable based on allegations that non-party UMG Recordings, Inc. ("UMG") entered into a settlement with Plaintiff concerning the "Impeach the President" and "Real Love" *sound recordings*, which represents a different copyright altogether. Of course, there are a variety of reasons why parties enter into agreements that do not relate to liability. And because there are two separate copyrights in music—one in the sound recording and one in the composition—there is no basis for asserting that infringing one is tantamount to infringing the other, as the caselaw uniformly establishes.

Moreover, even after Plaintiff was put on notice by the first motion to dismiss that its claims were not timely and that its second and third claims failed to state causes of action, Plaintiff failed to address these deficiencies in the Amended Complaint and instead asserts the same improper claims. Even if Plaintiff's infringement claim was cognizable, which it is not,

29988/008/4746568

Plaintiff brought the Complaint more than three years after its claim accrued.  As Plaintiff's claim is essentially one for ownership of "Real Love," it is wholly time-barred by the statute of limitations for copyright ownership claims.  Alternatively, Plaintiff is limited to, at most, financial relief going back only three years prior to the date this suit was commenced.  Additionally, Plaintiff's second and third claims are remedies and not causes of action and must be dismissed.

Because Plaintiff has failed to assert plausible claims, its Amended Complaint must be dismissed with prejudice, and because its infringement claim is untimely, its monetary remedy should in any case be limited to three years of retrospective relief.

## **FACTS[1]**

Recording artist Mary J. Blige, dubbed the "Queen of Hip-Hop Soul," released her debut album, *What's the 411*, in 1992, which contained the track "Real Love."  Declaration of Joelle A. Milov in Support of Defendant's Motion to Dismiss ("Milov Dec."), Exs. C-D.  "Real Love" contained a cleared sample of Audio Two's song "Top Billin'".

Ms. Blige's inaugural album was a near-instant success and received the Recording Industry Association of America's ("RIAA") Gold certification in September 1992 followed by receiving Platinum, Double Platinum, and Triple Platinum status in October 1992, February 1993, and January 2000, respectively.  Milov Dec., Ex. F.  "Real Love" was also released as a single to equal acclaim, achieving an RIAA Gold certification in November 1992, and rising to #7 on *Billboard Magazine*'s "Billboard Hot 100" on December 5, 1992.  *Id.*, Exs. G-H.  *Rolling Stone*, in an article published this year, ranked "Real Love" as #328 of "The 500 Greatest Songs

---

[1] The facts are drawn from the Amended Complaint, documents incorporated by reference in the Amended Complaint, and facts included in documents of which the Court is permitted to take judicial notice.  *See* Section I *infra*.

of All Time." *Id.*, Ex. I.  Ms. Blige has released 13 multiplatinum albums, won 9 Grammy

Awards, and has been nominated for such awards a total of 37 times.  *Id.*, Exs. C-D.  Defendant

is one of several publishers of the composition "Real Love" (but the only one which has been

sued).  Am. Compl. ¶ 11.

Plaintiff alleges that "[a]t the time of the release of 'Real Love,' both the sound recording

and musical composition contained uncleared samples and interpolations from 'Impeach the

President.'"  *Id.* ¶ 12.[2]  Specifically, Plaintiff alleges that "'Real Love' sampled drum sounds and

copied the corresponding compositional elements from the opening of Audio Two's 'Top

Billin',' which in turn sampled those same drum sounds and copied those same corresponding

compositional elements from 'Impeach the President.'"  *Id.* ¶ 13.  As set forth below, the

sampling of "drum sounds" from a sound recording is irrelevant to whether the copyright in a

musical composition has been infringed.  Comparisons of the compositions of "Impeach the

President" at 0:00, "Top Billin'" at 0:00 and 0:11, and "Real Love" at 0:03 and 1:44,

respectively, are listed below.  The Amended Complaint alleges that "Real Love" sampled the

drum sounds of "Top Billin'" but the composition was then modified by adding a hi-hat rhythm.

*Id.* ¶ 19.  Therefore, the "Real Love" hi-hat rhythm was neither sampled nor interpolated from

"Top Billin'" or "Impeach the President".  *See id.* at ¶¶ 13-19.

---

[2] There exist two separate copyrights in music—one related to the composition of a work and the
other to the sound recording.  *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205
(S.D.N.Y. 2019).  A copyright in a musical composition protects what is referred to as lyrics and
music, which can be captured by sheet music, whereas the copyright in a sound recording
protects the actual sounds embodied in a particular recording of a composition.  *See id.*; 17
U.S.C. §114(b).

29988/008/4746568



Declaration of Lawrence Ferrara, Ph.D. ("Ferrara Dec.") ¶ 2.  While Paragraph 3 of the Ferrara

Declaration contains a full drum legend, using that legend, Defendant has annotated a few types

of the notes on the above transcription.  *See* Ferrara Dec. ¶ 3.

Plaintiff claims that "[it] has advised Defendant repeatedly of the presence of the

uncleared samples and corresponding compositional elements from 'Impeach the President' in

'Real Love,' and Defendant has repeatedly refused to engage Plaintiff in substantive negotiations

to rectify the foregoing, let alone agreed to compensate Plaintiff for the past infringement or on

an ongoing basis."  Am. Compl. ¶ 21.  Further, Plaintiff alleges that "Defendant's refusal to

cooperate with Plaintiff is difficult to reconcile with the fact that Plaintiff reached an agreement

with UMG Recordings, Inc. [the "UMG Agreement"] with respect to the presence of the

uncleared samples from 'Impeach the President' on the master sound recording of 'Real Love.'"

*Id.* ¶ 22.

29988/008/4746568

Plaintiff filed its initial complaint on April 4, 2024 against Universal Music Publishing, Inc. ("UMP"), asserting claims for copyright infringement (Count I); a declaration that it owns the rights to the composition to "Impeach the President" and that Defendant's exploitation of a sample of "Impeach the President" constitutes infringement (Count II); and requesting an injunction restraining Defendant from infringing the composition of "Impeach the President" (Count III).  Thereafter, UMP moved to dismiss the Complaint.  *See* ECF Dkt. #s 25-28.  In response, Plaintiff filed its Amended Complaint, which Defendant now moves to dismiss.

<u>**ARGUMENT**</u>

## I.     THE MOTION TO DISMISS STANDARD

"To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'"  *Hines v. Roc-A-Fella Records, LLC*, No. 19-CV-4587, 2020 WL 1888832, at *2 (S.D.N.Y. Apr. 16, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009)).  "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Perry v. Mary Ann Liebert, Inc.*, No. 17-cv-5600, 2018 WL 2561029, *2 (S.D.N.Y. June 4, 2018) (quoting *Twombly*, 550 U.S. at 555), *aff'd*, 765 Fed. Appx. 470 (2d Cir. 2019).

On a motion to dismiss, a court may consider documents incorporated by reference into the complaint or those documents that are "integral" to the complaint.  *See, e.g.*, *Chambers v.*

*Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citation and internal quotation marks

omitted).  Relatedly, on a motion to dismiss a copyright infringement complaint, "'the works

themselves supersede and control contrary descriptions of them.' 'Courts in this district regularly

apply this rule in music copyright cases to listen to the songs at issue when evaluating a motion

to dismiss.'"  *See Peabody & Co. LLC v. Wayne*, No. 22-cv-10316, 2024 WL 552495, at *2

(S.D.N.Y. Feb. 12, 2024) (citation omitted).  Accordingly, at the pleading stage, a court may

make a determination that plaintiff's and defendant's works are not substantially similar because,

among other reasons, "no reasonable jury, properly instructed, could find that the two works are

substantially similar."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63

(2d Cir. 2010) (citation and internal quotation marks omitted); *see also Pyatt v. Raymond*, No.

10-cv-8764, 2011 WL 2078531, at *5 (S.D.N.Y. May 19, 2011). This case warrants dismissal on

this basis.

Pursuant to Fed. R. Evid. 201, at any point in the proceeding, "[t]he court may judicially

notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and

readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

Evid. 201(b)(2), (c)(1), (d).  And when a party makes the request, "[t]he court . . . must take

judicial notice if . . . the court is supplied with the necessary information."  Fed. R. Evid. 201(c).

Courts may take judicial notice of copyright registrations, *Island Software & Comput. Serv. v.

Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005), as well as "'facts that various newspapers,

magazines, and books were published solely as an indication of information in the public realm

at the time, not whether the contents of those articles were, in fact, true.'"  *Effie Film, LLC v.

Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012) (citation omitted).  As related to facts

concerning music, courts have taken judicial notice "that [a song] has been and is a well-known

and popular piece," *Robbins Music Corp. v. Weinstock*, 107 F. Supp. 102, 104 (S.D.N.Y. 1952); and information concerning an album's ranking on Billboard's official website. *Straughter v. Raymond*, No. 08-cv-2170, 2011 WL 3651350, at *12 (C.D. Cal. Aug. 19, 2011) (taking judicial notice of album ranking on Billboard's official website).

## II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT SUFFICIENTLY ALLEGE THAT THE WORKS ARE SUBSTANTIALLY SIMILAR AND THE WORKS ARE ALSO NOT SUBSTANTIALLY SIMILAR AS A MATTER OF LAW

Plaintiff's complaint fails because it does not properly allege substantial similarity and simply listening to the compositions at issue reveals *no perceptive similarity at all*.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).  To satisfy the second element of the claim, a plaintiff must allege "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hines*, 2020 WL 1888832, at *3-4 (citation and internal quotation marks omitted).

To sufficiently allege substantial similarity, the Plaintiff "must specify which aspects of the [offending work] allegedly infringed Plaintiff's [work]." *Id.* (citation and internal quotation marks omitted); *see also Perry*, 2018 WL 2561029, at *5 (citation and internal quotation marks omitted) (failure to allege which portions of defendant's work infringed plaintiff's work "fatal" because "plaintiff must 'demonstrate how defendant[] infringed on h[er] copyright.'").  This rule applies equally to claims of alleged music sampling; a plaintiff must allege substantial similarity of the sampled material as an element of its copyright infringement claim. *See, e.g.*, *Williams v. Broadus*, No. 99-cv-10957, 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001) (internal citations

8

and quotation marks omitted) ("Unlawful appropriation is established 'by showing that the second work bears substantial similarity to protected expression in the earlier work.  That this case involves the practice of sampling prior music into a new composition does not alter this analysis."); 4 Nimmer on Copyright § 13.03 (noting that for sampling, "the inquiry should remain whether the sampled portions are substantially similar to plaintiff's work.  If so—but only if so—then liability should result.").  Because Plaintiff has not sufficiently pleaded substantial similarity, the Amended Complaint must be dismissed.  *See Peter F. Gaito*, 602 F.3d.

Plaintiff's original complaint failed even to use the terms "substantial similarity" at all, let alone provide facts that indicate which aspects of "Real Love" are substantially similar to protectable portions of "Impeach the President."  *See Hines*, 2020 WL 1888832, at *3-4. Instead, Plaintiff assumed that sampling of a sound recording *per se* constitutes infringement of the underlying composition, regardless of whether the work incorporating the sample is substantially similar to Plaintiff's work in any way.  *See* Compl. ¶¶ 11-12; Letter to Court, ECF Dkt. # 20 at 2; *WB Music Corp.*, 67 F. Supp. 3d at 598 (dismissing complaint alleging that defendant's sampling of single word "oh" amounted to infringement, and finding "[P]laintiff's argument necessarily – and incorrectly – assumes that every copying of any part of another artist's protected work is infringement.").

In response to UMP's motion to dismiss, Plaintiff attempted to cure this deficiency by providing a markup of musical transcriptions, without any corresponding narrative, allegedly showing the similarities between the two compositions.  But, in the first instance, these markups are inaccurate given that Plaintiff has drawn red boxes or circles around elements that are not similar in order to make the works appear more alike.  *See* Am. Compl. ¶ 20 (treating as similar open hi-hats in "Impeach the President" and closed hi-hats in "Real Love" when they are

different, treating two hi-hats as similar when the one in "Impeach the President" is combined

with a snare and the one in "Real Love" is combined with a kick drum, etc.); *see* Ferrara Dec.

¶ 3. Moreover, Plaintiff's transcriptions do not state which of the allegedly similar elements are

original to Plaintiff or explain how the encircled bits create similarity given that they are broken

up by *other elements* throughout the series of those red circles. Most importantly, the markup

fails to overcome the fact that no lay observer would be able to detect "Impeach the President" in

"Real Love." As such, Plaintiff has failed to plead substantial similarity and the Amended

Complaint must be dismissed.

       A.    *Plaintiff Has Failed to Plead that any Appropriated Elements are Original*

       Even had Plaintiff accurately described the minimal similarities between the parties'

works, the Amended Complaint fails to allege which, if any, of the shared compositional

elements are original. *See Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 331

(S.D.N.Y. 2021) (citation and internal quotation marks omitted) ("[O]nly the protectable portions

of the copyrighted works are compared for substantial similarity."); *see, e.g.*, *Rose v. Hewson*,

No. 17-cv-1471, 2018 WL 626350, at *5 (S.D.N.Y. Jan. 30, 2018) ("there is a serious question

as to whether the plaintiff has plausibly identified a fragment in 'Nae Slappin' that is sufficiently

original to merit copyright protection."). Given that the Plaintiff appears to be attempting to

protect rhythm, which is generally not protectable, Plaintiff's failure to plead that the similarities

in the parties' compositions include original content is even more surprising. *See, e.g.*, *Rose*,

2018 WL 626350, at *3 ("Generally, individual notes and common rhythms are not

protectable."); *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015) ("common

rhythms, song structures, and harmonic progressions are not protected"); *Gottwald v. Jones*, No.

11-cv-1432, 2011 WL 4344038, at *5 (S.D.N.Y. Sep. 12, 2011) ("rhythmic pulse" not

copyrightable and therefore not sufficient to make works substantially similar); *see generally N. Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952) ("There is only a limited amount of tempos; these appear to have been long since exhausted; originality of rhythm is a rarity, if not an impossibility."). Because Plaintiff has made no allegations concerning the protectability of the similar elements, the Amended Complaint should be dismissed.[3]

B.    *An Ordinary Observer Would Not Recognize the Protectable Portions of "Impeach the President" in "Real Love".*

"In most cases, the test for substantial similarity is the so-called ordinary observer test . . . : whether an average lay observer would [] recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) (citation and internal quotation marks omitted). In making its comparison of the works at issue, a court is "principally guided by comparing the contested [work]'s total concept and feel with that of the allegedly infringing work, as instructed by [its] good eyes and common sense." *Peter F. Gaito*, 602 F.3d at 66.

Under the ordinary observer test, a court considers "'whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Gottwald*, 2011 WL 4344038, at *3 (citation omitted). "In the context of

---

[3] To the extent Plaintiff claims in Paragraph 10 of the Amended Complaint that all portions of the composition of "Impeach the President" are protectable because the work, as a whole, is registered, it is incorrect as a matter of law. *See e.g.*, *Hines v. BMG Rights Mgmt. (US) LLC*, 694 F. Supp. 3d 341 (S.D.N.Y. 2023) (citation and internal quotation marks omitted) ("[E]ven if Hines holds a valid copyright in Help Me more generally, he may receive protection only for his original additions to a work that is already in the public domain."); *McDonald*, 138 F. Supp. 3d at 454 ("Even a commonplace, public domain melody could become part of a copyrightable musical composition when combined in an original way with other elements of songwriting like harmony, rhythm, and structure.").

11

music plagiarism, the Second Circuit has described this ordinary observer test as requiring proof that 'defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.'" *Pyatt*, 2011 WL 2078531, at *4 (quoting *Repp & K&R Music, Inc. v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)).

With this motion, Defendant has submitted to the Court copies of "Impeach the President" and "Real Love." *See Peabody*, 2024 WL 552495, at *2; Milov Dec, Exs. A-B.  As will be clear from an aural comparison of the songs, the works sound so different from one another that a listener of "Real Love" would not recognize any perceptible similarities to "Impeach the President," with respect to the drum rhythms or any other musical element.  This case founders entirely upon simply listening to these two songs, which bear no similarity to one another.  *See Francescatti v. Germanotta*, No. 11-cv-5270, 2014 WL 2767231, at *14-15 (N.D. Ill. June 17, 2014) (internal citation omitted) ("To determine whether the alleged infringing work has captured the total concept and feel of the copyrighted work under the ordinary observer test, courts make 'side-by-side . . . comparisons of works to determine similarity.' Where the works are musical, a court compares them by listening to the music and reviewing the transcriptions of the music to determine whether a reasonable juror could hear the similarities between the songs.").

Due to the differences between the works, the Court should dismiss Plaintiff's Amended Complaint.  *See Gottwald*, 2011 WL 4344038, at *5 ("The music of the two works is not at all similar." ; "Since no 'average lay observer would recognize ['Tik Tok'] as having been appropriated from ['My Slushy'],' the My Slushy Parties' counterclaim must be dismissed."); *Pyatt*, 2011 WL 2078531, at *7 (on motion to dismiss, finding total concept and feel of songs to

differ, such that "average observer would not recognize Usher's lyrics as having been

appropriated from Pyatt's 'Court Up'", when "[a] comparison of the two songs illustrates that

there are no identical lyrics[, and] [t]he two songs also do not share a common theme."); *see also*

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 874 (9th Cir. 2016) ("agree[ing] with the district

court that, as a matter of law, a general audience would not recognize the brief snippet in Vogue

as originating from Love Break").

> C.   *The Fragmented Literal Similarity Test Should Not Be Used, but Even if it Is, the Works are Not Substantially Similar Because Any Use of Plaintiff's Work is Quantitatively and Qualitatively De Minimis*

Courts sometimes apply a different test for substantial similarity when a defendant

sampled plaintiff's work.  In these cases, instead of applying the ordinary observer test, courts

may apply a "fragmented literal similarity" analysis.  Fragmented literal similarity "refers to

exact copying of a portion of a work."  *Ringgold v. Black Entm't Tv, Inc.*, 126 F.3d 70, 75 n. 3

(2d Cir. 1997) (citing Nimmer, § 1303[A][2]).  Thus, courts have applied the fragmented literal

similarity test when "parts of the pre-existing work are copied, [for example] note for note, in the

new work."  *See, e.g.*, *Broadus*, 2001 WL 984714, at *3; *see also Castle Rock Entm't, Inc. v.*

*Carol Publ'g Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998) (in non-sampling case noting that the

"'fragmented literal similarity' test . . . focuses upon copying of direct quotations or close

paraphrasing").

Here, the court should not apply the fragmented literal similarity test because "Real

Love" does not copy "Impeach the President" "note for note" or by "direct quotation[] or close

paraphrasing" of any musical elements.  *Broadus*, 2001 WL 984714, at *3; *Castle Rock*, 150

F.3d at 140.  Indeed, as can been seen in the transcriptions above, the kick drum, snare drum, and

hi-hat rhythms in the compositions of "Impeach the President" and "Real Love" are different—

indeed, they are broken up by other notes even in Plaintiff's Amended Complaint—such that this is not a case of "note for note" copying. *See Broadus*, 2001 WL 984714, at *3; *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985); Ferrara Dec. ¶¶ 2-4. As such, the fragmented literal similarity test should not be applied and instead the Court should apply "[t]he standard test for substantial similarity," the ordinary observer test, which as discussed above, would find the works not substantially similar as a matter of law. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001).

However, even if the Court applied the fragmented literal similarity test, it should nonetheless find the works not substantially similar and dismiss the Complaint. At the motion to dismiss phase, in assessing fragmented literal similarity, a court "considers whether the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionably copying) has occurred." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 598 (S.D.N.Y. 2013). Here, the works are both quantitatively and qualitatively so different that they cannot support plaintiff's infringement claim.

There is no question that if sampling of "Impeach the President" was done to create "Top Billin'", the quantity of "Impeach the President" that was copied in "Real Love" is *de minimis*. "To establish that the infringement of a copyright is *de minimis*, and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'" *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) (quoting *Ringgold*, 126 F.3d at 74). "'In determining whether or not the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work,

14

courts often look to the amount of the copyrighted work that was copied . . . ." *TufAmerica, Inc.*, 968 F. Supp. 2d at 598-99 (quoting *Sandoval*, 147 F.3d at 217).

Here, if "Top Billin'" sampled from "Impeach the President," that sample came from either the first 1.5 beats of bar 1 (at 0:00) or the first 1.5 beats of bar 2 (0:03) of "Impeach the President" because those are the only two sections of the work where the following sounds are isolated and consecutive: a kick drum combined with a closed hi-hat on beat 1; a closed hi-hat with no other element on beat 1&; and a snare that is combined with a closed hi-hat on the first half of beat 2. *See* Ferrara Dec. ¶¶ 2-3. These beats amount to less than 1 second of the composition (0.998 seconds in duration in case sampling of bar 1 happened; 0.996 in case sampling of bar 2 happened). The full "Impeach the President" tracks is 3 minutes and 58.561 seconds long. ***Accordingly, if sampling occurred, the amount sampled of "Impeach the President" in "Top Billin'" amounts to .418% or .417% of the entire "Impeach the President" track***. This astonishingly fleeting amount makes plain that use of "Impeach the President" does not rise above the *de minimis* level. *See WB Music Corp.*, 67 F. Supp. 3d at 595-96 ("The allegedly sampled portion of the Master constitutes only a fraction of a second in a recording that is about 2 minutes and 35 seconds long. Were the Court to find 'oh' quantitatively significant to [the composition] . . . ., it in effect would read the quantitative significance element out of the substantial similarity test. This the Court will not do."); *see also Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) (three note sequence, which, when played, lasted six seconds and approximately 2% of entire work, not quantitatively significant). *Cf. Sandoval*, 147 F.3d at 218 ("Because Sandoval's photographs appear fleetingly and are obscured, severely out of focus, and virtually unidentifiable, we find the use of those photographs to be *de minimis*."). Accordingly, the Court should find the works not substantially similar.

15

Plaintiff has made no allegation as to the qualitative importance of the portion of the composition of "Impeach the President" that is at issue in this dispute, as one would have expected when the amount sampled amounts to less than 1 second of a nearly 4-minute composition. Accordingly, without any such allegations related to the importance of the interpolated composition, and combined with the negligible quantity taken should sampling have occurred at all, the Court should find the works not substantially similar, dismissing the Amended Complaint. *See TufAmerica*, 968 F. Supp. 2d at 605, 605-06 (internal citation omitted) ("The sequence is in no way 'the heart of the composition,' or in any other way qualitatively important or unique, and it is so insignificant quantitatively that together these factors preclude any finding of actionable infringement based on the use of this sample.").

> D.    *The UMG Agreement is Irrelevant to Plaintiff's Claims.*

With no plausible allegations concerning substantial similarities between the compositions of "Impeach the President" and "Real Love," Plaintiff instead insinuates that Defendant infringes simply because non-party UMG settled Plaintiff's claim of infringement based on "Real Love" having allegedly sampled the *sound recording* of "Impeach the President." *See* Am. Compl. ¶ 22. According to Plaintiff, Defendant's failure to compensate it for the alleged usage of uncleared samples and compositional elements of "Impeach the President" in the composition of "Real Love" "is difficult to reconcile with the fact that Plaintiff reached an agreement UMG [] with respect to the presence of the uncleared samples from 'Impeach the President' on the master sound recording of 'Real Love.'" Am. Compl. ¶¶ 21-22. Plaintiff is confusing the copyright in a sound recording with the copyright in a musical composition. They are different species of copyrights and protect different types of expression.

16

For multiple reasons, the UMG Agreement concerning the "Impeach the President" sound recording provides no basis for Plaintiff's claim that Defendant is infringing Plaintiff's copyright in the composition of "Impeach the President."  First, a party may enter into a settlement agreement for a variety of reasons that do not relate to an admission or finding of liability.  Indeed, the UMG Agreement disclaims any admission of liability or wrongdoing on the part of UMG.  Milov Dec., Ex. J.  Second, because there exist two separate copyrights in music—one related to the composition of a work and the other to the sound recording (*see supra* n.2)—a work can readily infringe one without infringing the other.  As noted above, the copyright in a sound recording protects the actual sounds embodied in a recording, *see* 17 U.S.C. §114(b), where as a copyright in a musical composition protects the melody, harmony, rhythm and other musical elements of a musical composition.  *See* 1 Nimmer on Copyright § 2.05[B].  Thus, in *Newton v. Diamond*, the defendant musical group The Beastie Boys licensed "a six-second, three-note segment" of one of Plaintiff's *sound recordings*, but did not obtain a license for the underlying composition, and plaintiff brought suit.  349 F.3d 591.  The district court granted summary judgment to the defendants, because the note sequence was unprotectable, and the Ninth Circuit affirmed on the ground that, even assuming the sequence were protectable, the use of the three-note segment was *de minimis* and insufficient to establish liability under the Copyright Act.  *Id.*  Accordingly, any reference to the UMG Agreement is irrelevant and does not bear on the question of Defendant's alleged infringement of the relevant musical composition.

## III.   THE STATUTE OF LIMITATIONS LIMITS ANY POTENTIAL RECOVERY.

Under § 507(b) of the Copyright Act, a copyright claimant cannot bring suit for relief "unless [the action] is commenced within three years after the claim accrued."  17 U.S.C. § 507.

17

A copyright infringement claim accrues when "the copyright holder discovers, or with due

diligence should have discovered, the infringement . . . ."  *Psihoyos v. John Wiley & Sons, Inc.*,

748 F.3d 120, 124 (2d Cir. 2014).  Moreover, a claim for ownership of a copyright, even where

disguised as an infringement claim, accrues only once, when the plaintiff knew or should have

known of a violation of its ownership.  *See Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011);

*Minder Music, Ltd. v. Mellow Smoke Music Co.,* No. 98-cv-4496, 1999 WL 820575, at *1-2

(S.D.N.Y. Oct. 13, 1999) (regardless of whether a plaintiff styles its claim as one for

infringement, if ownership is at issue, then the statute of limitations will bar the copyright

ownership claim).

   Here, it is indisputable that Plaintiff actually knew about its claim more than three years

prior to bringing suit.  The UMG Agreement, on which Plaintiff itself relies in its Amended

Complaint, states that Plaintiff contacted UMG about the dispute on March 9, 2021, which is

more than three years before it filed this suit on April 4, 2024. *See Chambers*, 282 F.3d at 152-

53; Milov Dec, Ex. J; Am. Complaint ¶ 22.  Even absent that admission, Plaintiff, active in both

the music business and in litigation, assuredly should have known of its claim long prior to suing

in April 2024.  The Court may take judicial notice of the fact that "Real Love" has long been

considered a huge commercial success.  *See, e.g.*, *Robbins Music*, 107 F. Supp. at 104; Milov

Dec. Exs. G-I.  Such popularity and widespread dissemination of "Real Love", dating back *more

than thirty years*, should have put any reasonable copyright owner on constructive notice of its

claim long ago as a matter of law.  *See Luar Music Corp. v. Universal Music Grp.*, Inc., 847 F.

Supp. 2d 299, 310 (D.P.R. 2012) (reasonable party would have discovered claim due to fact "the

album Reggaeton Latino, which the Copyrighted Work appears on, has sold over 500,000 units

and digital downloads and The Last Don and the Last Done Live have sold millions of units and

digital downloads and were certified multi-platinum.").

     While Plaintiff attempts to be deliberately vague, it is nevertheless clear that the

Amended Complaint contains an ownership claim, which should be wholly barred as untimely

given Plaintiff's delay.  For example, Plaintiff now claims that "'Real Love' *is* a compositional

interpolation of the drum composition in 'Impeach The President'" Am. Compl., ¶ 16 (emphasis

added), and not simply that it uses a portion of the music.  Further, in its second cause of action,

Plaintiff seeks a declaration that it owns "Impeach the President"—a red herring given that

Defendant is not claiming and has not claimed ownership of "Impeach the President"—and

claims that "Real Love" infringes "Impeach the President," because it constitutes a derivative

work of "Impeach the President."  Am. Compl. ¶¶ 43, 48.  At least one other court in this district

has interpreted a similar claim to be one sounding in ownership.[4]  *See Greene v. Warner Music*

*Grp.*, No. 23-cv-1555 (S.D.N.Y.), ECF Dkt. # 58 ¶¶ 92-101 (second claim alleging that plaintiff

is owner of composition and that defendants infringed plaintiff's right to, *inter alia*, create

derivative work); *Greene*, No. 23-cv-1555, 2024 WL 3045966, at *13 (S.D.N.Y. June 18, 2024)

(interpreting second claim—for declaration of ownership of plaintiff's work and that defendant's

---

[4] Given that Plaintiff is seeking to elide the difference between the "Real Love" sound recording and composition in the Amended Complaint, Plaintiff's approach with non-party UMG is instructive as to the real basis for its claim as to the "Real Love" composition.  The UMG Agreement indicates that Plaintiff claimed ownership of the "Real Love" sound recording. Specifically, when Plaintiff contacted UMG on March 9, 2021, it "demanded . . . a full accounting with corresponding royalty payments for a period covering three (3) years prior to the Notification Date", a remedy only available to a co-owner.  Milov Dec., Ex. J at 1; *see Howard v. Records*, 615 F. Supp. 3d 190, 194 (W.D.N.Y. 2022) (finding claim to be one for ownership because plaintiff "'is claiming ownership over a copyright owned by someone else and is seeking royalty payments in virtue of his asserted ownership.'"); *Weber v. Geffen*, 63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999) (citation and internal quotation marks omitted) ("[T]he duty to account for profits presupposes a relationship as co-owners of the copyright, a relationship plaintiffs are time-barred from asserting.").

work was unauthorized derivative work—to "ostensibly represent[] Plaintiff's attempt to assert

an interest in [defendant's work]").  For the reasons described above, Plaintiff's claim accrued

long ago, and, as a disguised ownership claim, it is time barred.  *See, e.g.*, *Charles v. Seinfeld*,

410 F. Supp. 3d 656 (S.D.N.Y. 2019), *aff'd,* 803 Fed. Appx. 550 (2d Cir. 2020).

In the event that the claim is not wholly time-barred, Plaintiff's potential recovery in this

action must be limited to three years of damages prior to filing the Complaint.  *See, e.g.*, *May v.

Sony Music Entm't*, 399 F. Supp. 3d 169, 192 (S.D.N.Y. 2019) (granting motion to dismiss in

terms of limiting damages to three years prior to filing suit), *adopted in pertinent part*, 399 F.

Supp. 3d 169 (S.D.N.Y. 2019); *TufAmerica*, 968 F. Supp. 2d at 609 (applying injury rule and

limiting claims to three years prior to filing suit).  Plaintiff cannot reasonably dispute such a

limitation when on March 9, 2021 it contacted UMG, seeking certain information about royalties

earned from the exploitation of "Real Love" for the prior three years.  Milov Dec., Ex. J.

## IV.    PLAINTIFF'S SECOND AND THIRD CLAIMS ARE REMEDIES, NOT CAUSES OF ACTION, AND MUST BE DISMISSED

Plaintiff's second and third causes of action do not state claims and therefore must be

dismissed.  Plaintiff's second cause of action seeks a declaration "that [Plaintiff] is the owner of

all rights in and to the musical composition 'Impeach the President,' and a declaration that

Defendant's ongoing exploitation of the musical composition 'Impeach the President,' through

the incorporation of uncleared samples and corresponding compositional elements from the

musical composition 'Impeach the President' in the musical composition 'Real Love' constitutes

copyright infringement."  Am. Compl. ¶ 48.  "The Declaratory Judgment Act does not create an

independent cause of action.  Rather, '[i]ts operation is procedural only–to provide a form of

relief previously unavailable."  *Johnson v. Magnolia Pictures LLC*, No. 18-cv-9337, 2019 WL

4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (citation omitted).  Because Plaintiff seeks nothing in

this claim that would not be covered by its infringement cause of action, the claim must be

dismissed as duplicative. *Smith v. New Line Cinema*, No. 03-cv-5274, 2004 WL 2049232, at *5

(S.D.N.Y. Sept. 13, 2004) (dismissing claim for a declaration of infringement as duplicative of

infringement claim); *see also Neu Prods. Inc. v. Outside Interactive, Inc.*, No. 23-cv-4125, 2024

WL 2992351, at *3 (S.D.N.Y. June 13, 2024) (finding that claim for declaratory judgment that

plaintiff owned copyright failed to allege claim under Copyright Act).

Plaintiff's third claim for injunctive relief seeks "preliminary and permanent injunctive

relief enjoining and restraining Defendant, and anyone acting at its direction or under its control,

from infringing Plaintiff's copyright in the musical composition 'Impeach the President,'

pursuant to 17 U.S.C. § 502 and common law principles of contract law."  Am. Compl. ¶ 59.

"Like a declaratory judgment, 'an injunction is a remedy, not a separate cause of action.'"

*Johnson*, 2019 WL 4412483, at *4 n. 4.  Accordingly, Plaintiff's third cause of action for

injunctive relief must be dismissed.  *See Smith*, 2004 WL 2049232, at *5.

## V.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH NO FURTHER LEAVE TO AMEND

The Court should deny Plaintiff any further leave to amend.  "Leave may be denied 'for

good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing

party.'"  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).

Further, "'repeated failure to cure deficiencies' weighs against granting further leave to amend."

*Matthews v. City of N.Y.*, No. 23-cv-3959, 2024 WL 4135483, at *9 (S.D.N.Y. Sep. 10, 2024)

(Ho, J.).

Here, Plaintiff has long known that its allegations of substantial similarity were

insufficient.  Further, UMP moved to dismiss Plaintiff's initial Complaint, including in its

motion that Plaintiff's claims were barred in full, or in part, by the statute of limitations and that

its second and third causes of actions failed to state claims.  Plaintiff, however, addressed none of these infirmities in its Amended Complaint and has thus conceded them.  *See Canas v. Whitaker*, No. 19-cv-06031, 2019 WL 2287789, at *5 (W.D.N.Y. May 29, 2019) (citation and internal quotation marks omitted) ("It is well settled in this Circuit that [a] plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").  Under these circumstances, further leave to amend would be improper, and the Amended Complaint should be dismissed with prejudice.  *See Matthews*, 2024 WL 4135483, at *9; *Vasquez v. Reece Sch.*, No. 1:22-cv-5986, 2024 WL 497433, at *2 (S.D.N.Y. Feb. 8, 2024).

## <u>CONCLUSION</u>

For the aforementioned reasons, the Court should grant Defendant's motion to dismiss Plaintiff's Amended Complaint with prejudice.  Alternatively, the Court should find that Plaintiff is unable to recover for any alleged infringement prior to April 4, 2021.

Dated: November 12, 2024

COWAN, LIEBOWITZ & LATMAN, P.C.

_____

Richard S. Mandel (rsm@cll.com)
Joelle A. Milov (jam@cll.com)
114 West 47th Street
New York, NY 10036-1525
212.790.9200 (Telephone)
212.575.0671 (Facsimile)

*Attorneys for Defendant Songs of Universal, Inc.*

22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                              :

                          Plaintiff,                 :    Case No. 1:24-cv-2585-DEH

              v.                                     :

SONGS OF UNIVERSAL, INC.,                            :

                          Defendant.                 :

-------------------------------------------------------------x

### DECLARATION OF LAWRENCE FERRARA, Ph.D

LAWRENCE FERRARA, Ph.D., pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am Professor of Music and Director Emeritus of all studies (B.M. through Ph.D.) in Music and the Performing Arts in New York University's Steinhardt School. I have written and co-written published books and articles (in peer-reviewed journals) regarding music analysis, methodologies in music research, and other scholarly areas related to music. I sit on editorial boards of peer-reviewed journals. I have provided analyses and opinions in connection with music copyright issues for more than 25 years. I submit this declaration in support of Defendant Songs of Universal, Inc.'s Motion to Dismiss the Complaint filed by Plaintiff TufAmerica, Inc. d/b/a Tuff City Records. This declaration is based on my personal knowledge of the matters discussed herein.

2.      Using the computer music notation software Sibelius, I created the below comparative musical transcriptions of the portions of the compositions at issue in "Impeach the President," "Top Billin'", and "Real Love." Starting times of the relevant portions are in the left margins of each tripartite transcription below:



3.    The relevant drum legend that applies to this transcription is below:



4.    As shown in both tripartite transcriptions above, while the kick drum and snare drum rhythms in the *compositions* in "Top Billin'" and "Real Love" are identical, the kick drum and snare drum rhythms in "Impeach the President" are different.  In addition, the newly created hi-hat rhythms in "Real Love" are different from the hi-hat rhythms in both "Top Billin'" and "Impeach the President."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT.  EXECUTED ON NOVEMBER 8, 2024 AT NEW YORK, NEW YORK.

_____
By: Lawrence Ferrara, Ph.D.
For: Lawrence Ferrara, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                           :

              Plaintiff,                      :    Case No. 1:24-cv-2585-DEH

        v.                                        :

SONGS OF UNIVERSAL, INC.,                   :

              Defendant.                      :
-------------------------------------------------------------x

### DECLARATION OF JOELLE A. MILOV IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1.      I am an attorney at Cowan, Liebowitz & Latman, P.C., attorneys for Defendant Songs of Universal, Inc. ("Defendant"). I submit this declaration in support of Defendant's Motion to Dismiss the Complaint filed by Plaintiff TufAmerica, Inc. d/b/a Tuff City Records. This declaration is based on my personal knowledge of the events and matters discussed herein.

2.      Attached hereto as Exhibit A is a true and correct copy of the song "Impeach the President" performed by The Honey Drippers. Pursuant to Rule I.C of Your Honor's Individual Rules and Practices in Civil Cases, following the electronic filing of this motion, Defendant will request a link to upload the mp3 file of the song by electronic file transfer protocol.

3.      Attached hereto as Exhibit B is a true and correct copy of the song "Real Love" performed by Mary J. Blige. Pursuant to Rule I.C of Your Honor's Individual Rules and Practices in Civil Cases, following the electronic filing of this motion, Defendant will request a link to upload the mp3 file of the song by electronic file transfer protocol.

4.      Attached as Exhibit C is a true and correct copy of a printout from *Billboard Magazine*'s website concerning Mary J. Blige.

5.      Attached as Exhibit D is a true and correct copy of a printout from the Recording

Academy's Grammy Awards website concerning Mary J. Blige.

6.      Attached as Exhibit E is a true and correct copy of a printout from the United States Copyright Office concerning the registration of the composition of "Real Love," recorded as Copyright Registration Number PA0001928877.

7.      Attached as Exhibit F is a true and correct copy of a printout from the Recording Industry Association concerning Mary J. Blige's album, *What's the 411*.

8.      Attached as Exhibit G is a true and correct copy of a printout from the Recording Industry Association concerning Mary J. Blige's single, "Real Love."

9.      Attached as Exhibit H is a true and correct copy of a printout from *Billboard Magazine*'s website concerning the "Billboard Hot 100" on December 5, 1992.

10.     Attached as Exhibit I is a true and correct copy of a printout of a portion of a February 16, 2024 article, "The 500 Greatest Songs of All Time," published by *Rolling Stone*.

11.     Attached as Exhibit J are true and correct redacted excerpts of an agreement between TufAmerica, Inc. and UMG Recordings, Inc. ("UMG").  An unredacted copy of the excerpts are being filed with Defendant and Non-Party UMG's Motion to Seal that is being filed contemporaneously with Defendant's Motion to Dismiss.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED ON NOVEMBER 12, 2024 AT PITTSBURGH, PENNSYLVANIA.


_____
        Joelle A. Milov

EXHIBIT A

Copy of the song "Impeach the President" performed by The Honey Drippers. Pursuant to Rule I.C of Your Honor's Individual Rules and Practices in Civil Cases, following the electronic filing of this motion, Defendant will request a link to upload the mp3 file of the song by electronic file transfer protocol.

29988/008/4721725

EXHIBIT B

Copy of the song "Real Love" performed by Mary J. Blige.  Pursuant to Rule I.C of Your Honor's Individual Rules and Practices in Civil Cases, following the electronic filing of this motion, Defendant will request a link to upload the mp3 file of the song by electronic file transfer protocol.

29988/008/4721726

EXHIBIT C

Mary J. Blige | Biography, Music & News | Billboard
https://www.billboard.com/artist/mary-j-blige/
09-11-2024

Mary J. Blige | Biography, Music & News | Billboard
https://www.billboard.com/artist/mary-j-blige/
09-11-2024

## Latest News

**R&B/HIP-HOP**

Mary J. Blige Talks Rock Hall Induction & 'My Life' 30th Anniversary: 'My Fans Have Given Me So Much'

By Carl Lamarre
Aug 7, 2024 10:49 am

---

**R&B/HIP-HOP**

16 Times Rap and R&B Stars Curated or Executive Produced 21st Century Movie Soundtracks

By Heran Mamo
Jun 10, 2024 2:55 pm

---

**BUSINESS NEWS**

Former ICM Partner Dennis Ashley Jr. and Son Launch New Multimedia Firm

By Dave Brooks
Jun 6, 2024 3:26 pm

---

**PRODUCT RECOMMENDATIONS**

Mary J. Blige Announces Boot Collaboration With Giuseppe Zanotti. Shop the Limited Release

By Latifah Muhammad
May 12, 2024 3:45 pm

---

**R&B/HIP-HOP**

Mary J. Blige Brings Her Strength of a Woman Festival and Summit to New York City for 2024

By Gail Mitchell
May 3, 2024 11:57 am

---

**R&B/HIP-HOP**

Mary J. Blige Reveals Plan to Retire in 'Five or Six Years'... Maybe

By Gil Kaufman
Apr 30, 2024 1:01 pm

---

**R&B/HIP-HOP**

Mary J. Blige Is 'Still Trying to Process' Her Induction Into the Rock & Roll Hall of Fame: 'I'm Just So Grateful'

By Itana Aníñon
Apr 25, 2024 5:11 pm

---

**MUSIC NEWS**

Mary J. Blige Is 'Beyond Grateful' For 2024 Rock and Roll Hall of Fame Induction

By Gil Kaufman
Apr 22, 2024 8:10 am

---

**MUSIC NEWS**

Mary J. Blige Responds to Flavor Flav Comparing Her to Taylor Swift

By Itana Aníñon
Apr 16, 2024 5:15 pm

---

**LEGAL NEWS**

Mary J. Blige Sample Suit, Madonna Concert Case, Morgan Wallen Charges & More Top Legal News

By Bill Donahue
Apr 9, 2024 11:58 am

Mary J. Blige | Biography, Music & News | Billboard
https://www.billboard.com/artist/mary-j-blige/
09-11-2024

**READ MORE STORIES**

ADVERTISEMENT



## Most Popular

1. *Hollywood*
   James Earl Jones, Authoritative Actor and Voice of Darth Vader, Dies at 93

2. *sheknows*
   Prince Harry & Meghan Markle Made This Announcement Mere Hours After Kate Middleton's Cancer Update Video

3. VIBE
   JAY-Z Explains Why Kendrick Lamar Was Chosen To Perform At Super Bowl Halftime Show

4. *Sportico*
   Navarro, Pegula Highlight Billionaire Parents at U.S. Open

## You May Also Like

*Hollywood*
Toronto: Jude Law Shines as a Haunted Lawman in 'The Order,' Could Land First Oscar Nom in 21 Years
13 hrs ago

VIBE
Flavor Flav Trolls Trump's Claim Of Immigrants Eating Pets With Warning To Snoop Dogg, Pitbull
4 hrs ago

WWD
Harris-Walz Campaign Release Friendship Bracelets March Following Taylor Swift's Endorsement
1 hr ago

*Sportico*
WNBA's Sun Tease Potential Caitlin Clark Playoff Matchup
4 hrs ago



EXHIBIT D

Mary J. Blige | Artist | GRAMMY.com
https://www.grammy.com/artists/mary-j-blige/779
09-11-2024

GRAMMY AWARDS    About   Awards   News   Videos   Genres   Shop   GRAMMY GO                    Login



ARTIST

# Mary J. Blige

| WINS* | NOMINATIONS* |
|-------|--------------|
| **9** | 37 |

65th Annual GRAMMY Awards


NOMINATION
Album Of The Year
**Good Morning Gorgeous (Deluxe)**

Next ›

**VIEW ALL NOMINATIONS FOR THIS ARTIST**
Through the 65th GRAMMY Awards

---

*""When life is real, it's not going to be smooth.""*

- Born Mary Jane Blige Jan. 11, 1971, in the Bronx, New York.

- Mary J. Blige stepped into the spotlight with her 1992 debut album, *What's The 411*, which gave her a Top 10 hit with "Real Love." Blige had success with her next No. 7 album, *My Life*, which featured the hits "I'm Going Down," "Mary Jane," "I Love You," and the title track, which became a signature song for Blige.

- Blige won her first career GRAMMY for 1995 for Best Rap Performance By A Duo Or Group for "I'll Be There For You/You're All I Need To Get By," a collaboration with **Method Man**. She won her first solo GRAMMY for Best Female R&B Vocal Performance in 2003 for "He Think I Don't Know" from her album, *No More Drama*. At the **39th GRAMMY Awards** in 1997, Blige made her GRAMMY stage debut as part of a "Waiting To Exhale" medley with **Aretha Franklin, Whitney Houston, CeCe Winans**, and Brandy.

- Blige was discovered when an amateur recording of Anita Baker's "Caught Up In The Rapture" that Blige made in a mall recording booth made its way to a record label executive who promptly signed her to a contract.

- Blige participated in an installment of GRAMMY U SoundChecks, which featured a discussion and answer session along with a live performance for students.

- In 2007 Blige established the Mary J. Blige Foundation for the Advancement of Women Now to provide women with access, education and support to achieve success in life.

---

**Mary J. Blige News**                                                                    VIEW ALL NEWS





TOP LIST

Songbook: How Mary J. Blige Became The Queen of Hip-Hop Soul Through Empathy, Attitude And An Open Heart

Tamara Palmer
January 30th, 2023

TOP NEWS

2023 GRAMMYs Performers Announced: Bad Bunny, Lizzo, Sam Smith, Steve Lacy, Mary J. Blige & More Confirmed

Morgan Enos
January 25th, 2023

TOP NEWS

Listen: All Of The R&B Music 2023 GRAMMY Nominees In One Playlist

Taila Lee
January 12th, 2023

TOP LIST

2022 Year In Review: 7 Trends That Defined R&B

Bianca Gracie
December 26th, 2022

TOP LIST

A Look At The Nominees For Album Of The Year At The 2023 GRAMMY Awards

Morgan Enos
November 15th, 2022

TOP LIST

Meet The Record Of The Year Nominees At The 2023 GRAMMYs

Jack Tregoning
November 15th, 2022





Mary J. Blige | Artist | GRAMMY.com
https://www.grammy.com/artists/mary-j-blige/779
09-11-2024

| News | Join | Shop | Events | Members | Support |
|------|------|------|--------|---------|---------|
| Awards Process | Log In | GRAMMY GO | | Press | Programs |
| DEI | | | | | Donate |

RECORDING ACADEMY

© 2024 · Recording Academy. All rights reserved.

Terms of Service   Privacy Policy   Cookie Policy   Copyright Notice   Contact Us

EXHIBIT E



**United States Copyright Office**

Try the Copyright Public Records System (CPRS) pilot with enhanced search features and filters.

| Help | Search | History | Titles | Start Over |

## Public Catalog

Copyright Catalog (1978 to present) at DC4
Search Request: Left Anchored Copyright Number = PA0001928877
Search Results: Displaying 1 of 1 entries

◄ previous    next ►

Labeled View

*Real Love.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0001928877 / 2014-08-21 |
| **Application Title:** | Real Love. |
| **Title:** | Real Love. |
| **Appears in:** | Mary J. Blige - What's The 411? |
| **Description:** | Compact disc. |
| **Copyright Claimant:** | Second Generation Rooney Tunes, Inc., Transfer: by written agreement. Address: c/o Songs of Universal, Inc., 2100 Colorado Avenue, Santa Monica, CA 90404. |
| | Songs of Universal, Inc., Transfer: by written agreement. Address: 2100 Colorado Avenue, Santa Monica, CA 90404. |
| **Date of Creation:** | 1992 |
| **Date of Publication:** | 1992-07-28 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Mark Morales; Citizenship: United States. Authorship: music, lyrics. |
| | Mark Rooney; Citizenship: United States. Authorship: music, lyrics. |
| | Roy C. Hammond; Citizenship: United States. Authorship: music, lyrics. |
| **Pre-existing Material:** | music, lyrics ("Real Love" samples the composition "Top Billin'" by Nathaniel Robinson and Kirk Robinson) |
| **Basis of Claim:** | music, lyrics. |
| **Rights and Permissions:** | Krysten Savoy, Universal Music Publishing Group, 2100 Colorado Avenue, Santa Monica, CA, 90404, (310) 235-4700, krysten.savoy@umusic.com |
| **Names:** | Morales, Mark |
| | Rooney, Mark |
| | Hammond, Roy C. |
| | Second Generation Rooney Tunes, Inc. |
| | Songs of Universal, Inc. |



| **Save, Print and Email (Help Page)** | |
|---|---|
| Select Download Format  Full Record ▾ | Format for Print/Save |
| Enter your email address: | Email |

---

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

EXHIBIT F





EXHIBIT G

Gold & Platinum - RIAA
https://www.riaa.com/gold-platinum/?tab_active=default-award&ar=Mary+J.+Blige&ti=Real+Love&lab=&genre=&format=&date_option=release&from=&to=&award=&type=&category=&adv=SEARCH#search_section
09-11-2024





EXHIBIT H





Billboard Hot 100™
https://www.billboard.com/charts/hot-100/1992-12-05/
09-11-2024

| # | | Title / Artist | | | | | |
|---|---|---|---|---|---|---|---|
| 11 | | **In The Still Of The Nite [From "The Ja...** <br> Boyz II Men | | ★ | 15 | 11 | 2 |
| 12 | | **To Love Somebody** <br> Michael Bolton | | ★ | 19 | 12 | 8 |
| 13 | | **Layla** <br> Eric Clapton | | | 12 | 12 | 10 |
| 14 | | **Love Is On The Way** <br> Saigon Kick | | | 14 | 14 | 14 |
| 15 | | **Sometimes Love Just Ain't Enough** <br> Patty Smyth | | | 11 | 2 | 17 |
| 16 | | **Do You Believe In Us** <br> Jon Secada | | | 17 | 16 | 11 |
| 17 | | **Jump Around** <br> House Of Pain | | | 13 | 3 | 24 |
| 18 | | **Walking On Broken Glass** <br> Annie Lennox | | | 16 | 14 | 14 |
| 19 | | **Saving Forever For You [From "Beve...** <br> Shanice | | ★ | 24 | 19 | 7 |
| 20 | | **Would I Lie To You?** <br> Charles & Eddie | | | 20 | 13 | 16 |

ADVERTISEMENT

GRAB A CORONA TODAY
ORDER NOW

| # | | Title / Artist | | | | | |
|---|---|---|---|---|---|---|---|
| 21 | | **Little Miss Can't Be Wrong** <br> Spin Doctors | | ★ | 27 | 21 | 8 |
| 22 | | **Someone To Hold** <br> Trey Lorenz | | | 22 | 19 | 10 |
| 23 | | **Free Your Mind** <br> En Vogue | | | 21 | 8 | 13 |
| 24 | | **Where You Goin' Now** <br> Damn Yankees | | ★ | 28 | 24 | 9 |
| 25 | | **Erotica** <br> Madonna | | | 18 | 3 | 8 |
| 26 | | **Back To The Hotel** <br> N2Deep | | | 25 | 23 | 22 |
| 27 | | **People Everyday** <br> Arrested Development | | | 23 | 8 | 17 |
| 28 | | **I Wish The Phone Would Ring** <br> Expose | | ★ | 31 | 28 | 6 |
| 29 | | **Flex** <br> Mad Cobra | | | 30 | 29 | 8 |





Billboard Hot 100™
https://www.billboard.com/charts/hot-100/1992-12-05/
09-11-2024

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 63 | | **Give It Up, Turn It Loose** En Vogue | + | ★ | - | 63 | 1 |
| 64 | | **The Hitman** AB Logic | + | | 69 | 60 | 19 |
| 65 | | **Slow Dance (Hey Mr. DJ)** R. Kelly & Public Announcement | + | | 64 | 43 | 16 |
| 66 | | **Groovin' In The Midnight** Maxi Priest | + | | 63 | 63 | 6 |
| 67 | | **Sesame's Treet** Smart E's | + | | 61 | 60 | 9 |
| 68 | | **It's Alright (From "South Central")** Classic Example | + | ★ | 75 | 68 | 4 |
| 69 | | **I Don't Care** Shakespear's Sister | + | ★ | 94 | 69 | 2 |
| 70 | | **Sweet November** Troop | + | | 62 | 58 | 11 |

YOU RECEIVE ORDERS ALL DAY. THE NEXT DAY SHIPPING STORE — CLAIM 20% OFF UPS NEXT DAY AIR® — THE UPS STORE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 71 | | **Symphony Of Destruction** Megadeth | + | | 78 | 71 | 8 |
| 72 | | **Jump!** The Movement | + | | 73 | 53 | 18 |
| 73 | | **Yesterdays** Guns N' Roses | + | | 72 | 72 | 3 |
| 74 | | **Here It Comes** MC Serch | + | | 76 | 71 | 8 |
| 75 | | **Games** Chuckii Booker | + | ★ | 90 | 75 | 3 |
| 76 | | **Digging In The Dirt** Peter Gabriel | + | | 56 | 52 | 10 |
| 77 | | **Everything's Gonna Be Alright** Father M.C. | + | ★ | - | 77 | 1 |
| 78 | | **My Name Is Prince** Prince And The New Power Generation | + | | 66 | 36 | 9 |
| 79 | | **360 Degrees (What Goes Around)** Grand Puba | + | | 68 | 68 | 8 |
| 80 | | **Baby, I Believe In You** George LaMond | + | ★ | - | 80 | 1 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 81 | | **Jesus He Knows Me** Genesis | + | | 67 | 23 | 19 |

A95

Billboard Hot 100™
https://www.billboard.com/charts/hot-100/1992-12-05/
09-11-2024

| # | | Title / Artist | | | | | |
|---|---|---|---|---|---|---|---|
| 82 | | These Are Days — 10,000 Maniacs | + | ★ | 100 | 82 | 2 |
| 83 | | No One Else On Earth — Wynonna | + | | 91 | 83 | 7 |
| 84 | | Wicked — Ice Cube | + | | 55 | 55 | 3 |
| 85 | | I Missed The Bus — Kris Kross | + | | 87 | 63 | 10 |
| 86 | NEW | I Love You Period — Dan Baird | + | ★ | - | 86 | 1 |
| 87 | | Nothing Broken But My Heart — Celine Dion | + | | 85 | 29 | 19 |
| 88 | | Ain't Nobody Like You — Miki Howard | + | | 84 | 84 | 3 |
| 89 | | Alone With You — Tevin Campbell | + | | 79 | 72 | 8 |
| 90 | | Work To Do — Vanessa Williams | + | | 83 | 52 | 11 |

ADVERTISEMENT

metro by T Mobile

| # | | Title / Artist | | | | | |
|---|---|---|---|---|---|---|---|
| 91 | | Crossover — EPMD | + | | 74 | 42 | 20 |
| 92 | | Always The Last To Know — Del Amitri | + | | 82 | 30 | 17 |
| 93 | | How Do You Do! — Roxette | + | | 70 | 58 | 8 |
| 94 | | How About That — Bad Company | + | | 80 | 38 | 13 |
| 95 | | Always Tomorrow — Gloria Estefan | + | | 86 | 81 | 6 |
| 96 | NEW | Quality Time — Hi-Five | + | ★ | - | 96 | 1 |
| 97 | | I'm Still Waiting — Jodeci | + | | 99 | 85 | 6 |
| 98 | | Where Does That Leave Love — George LaMond | + | | 81 | 59 | 18 |
| 99 | | Washed Away — Tom Cochrane | + | | 88 | 88 | 4 |
| 100 | | Really Into You — Around The Way | + | | 89 | 89 | 5 |

ADVERTISEMENT

Billboard Hot 100™
https://www.billboard.com/charts/hot-100/1992-12-05/
09-11-2024







EXHIBIT I

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024



MUSIC LISTS

# The 500 Greatest Songs of All Time

More than 250 artists, writers, and industry figures helped us choose a list full of historic favorites, world-changing anthems, and new classics

BY ROLLING STONE

Photo Illustration by Sean McCabe. Photographs used within illustration by Jack Robinson/Hulton Archive/Getty Images; Michael Ochs Archives/Getty Images; 3, Paul Natkin/WireImage; Val Wilmer/Redferns/Getty Images; Theo Wargo/Getty Images; Jack Mitchell/Getty Images; C.Flanigan/Getty Images; Scott Dudelson/Getty Images; Gie Knaeps/Getty Images; Emma Mclntyre/Getty Images; Steven Nunez; STILLZ

FEB 16, 2024 11:27 AM



*EDITOR'S NOTE, FEBRUARY 2022: In the two and a half years since Rolling Stone rolled out the all-new, fully revamped version of our 500 Greatest Songs list in September 2021, artists like Beyoncé, Lana Del Rey, and Taylor Swift have all released classic tracks. So we've updated the list. We kept the update light; the 2021 list covered many decades of popular music, and was the result of a vote among more than 300 artists, writers, producers and industry figures; this update covers three years, from 2021 to early 2024.*

In 2004, *Rolling Stone* published its list of the 500 Greatest Songs of All Time. It's one of the most widely read stories in our history, viewed hundreds of millions of times on this site. But a lot has changed since 2004: back then the iPod was relatively new, and Billie Eilish was three years old. So we've decided to give the list a total reboot. To create the new version of the RS 500 we convened a poll of more than 250 artists, musicians, and producers — from Angelique Kidjo to Zedd, Sam Smith to Megan Thee Stallion, M. Ward to Bill Ward — as well as figures from the music industry and leading critics and journalists. They each sent in a ranked list of their top 50 songs, and we tabulated the results.

Nearly 4,000 songs received votes. Where the 2004 version of the list was dominated by early rock and soul, the new edition contains more hip-hop, modern country, indie rock, Latin pop, reggae, and R&B. More than half the songs here weren't present on the old list, including a third of the Top 100. The result is a more expansive, inclusive vision of pop, music that keeps rewriting its history with every beat.

**More on How We Made the List and Who Voted**

**Written By**

*Jonathan Bernstein, Jon Blistein, David Browne, Jayson Buford, Nick Catucci, Maxkeger Costeli, Bill Crandall, Jon Dolan, Gavin Edwards, Jenny Eliscu, Brenna Ehrlich, Jon Freeman, David Fricke, Andy Greene, Joe Gross, Kory Grow, Keith Harris, Will Hermes, Brian Hiatt, Christian Hoard, Joseph Hudak, Jeff Ihaza, Maura Johnston, Rob Kemp, Greg Kot, Elias Leight, Rob Levine, Alan Light, Julyssa Lopez, Angie Martoccio, Michaelangelo Matos, Tom Moon, Tom Nawrocki, Jon Pareles, Parke Puterbaugh, Mosi Reeves, Jody Rosen, Robert Santelli, Austin Scaggs, Claire Shaffer, Bud Scoppa, Rob Sheffield, Hank Shteamer, LC Smith, Brittany Spanos, Rob Tannenbaum, Simon Vozick-Levinson, Barry Walters, Alison Weinflash, Douglas Wolk*



**THE LATEST**

LATE-NIGHT TV
Watch Lainey Wilson Perform Anthemic Single '4x4x4' on 'Fallon'

BONUS TRACKS
Eminem Announces Expanded Version of 'The Death Of Slim Shady (Coup De Grâce)'

WINNER WINNER!
Watch Jon Stewart Break Down Harris-Trump Debate on 'The Daily Show'

MESSY!
Republicans Scramble to Spin Trump's Debate Implosion





THE DIGITAL DAILY NEWSLETTER
A Cultural Force That Transcends Generations
ENTER YOUR EMAIL


The All-Electric Chevrolet Equinox EV



**LOAD PREVIOUS**



# 350

### The Zombies, 'Time of the Season'

**1968**
WRITERS: ROD ARGENT

▶ | **PLAY THE FULL SONG**     Powered by ●MUSIC

If 'Time of the Season' did nothing more than introduce the term "Who's your daddy?" into the cultural lexicon, it would be a landmark achievement. But the 1968 Zombies single is also one of the defining songs of the psychedelic era — the closing track on the band's 1968 classic *Odessey and Oracle*. In the studio, the tune was as freely as it did on the record, including a nasty fight between frontman Colin Blunstone and songwriter-keyboardist Rod Argent. "It ended up with us shouting at each other," Blunstone said in 2015. "And there I am singing 'It's the time of the season for loving ...'"





# 349

### Roxy Music, 'Virginia Plain'

**1972**
WRITERS: BRYAN FERRY

▶ | **PLAY THE FULL SONG**     Powered by ●MUSIC

Roxy Music's debut single didn't have a chorus, and Bryan Ferry didn't sing the title until the song's final words. But the enormously original U.K. glam-rock band was never big on formula. "My head was swimming with lots of different, contrasting types of music," said Ferry. His pop-eyed lyrics hot-forwarded through a travelogue of glamour (Baby Jane Holzer, Rio, "midnight-blue casino floors"), while Brian Eno coaxed weird sounds from his VCS3 synthesizer. For the motorcycle that revs in the background, the band borrowed a friend's bike and recorded it live late at night outside the studio.

# 348

### Elvis Presley, 'Heartbreak Hotel'

**1956**
WRITERS: MAE BOREN AXTON, TOMMY DURDEN, ELVIS PRESLEY

▶ | **PLAY THE FULL SONG**     Powered by ●MUSIC

When RCA Records signed "hillbilly cat" Presley, the label expected more songs like his rockabilly hits from Sun Records. Instead, for his first RCA single, Presley recorded this gloomy, downtempo number, co-written by Mae Boren Axton, his former publicist, and inspired by a *Miami Herald* report of a suicide note that consisted solely of the line "I walk a lonely street." But what Sun Records founder Sam Phillips called "a morbid mess" went on to become Presley's first Number One hit and million-selling single.

ADVERTISEMENT                                                          ▷

# 347

### BTS, 'Dynamite'

**2020**
WRITERS: DAVID STEWART, JESSICA AGOMBAR

▶ | **PLAY THE FULL SONG**     Powered by ●MUSIC

BTS' first ever U.S. Number One, as well as their first full English-language song, "Dynamite" was a landmark, hegemony-shattering moment for the world-conquering South Korean group. Their intertwined vocal talent, led by youthful standout Jung Kook, put over the track — which was co-written by British producer-songwriter Dave Stewart (not the one from Eurythmics) and Jessica Agombar. Stewart told *Rolling Stone* that Columbia Records had been looking for an English-language crossover hit for BTS: "It had to have tempo, be exciting.... one thing I'm good at is writing to brief."

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024

ADVERTISEMENT



## 346

### Carole King, 'It's Too Late'
1971
WRITERS: CAROLE KING, TONI STERN

▷  PLAY THE FULL SONG          Powered by ●MUSIC

For Lou Adler, who produced it, King's *Tapestry* was "the *Love Story* of the record industry. It hit a nerve." But unlike that film's gauzy view of romance, King's biggest hit, "It's Too Late," was a forthright, adult song about divorce, a heretofore new topic for pop — and King gave a vocal performance that was as resolutely unsentimental but still as full of warmth as her lyrics. Its Number One status was revelatory at the time, a chart-topping single about the end of a relationship in which a woman is clearly doing the breaking up.

ADVERTISEMENT



## 345

### Black Sabbath, 'Iron Man'
1971
WRITERS: BILL WARD, GEEZER BUTLER, OZZY OSBOURNE, TONY IOMMI

▷  PLAY THE FULL SONG          Powered by ●MUSIC

"It sounds like a big iron bloke walking about," bassist Geezer Butler recalled Ozzy Osbourne saying when he first heard Tony Iommi play the single most iconic guitar riff in metal history. That description was all Butler needed to inspire a tale of literal heavy metal: a man "turned to steel, in a great magnetic field" — apparently totally unrelated to the already-extant Marvel character. Few songs encapsulate an entire genre the way this one does, thanks mainly to Iommi's plodding doom-blues motif, which Osbourne borrows exactly for his vocal line.

ADVERTISEMENT

## 344

### The Doobie Brothers, 'What a Fool Believes'
1979
WRITERS: KENNY LOGGINS, MICHAEL MCDONALD

▷  PLAY THE FULL SONG          Powered by ●MUSIC

Few songs encapsulated the smooth-sailing style that would come to be called yacht rock as much as the Doobies' Grammy-sweeping hit. The falsetto harmonies, syncopated Michael McDonald keyboard, and lovelorn lyrics (about "two people who see this same thing in their past very differently," McDonald said) were textbook yacht. But the song didn't come easy: The Doobies attempted it at least 30 times in the studio, driving everyone nuts, even its singer. "I was like, 'I hate this fucking song,'" McDonald recalls. "The band was completely disgusted by that point."

ADVERTISEMENT

## 343

### Chuck Berry, 'Promised Land'
1964
WRITERS: CHUCK BERRY

▷  PLAY THE FULL SONG          Powered by ●MUSIC

Berry wrote "Promised Land" in prison, where he was serving a sentence for taking a teenage girl across state lines, a charge he felt was racially motivated. When he arrived at Chess Records for his first session after getting out, the first thing he recorded was "Promised Land," an American travelogue set to a hot riff that mapped out the same course that the civil rights protesters known as the Freedom Riders had taken as they tried to integrate Southern bus stations in 1961 — including cities like Rock Hill, South Carolina, and Birmingham, Alabama, where the riders were attacked by violent mobs.

ADVERTISEMENT

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024




## 342

### The Monkees, 'I'm a Believer'

1966
WRITER(S): NEIL DIAMOND

▶ PLAY THE FULL SONG     Powered by ●MUSIC

Monkeemania peaked in late 1966 and early 1967 when this Neil Diamond-penned love song stayed at Number One for seven consecutive weeks. The vocals were laid down by Micky Dolenz after a long day on the set of the *Monkees* TV series; he later recalled that his life at the time was such a blur of filming and recording that he has no memory of making "I'm a Believer." "It's probably my signature Monkees tune, though," he said in 2016. "I can't explain why it's proven to be so popular. You can't reduce art like that, especially collaborative stuff."

*ADVERTISEMENT*



## 341

### The Clash, '(White Man) in Hammersmith Palais'

1978
WRITER(S): MICK JONES, JOE STRUMMER

▶ PLAY THE FULL SONG     Powered by ●MUSIC

This 1978 single exhibits the Clash stretching their sound and figuring out their principles in real time. Over a buoyant groove, Joe Strummer recounts an all-night reggae party at a London venue that proved too pop for his taste, then turns his ire toward fashionable punk bands "turning rebellion into money." It's one of Strummer's catchiest songs, condensing vignette and conviction into a package that showed the Clash were more than just a scrappy punk band. There's a reason the song was a mainstay of Strummer's sets even after the Clash — in fact, it was one of the last songs the late frontman ever played.

*ADVERTISEMENT*

〰 SQUARESPACE

A website
makes your
*boutique*
*bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY




## 340

### Prince, '1999'

1982
### 344
1982
WRITER(S): PRINCE

▶ PLAY THE FULL SONG     Powered by ●MUSIC

When Prince recorded "1999," he would go all day and all night without rest and turn down food, since he felt eating would make him sleepy. The opening verse was originally recorded in three-part harmony; Prince split up the vocals, and the harmony parts became a new, odd melody. The single's first release didn't make the Top 40, but Prince put it out again after "Little Red Corvette," and it was finally a hit, reaching the Top 20. As keyboardist Matt Fink told *Rolling Stone* a few years later, "'1999' was pretty different for a message. Not your average bubblegum hit."

*ADVERTISEMENT*

〰 SQUARESPACE

A website
makes your
*boutique*
*bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY




## 339

### Black Sabbath, 'Paranoid'

1970
WRITER(S): GEEZER BUTLER, TONY IOMMI, OZZY OSBOURNE, BILL WARD

▶ PLAY THE FULL SONG     Powered by ●MUSIC

Black Sabbath's second LP was basically complete when producer Rodger Bain realized that the running time was around three minutes short. So the band quickly came up with this chugging, adrenalized rocker. They worried that it sounded a bit too much like Led Zeppelin's "Communication Breakdown," but stuck with it anyway, and bassist Geezer Butler worked up a set of lyrics about a man grappling with mental and emotional malaise. "I had been suffering from undiagnosed depression, and the only way of dealing with it was to write about it," he later told *Guitar World*. "It was quite cathartic."

*ADVERTISEMENT*






500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024



## 338
### Cher, 'Believe'
1998

At a time when pretty much every artist of her generation was still sticking with guitar-based pop rock, Cher took a gamble on a new futuristic technology called Auto-Tune and won big time. Her secret? Making sure that even through the robotic vocal effects, she sounded like a force to be reckoned with: "I was singing [the song] in the bathtub, and it seemed to me the second verse was too whiny. It kind of pissed me off, so I changed it. I toughened it up a bit." "Believe" introduced the then-52-year-old singer to a whole new generation of fans, becoming an indelible anthem for the queer community and earning Cher a permanent place in the canon of empowerment-pop anthems.


 

 
A website
makes your
*boutique*
*bakery* **real**
START YOUR FREE WEBSITE TRIAL TODAY



A website
makes your
*boutique*
*bakery* **real**
START YOUR FREE WEBSITE TRIAL TODAY



## 337
### Hall and Oates, 'She's Gone'
1973

"She's Gone" is a song that thrived in its afterlife. When Hall and Oates released it in 1973, it reached Number 60 on the singles chart. Three years later, a still-scuffling Hall and Oates finally had their first smash, the smoochy ballad "Sara Smile." When "She's Gone" was rereleased in 1976, it gave the duo a second huge hit. Its elegant arrangements and slow-build harmonies paid tribute to the great R&B coming out of the duo's hometown, Philadelphia. "We wouldn't sound like this if we grew up in Iowa," Oates later said.



## 336
### Marshall Jefferson, 'Move Your Body (The House Music Anthem)'
1986

Chicago native Jefferson was working at a post office when he produced one of the first great vocal house records, nailing the combination of hummable melody and headlong momentum that has pulled wallflowers onto the dance floor for 35 years. "The reason I wanted to have a funky piano in 'Move Your Body' was because of Elton John," Jefferson explained. Putting a cheery, 120-bpm rhythm track under the soulful piano chords, and over a tempo of 120 bpm, Jefferson recruited a friend and fellow postal worker, Curtis McClain, to sing vocals.




 
A website
makes your
*boutique*
*bakery* **real**
START YOUR FREE WEBSITE TRIAL TODAY

 
A website
makes your
*boutique*
*bakery* **real**
START YOUR FREE WEBSITE TRIAL TODAY



## 335
### The Grateful Dead, 'Ripple'
1970

"It just seemed to happen automatically," Jerry Garcia said of the writing of one of the Dead's most Zen-like statements. A serene peak of hippie-folk pastoralism, the song originated during the Canadian tour-by-rail commemorated in the documentary *Festival Express*, with Garcia setting Robert Hunter's lyric to music between bar-car jam sessions with Janis Joplin and members of the Band. Hunter himself would declare the lyric "Let it

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024




be known there is a fountain/That was not made by the hands of men," as "pretty much my favorite line I ever wrote."

ADVERTISEMENT



## 334

### The Temptations, 'Papa Was a Rollin' Stone'

1972

WRITERS: NORMAN WHITFIELD, BARRETT STRONG

▷ | PLAY THE FULL SONG    Powered by ◆MUSIC

Even after Marvin Gaye and Stevie Wonder asserted their musical independence, the Motown production assembly line continued to work wonders. "Papa Was a Rollin' Stone," a cinematic seven-minute epic of African American musical history and social realism, was previously recorded by the Undisputed Truth before the Temptations turned it into a smash. But the Tempts were hardly Norman Whitfield's puppets. "We asked for him because we thought he had the capacity to bring out everybody's talent instead of just one [singer] at a time," said Temptation Melvin Franklin.

ADVERTISEMENT



## 333

### Rihanna feat. Jay-Z, 'Umbrella'

2007

WRITERS: CHRISTOPHER STEWART, TERIUS NASH, KIM BURRELL, SHAWN CARTER

▷ | PLAY THE FULL SONG    Powered by ◆MUSIC

"Before that song, Rihanna was just a pop-single girl," said Terius "the Dream" Nash, who co-wrote "Umbrella." "Now she got paparazzi following her around." An international Number One that transformed the Barbadian singer into a superstar, the song was the prototype for Rihanna's massive run of hook-storm hits to follow. Amazingly, both Britney Spears and Mary J. Blige passed on the song before it fell into RiRi's lap. "I'm so thankful for it," she said. "I prayed for this song."

ADVERTISEMENT



## 332

### The Marvelettes, 'Please Mr. Postman'

1961

WRITERS: GEORGIA DOBBINS, WILLIAM GARRETT, FREDDIE GORMAN, BRIAN HOLLAND, ROBERT BATEMAN

▷ | PLAY THE FULL SONG    Powered by ◆MUSIC

"Please Mr. Postman" wasn't just the first Motown recording to go Number One, it was Brian Holland's first producing job, and the first time the Marvelettes — then the high school harmonizers the Casinyets — had been inside a recording studio. Holland and co-producer Robert Bateman helped fill in a sketch written by departed group member Georgia Dobbins, bringing in Freddie Gorman, an actual postman (who was still in uniform at the studio) for verisimilitude. Afterward, Berry Gordy decided to rename the marvelous group the Marvelettes.

ADVERTISEMENT



## 331

### The Notorious B.I.G., 'Big Poppa'

1994

WRITERS: CHRISTOPHER WALLACE, RODOLFO HALO, CARLOS OLIVO, SAMMIE HENSON, GENE REDD, TODD HENSON, NELSON PIGFORD, VINNIE CASTALDO

▷ | PLAY THE FULL SONG    Powered by ◆MUSIC

⟳ SQUARESPACE

"Big Poppa," the song that smoothed out the Notorious B.I.G.'s tough image and solidified his radio and MTV stardom, came out of the late Brooklyn rapper's and producer Chucky Thompson's admiration for massive G-funk hits like Snoop Dogg's Doggystyle and for Cube's "It Was a Good Day." Thompson added a funky seventies keyboard line to a sample of the Isley Brothers' "Between the Sheets," and left the beat rolling in the studio. When he returned, Biggie had its classic club chorus: "Throw your hands in the air if youse a true player."

ADVERTISEMENT

A website
makes your

⟳ SQUARESPACE

A website
makes your

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024

*boutique*
*bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY




≈ SQUARESPACE

A website
makes your
*boutique*
*bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY






## 330
### Bad Bunny, 'Safaera'
2020

The Puerto Rican reggaeton trailblazer made excellent use of his Covid-19 quarantine, releasing three explosive albums in 2020: "I just thought, 'Damn. What people need is entertainment,'" he told *Rolling Stone*. "Safaera," from the fantastic *YHLQMDLG*, compacts the sweat-soaked, high-octane vigor of a Nineties-era reggaeton mixtape into a jolting five minutes packed with at least nine beat flips, multiple Puerto Rican guest stars, unflinchingly irreverent lyrics, and samples ranging from Missy Elliott's "Get Ur Freak On" to Alexis and Fido's "El Tiburon." "It's a song that feels like a partdition, living things



## 329
### Red Hot Chili Peppers, 'Under the Bridge'
1991

The stark, poignant ballad "Under the Bridge" was a breakthrough hit for the Chili Peppers, shattering their party-boy image. It started as an autobiographical confession from frontman Anthony Kiedis, who counted an experience with some gang members under an actual Los Angeles bridge as a low point of his drug addiction. Kiedis started writing it while feeling lonely after a band rehearsal, following the death of the Chili's guitarist Hillel Slovak. "L.A. — the hills, the buildings, the people in it as a whole — that seemed to be looking out for me more than any human being," he told *Rolling Stone* in 1990.





## 328
### Mary J. Blige, 'Real Love'
1992

Blige's second R&B chart topper was written two years earlier in a basement in Queens. Producer Kevin Rooney made the track using a medley of keyboards and the stuttered percussion pattern from Audio Two's old-school rap hit "Top Billin'." Mark Morales — a.k.a. Prince Markie Dee of the Fat Boys — wrote the lyrics. The result was a swinging, gospelized lament that would reshape the sound of R&B in the Nineties. Rooney wanted to get rid of the Audio Two sample and play the drums himself, but executive producer Sean "Puffy" Combs kept it in, telling Rooney, "That's what makes it hip-hop."



## 327
### Rilo Kiley, 'Portions for Foxes'
2004

Rilo Kiley was one of the most exciting indie-rock bands of the early 2000s, and they hit a power-pop peak with "Portions for Foxes." Jenny Lewis sang about a bad-news relationship, while Blake Sennett piled on ornery guitar fire. Had it come out 10 years earlier, the song might have been an alt-rock radio hit. But it ended up getting a boost all the same when it was used by the TV show *Grey's Anatomy*, and Lewis still breaks out the song at her solo shows.




## 326
### Iggy Pop, 'Lust for Life'
1977

*boutique*
*bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY





≈ SQUARESPACE

A website
makes your
*boutique*
*bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY








500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024

With its enormous kaboom and Pop's sneering, free-associative lyrics (the line about "hypnotizing chickens" is a reference to William S. Burroughs' *The Ticket That Exploded*, "Lust for Life" is a kiss-off to drugged-out hedonism. The opening riff was supposedly taken from some Morse-code producer David Bowie had heard on the Armed Forces Network. And the line "Of course I've had it in the ear before"? "That's a common expression in the Midwest," Pop said, "To 'give it to him right in the ear' means to fuck somebody over."



## 325
### Billy Joel, 'Scenes From an Italian Restaurant'
1977
WRITTEN BY: BILLY JOEL

"Scenes From an Italian Restaurant" is a seamless three-part saga about nostalgia, dashed expectations, Long Island, and Long Island accents. Joel, the Irving Berlin of suburbia, packs an entire Broadway musical into seven and a half minutes, as he tells the story of Brenda and Eddie, popular kids who marry young, then flameout and divorce — as Joel put it, "People who peaked a little too early in life." In structuring the song, Joel wanted to replicate the way George Martin had collaged different ideas together for Side Two of the Beatles' *Abbey Road*. "Not that I'd ever think we could do something as good as that," he added.



## 324
### Everly Brothers, 'All I Have to Do Is Dream'
1958
WRITTEN BY: BOUDLEAUX BRYANT, FELICE BRYANT

Although Don Everly had a contract to work as a songwriter before he and his brother Phil began their hitmaking, their first three big singles were all written by the husband-and-wife songwriting team of Boudleaux and Felice Bryant. "I would go to them for breakers advice when I was young, and divorce advice when I was older," Phil said. "All I Have to Do Is Dream," with Chet Atkins' innovative tremolo-chording backing the brothers' high-lonesome harmonies, went to Number One on not just the pop chart, but the R&B chart as well.



## 323
### Neil Young, 'After the Gold Rush'
1970
WRITTEN BY: NEIL YOUNG

Written in about a half hour and recorded in his basement in Topanga Canyon, California, this sci-fi piano ballad — just Young accompanied by a forlorn French horn — is an ecological plea inspired by his friend Dean Stockwell's idea for a movie about a natural disaster that destroys California. The movie never got made, but the song immediately touched a nerve. As Randy Newman admiringly noted, "After the Gold Rush' is sort of a primal urge for a simpler, better time — which may have never existed, but Neil thinks it does."



## 322
### U2, 'I Still Haven't Found What I'm Looking For'
1987
WRITTEN BY: BONO, LARRY MULLEN JR., THE EDGE, ADAM CLAYTON

"The music that really turns me on is either running toward God or away from God," Bono told *Rolling Stone*. U2's second Number One single revels in ambivalence — "an anthem of doubt more than faith," Bono has called it. The song was typical of the arduous sessions for *The Joshua Tree*. Originally called "Under the Weather," it began, like most U2 songs, as a jam. "It sounded to me a little like 'Eye of the Tiger' played by a reggae band," the Edge recalled.

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024

A website
makes your
*boutique
bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY





## 321
### 2Pac, 'California Love'
1995

▶ PLAY THE FULL SONG

There are a few myths surrounding the creation of 2Pac's biggest hit. One claims that Dr. Dre made the beat during a barbecue at his Calabasas, California, home, and 2Pac jumped in the booth and dropped his verse in a few minutes. Another claims that Dre intended the track for his follow-up to *The Chronic*, but Death Row don Suge Knight coerced him into giving the single to Pac — whom he had just bailed out of prison and signed to the label. Regardless, "California Love" represents gangsta rap at its most flamboyant and cinematic.

ADVERTISEMENT



## 320
### Taylor Swift, 'Blank Space'
2014
WRITER(S): TAYLOR SWIFT, MAX MARTIN, SHELLBACK

▶ PLAY THE FULL SONG

After nearly a decade of having her lyrics, public image, and dating life scrutinized beyond her control, Swift chose to take back the narrative with "Blank Space," a song that satirizes her "serial dater" persona by doubling down on it — it became an intense-even-for-Taylor highlight of her synth-pop blowout *1989*. "That was the character I felt the media had written for me, and for a long time I felt hurt by it," she said. "I took it personally. But as time went by, I realized it was kind of hilarious."

ADVERTISEMENT



## 319
### Tears for Fears, 'Everybody Wants to Rule the World'
1985
WRITER(S): ROLAND ORZABAL, IAN STANLEY, CHRIS HUGHES

▶ PLAY THE FULL SONG

With a huge melody and timely geopolitical theme, Tears for Fears' first Number One exemplified the era's anthemic synth-rock. "Back when we were doing ... 'Everybody Wants to Rule the World,' we were really discussing the Cold War," said Curt Smith. "We argued with the American [record] company about releasing [it] as a single." Its success propelled their LP *Songs From the Big Chair* to go five-times-platinum in the U.S. — and forced them to rebook their 1985 tour into larger venues.

ADVERTISEMENT



## 318
### Big Mama Thornton, 'Hound Dog'
1953
WRITER(S): JERRY LEIBER, MIKE STOLLER

▶ PLAY THE FULL SONG

Blues belter Willie Mae "Big Mama" Thornton had already made some records when she signed on with R&B bandleader Johnny Otis in 1952. In L.A., they cut "Hound Dog," a raw, funny blues by Jerry Leiber and Mike Stoller, two white hipsters who were writing R&B songs. The record's release was held back; a year later, Thornton heard it on the radio in Dayton, Ohio. "I was going to the theater, and I just turned the radio on in the car," she remembered. "And the man said, 'Here's a record that's going nationwide!'" Of course, it would be even bigger when Elvis Presley cut his version a couple of years later.

ADVERTISEMENT

A website
makes your
*boutique
bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY





500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024



## 317
### Bob Dylan, 'Visions of Johanna'
1966
WRITTEN BY: BOB DYLAN

▶ PLAY THE FULL SONG

In early 1966, Dylan decamped to Nashville to record *Blonde on Blonde* with a crew of local studio pros assembled by producer Bob Johnston. In their very first late-night session, they fleshed out this seven-minute meditation on unrequited desire. "For real," would have been the words I would have used at the time," recalled Bill Atkins, who played keyboard. Joan Baez claimed the song, originally titled "Seems Like a Freeze-Out," was about her; if so, she left quite a mark on Dylan; he's rarely sounded so transcendently dejected.



## 316
### The Shangri-Las, 'Leader of the Pack'
1964
WRITTEN BY: GEORGE FRANCIS MORTON, JEFF BARRY, ELLIE GREENWICH

▶ PLAY THE FULL SONG

The Shangri-Las, the tough, white girl group among mainly churchgoing Black ones, capped the early-Sixties trend for teen tragedies with their biggest hit. Producer-songwriter Shadow Morton got inspired while shopping for a motorcycle, telling collaborator Jeff Barry to start a song for the Shangri-Las about a biker and "this girl [who] sees him, and she falls in love with him." Barry objected, saying that DJs would avoid glamorizing such a figure, so Morton improvised an ending: "He ... dies."



## 315
### John Coltrane, 'Pt. 1- Acknowledgement'
1965
WRITTEN BY: JOHN COLTRANE

▶ PLAY THE FULL SONG

In late 1964, John Coltrane secluded himself in a spare upstairs bedroom in his house in Dix Hills, Long Island, with his saxophone, pen, and paper. His wife Alice later remembered him emerging "like Moses coming down the mountain" with a brand-new album-length suite of devotional music, which he called *A Love Supreme*. "This album is a humble offering to Him," he would write in the liner notes of the LP. "An attempt to say, 'Thank you God' through our work, even as we do in our hearts and with our tongues." The opening movement starts off like a musical prayer, before moving into a mantra-esque bass vamp — which later becomes the foundation for a vocal chant of the title phrase — as Coltrane and the other members of his so-called classic quartet, pianist McCoy Tyner and drummer Elvin Jones, join in. Coltrane's majestic, often violent blowing on the track is never self-aggrandizing. He soars with nothing but gratitude and joy. You can't help but go with him.



## 314
### The Stooges, 'I Wanna Be Your Dog'
1969
WRITTEN BY: DAVE ALEXANDER, RON ASHETON, SCOTT ASHETON, IGGY POP

▶ PLAY THE FULL SONG

The idea for the Stooges' sound came to Iggy Pop while he was smoking a joint on the banks of the Chicago River and thinking about the local musicians he admired. "What you gotta do is play your own simple blues," he realized. It doesn't get any simpler than "I Wanna Be Your Dog," which turned three shaggy chords into a menacing proto-punk mantra. "I don't want to talk about literature with you.... I don't want to judge you as a person," Pop later told Howard Stern when asked about the meaning of the song. "I wanna dog you, you know?"

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024



## 313

### Smokey Robinson and the Miracles, 'The Tears of a Clown'

1967

WRITERS: HENRY COSBY, WILLIAM ROBINSON, STEVIE WONDER

▷ | PLAY THE FULL SONG | Powered by ♪ MUSIC

Stevie Wonder gave Robinson a recording of this track, which he was having a hard time writing words for. Its swirling melody brought to mind a circus, but initially that led to another dead end, as Robinson later recalled: "What can I write about the circus that's going to touch people's hearts? Can't write about the animals. People love animals, but what's that got to do with touching people's hearts, unless I write something tragic about an animal." He eventually landed on the idea of a sad clown, and had a chart-topping hit.



## 312

### Isaac Hayes, 'Walk on By'

1969

WRITERS: BURT BACHARACH, HAL DAVID

▷ | PLAY THE FULL SONG | Powered by ♪ MUSIC

With hits like Sam and Dave's "Soul Man" to his credit, Hayes was a successful songwriter for Stax Records when he began to assemble a performing career. He held pickup sessions with the Bar-Kays, a young backing band then evolving into acid-dropping funk-rockers. One of the tracks the ensemble toyed with was "Walk on By," a 1964 pop hit written by Burt Bacharach and Hal David for Dionne Warwick. By the time Hayes and the Bar-Kays were done with it, they'd transformed a lite-pop staple into 12 minutes of wah-wah guitar and orchestral pomp: the dawn of stoned soul.



## 311

### The Eagles, 'Hotel California'

1976

WRITERS: DON FELDER, GLENN FREY, DON HENLEY

▷ | PLAY THE FULL SONG | Powered by ♪ MUSIC

"Hotel California" was rumored to be about heroin addiction or Satan worship, but Don Henley had more prosaic things on his mind: "We were all middle-class kids from the Midwest," he said. "Hotel California' was our interpretation of the high life in Los Angeles." Working in Miami, the Eagles were initially unable to re-create guitarist and co-writer Don Felder's 12-string intro and elaborate twin-guitar coda. Panicked, Felder called his housekeeper in L.A. and sent her digging through a pile of tapes in his home studio so she could play his demo back over the phone.



## 310

### The Doors, 'Light My Fire'

1967

WRITERS: ROBBY KRIEGER, JOHN DENSMORE, JIM MORRISON, RAY MANZAREK

▷ | PLAY THE FULL SONG | Powered by ♪ MUSIC

It was the first song Robby Krieger ever wrote — with additional lyrics from Jim Morrison and arrangements from the rest of the band. "It's like I'd saved up all [these ideas] in my mind and got them out all at once," Krieger said. The song catapulted the Doors to overnight fame, which Krieger said was part of Morrison's plan: "Jim had this idea of the band being a shooting star," Krieger said. "Fire" ran for seven minutes on the LP but was cut down to three, with Krieger's and keyboardist Ray Manzarek's solos excised, on the single.

## 309

### Bill Withers, 'Ain't No Sunshine'

1971

WRITERS: BILL WITHERS

▷ | PLAY THE FULL SONG | Powered by ♪ MUSIC

Withers was working at an aircraft-parts factory when he wrote "Ain't No Sunshine," a bracingly lonely track inspired in part by the film *Days of Wine and Roses*, about a couple's struggle with alcoholism. He recorded the song with pros from Stax Records but still couldn't quite believe the new situation he found himself in. "Bill came right from the factory and showed up in his old brogans and his old chunk of a car, with a notebook full of songs," producer Booker T. Jones recalled. "When he saw everyone in the studio, he asked to speak to me privately and said, 'Booker, who is going to sing these songs?' I said, 'You are, Bill.'"



# 308
### Liz Phair, 'Divorce Song'
**1993**
**WRITERS:** LIZ PHAIR

▶ PLAY THE FULL SONG

"I wanted to write about all the little in-between moments that people have with their relationship," Phair said, "just the ordinary things that happen." In "Divorce Song," a highlight of her era-defining concept album *Exile in Guyville*, Phair artfully transforms a meandering late-night drive she once took with a college hookup into a story about miscommunication, regret, and articulation. "It's an ordinary person doing ordinary things," she told *Rolling Stone* years later, "and the action in the song is really just about relating to another person."



# 307
### Gnarls Barkley, 'Crazy'
**2006**
**WRITERS:** BRIAN BURTON, THOMAS CALLAWAY, GIAN FRANCO REVERBERI, GIAN PIERO REVERBERI

"Crazy" was a rarity in the 2000s: a universal pop smash that was played on virtually every radio format — it went Top 10 on both the pop and the modern-rock charts. The lyrics came out of a conversation Cee-Lo and Danger Mouse had in the studio. The pair decided that their genre-smashing collaborations were indeed "crazy." With a haunting melody inspired by spaghetti-Western soundtrack composer Ennio Morricone, "Crazy" didn't feel like a hit. "It seemed too out there for urban radio and too urban for rock radio," Danger Mouse told *Rolling Stone*.


*Squarespace*

**A website makes your** *boutique bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY



# 306
### Aretha Franklin, 'Chain of Fools'
**1967**
**WRITERS:** DON COVAY

One of five indelible Top 10 smashes Franklin cranked out in 1967, "Chain of Fools" was written by Don Covay, who was inspired by his memories of seeing field hands at work while growing up in South Carolina. He showed it to producer Jerry Wexler, who thought it would be good for Franklin. When something didn't feel quite finished about the recording, Wexler played it for B-flat Building songwriter Ellie Greenwich, who came up with a second background vocal, and sang it herself. As engineer Tom Dowd later recalled, "It came to life."



# 305
### The Police, 'Every Breath You Take'
**1983**
**WRITERS:** STING

For their biggest hit, the Police went back to basics, junking an elaborate synth part that distracted from the song's hypnotic bass line in favor of a lick that guitarist Andy Summers recorded in one live take. Sting admitted that the lyrics — which sounded tender but were actually bitter — were pulled from the rock & roll cliché handbook. "'Every Breath You Take' is an archetypal song," he told *Rolling Stone*. "If you have a major chord followed by a relative minor, you're not original."


*Squarespace*

**A website makes your** *boutique bakery* **real**

START YOUR FREE WEBSITE TRIAL TODAY


500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024



## 304
### Kraftwerk, 'Trans-Europe Express'
**1977**

The German group's hymn to the electronic future reveled in repetition, exerting a huge influence on early hip-hop (see Afrika Bambaata's 'Planet Rock') and dance music; David Bowie was as avowed fan of the group's "singular determination to stand apart from stereotypical American chord sequences." But even while changing the pop landscape, Kraftwerk kept dreaming of the future. "*Trans-Europe Express* was done with huge machinery," Ralf Hütter said in 1991. "We're still carrying a lot of weight from city to city. We're dreaming of carrying a briefcase from place to place with a laptop."

 

## 303
### TLC, 'No Scrubs'
**1999**

TLC's impassioned assertion of their material and romantic must-haves pissed off sensitive men so much that one group of them wrote, recorded, and distributed a response track called "No Pigeons." TLC released two versions of the song to capture as many radio formats as they could, one without Left Eye's rap verse and one with, and in turn, the song, all confidence and attitude, became ubiquitous. "Guys started checking themselves, like, 'Am I a scrub?'" DMV-area DJ Face recalled. "You had to really think."

 

## 302
### Pink Floyd, 'Wish You Were Here'
**1975**

Despite sky-high band tensions during the recording of the Floyd's 1975 album, *Wish You Were Here*, Roger Waters and David Gilmour were able to come together for its title track, an elegy for burned-out ex-frontman Syd Barrett. During the recording, Barrett mysteriously appeared in the studio in such bad shape that, at first, nobody in the band recognized him. "He stood up and said, 'Right, when do I put my guitar on?'" keyboardist Rick Wright recalled. "And, of course, he didn't have a guitar with him. And we said, 'Sorry. Syd, the guitar's all done.'"



## 301
### Bob Seger, 'Night Moves'
**1976**

Seger spent the first decade of his career building up a loyal base of rock aficionados thanks to his high-energy live show, but it wasn't until "Night Moves" that mainstream audiences followed. That's because the nostalgic tale of fumbling, innocent teenage love was relatable to most everyone who caught it on the radio, bringing Seger his first of many Top 10 hits that would arrive over the next decade. "It still has the exact meaning it's always had for me," Seger said in 1994. "The freedom and looseness I had during high school."

**LOAD MORE**

500 Best Songs of All Time
https://www.rollingstone.com/music/music-lists/best-songs-of-all-time-1224767/pink-floyd-wish-you-were-here-4-1225036/
09-11-2024



EXHIBIT J

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made as of this 1st day of July, 2022 (the "Effective Date") by and between TufAmerica, Inc. (collectively, the "Claimant"), at 444 West 50th Street, New York, NY 10019, on the one hand, and UMG Recordings, Inc. ("UMG"), at 2220 Colorado Avenue, Santa Monica, CA 90404, on the other hand (UMG and Claimant individually, a "Party," and together, the "Parties,"), and each of their subsidiaries, affiliates, and assigns, with respect to the following:

WHEREAS, on July 20, 1992 (the "Release Date"), Uptown Records and MCA Records, Inc. (predecessor-in-interest to UMG) ("Uptown/MCA") released the Mary J. Blige ("UMG Artist") album entitled "What's The 411?" (the "Album"), which Album embodied the master recording entitled "Real Love" which includes a portion of the Sampled Master (the "UMG Master").

WHEREAS, On March 9, 2021 (the "Notification Date"), Claimant contacted UMG, asserting that UMG had been exploiting the UMG Master, embodying a sample of the sound recording entitled "Impeach The President" (the "Sampled Master") by the recording artist professionally known as "The Honey Drippers" ("Sampled Artist"), without a proper sample license agreement (the "Dispute"), and demanded, among other things, that UMG render to Claimant a full accounting with corresponding royalty payments for a period covering three (3) years prior to the Notification Date.

WHEREAS, on January 1, 2021, UMG advised and confirmed to the Claimant that the total worldwide royalties that would have been paid to Claimant from July 1, 2017 through June 30, 2021 (the "Focused Period"), based on the market value royalty rates set forth hereunder, would have amounted to approximately ███████████ (the "Unpaid Royalties");

WHEREAS, so as to avoid the risk, expense and inconvenience of litigation, and without any admission of fact, circumstance, wrongdoing, or liability whatsoever, the Parties now desire to compromise, settle, and fully resolve any and all disputes that exist between them concerning the Dispute or matters arising out of the Dispute in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE,** for and in consideration of the respective representations, covenants, agreements, warranties, payment, promises, releases and conditions herein contained and other good and valuable consideration, the receipt, legal adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:



DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE5199B06

To The Claimant:

TufAmerica, Inc.
444 West 50th Street,
New York, NY 10019
Attn: Aaron Fuchs, President

To UMG:

UMG Recordings, Inc.
2220 Colorado Avenue
Santa Monica, CA 90404
Attn: EVP, Legal & Business Affairs

**IN WITNESS WHEREOF,** the Parties hereto have executed this Settlement Agreement as of the day and year first above written.

UMG RECORDINGS, INC.

By: _____
     An Authorized Signatory

TUFAMERICA, INC.

By: _____
     An Authorized Signatory

Aaron Fuchs

7



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Joelle A. Milov**
(212) 790-9247
jam@cll.com

November 12, 2024

**VIA ECF**

Hon. Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square, Courtroom 905
New York, New York 10007

>        Re:    *TufAmerica, Inc. d/b/a Tuff City Records v. Songs of Universal, Inc.*,
>               24- cv-2585 (DEH): Defendant and Non-Party UMG Recordings, Inc.'s Letter
>               <u>Motion to Seal</u>

Dear Judge Ho:

    We represent Defendant Songs of Universal, Inc. ("Defendant") in the above-referenced
action.  We also represent non-party UMG Recordings, Inc. ("UMG") in connection with this
motion to seal.  Defendant and UMG (collectively, "Sealing Movants") write to request leave to
file one document, submitted in connection with Defendant's Motion to Dismiss ("Defendant's
Motion to Dismiss"), in redacted form.  Sealing Movants request permission to redact portions of
a document that includes confidential, commercially sensitive information of UMG that is also
subject to a confidentiality provision (collectively, the "Requested Redactions").  The Requested
Redactions are identified by yellow highlighting in Exhibit A to the Declaration of Joelle A.
Milov in Support of Defendant and Non-Party UMG's Motion to Seal.  The Requested
Redactions have been redacted from Exhibit J to the Declaration of Joelle A. Milov (ECF Dkt
# 49-10) in Support of Defendant's Motion to Dismiss, filed concurrently with this Motion to
Seal.

    In its Amended Complaint, Plaintiff TufAmerica, Inc. d/b/a Tuff City Records
("Plaintiff") alleges that the composition "Real Love" contains an uncleared "sample" of a few
"drum sounds" from its composition, "Impeach the President."  Am. Compl., ECF Dkt # 36,
¶ 13.  On this basis, Plaintiff alleges that "Real Love" infringes the musical composition of
"Impeach the President."  There exist two separate copyrights in music—one related to the
composition of a work and the other to a sound recording—and the alleged infringement of a
composition does not ineluctably follow from the infringement of a sound recording.  *See Pickett
v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019); *see, e.g.*, *Newton v. Diamond*,
349 F.3d 591 (9th Cir. 2003).  Nonetheless, Plaintiff insinuates that Defendant infringes the
*composition* of "Impeach the President" because non-party UMG settled Plaintiff's claim of
infringement based on "Real Love" having allegedly sampled the *sound recording* of "Impeach

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 12, 2024
Page 2

the President." *See* Am. Compl. ¶¶ 13-22. According to Plaintiff, Defendant's failure to compensate it for the alleged usage of an uncleared sample of "Impeach the President" in the composition of "Real Love" "is difficult to reconcile with the fact that Plaintiff reached an agreement with UMG [] [the "UMG Agreement"] with respect to the presence of the uncleared samples from 'Impeach the President' on the master sound recording of 'Real Love.'" *Id.* ¶¶ 21-22.

Although the UMG Agreement, which contains a confidentiality provision, was not attached to the Complaint, it was incorporated by reference and can be considered in conjunction with Defendant's Motion to Dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Sealing Movants seek to submit a redacted portion of the first page of the UMG Agreement, as well as a non-redacted signature page from the agreement, in connection with Defendant's Motion to Dismiss to show that Plaintiff was aware of its claim more than three years prior to filing the Complaint, as is relevant to Defendant's statute of limitations argument. Defendant also wishes to refer to that portion of the UMG Agreement in which UMG disclaimed any admission of liability or wrongdoing to controvert Plaintiff's description of the agreement.

The Requested Redactions comport with Second Circuit case law, which applies the three-step test described in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Under this test, the Court must determine: (1) whether the documents subject to a sealing request qualify as "judicial documents"; (2) the weight of the presumption of public access attaching to any judicial document; and (3) if any countervailing factors or higher values outweigh the right of public access to any judicial documents. *Id.* at 119–20. This Court has "considerable discretion in determining whether good cause exists to overcome the presumption of open access" to documents filed on its docket. *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000).

First, the request is consistent with the Second Circuit's recognition that the right of public access to judicial documents is not absolute, and that the "court must balance competing considerations" and seal documents or information where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *See Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). The Requested Redactions are "narrowly tailored" because they only redact confidential, commercially sensitive, and previously non-disclosed business and commercial information that should be protected from disclosure. *See Vinci Brands LLC v. Coach Servs.*, No. 23-cv-5138, 2023 WL 6289969, at *2 (S.D.N.Y. Sept. 27, 2023) ("[W]here the parties seek to redact financial information such as licensing fees and [a] loan amount, production timelines and information about manufacturers, suppliers or distributors, the proposed redactions are narrowly tailored to protect against competitive harm, which outweighs the presumption of access accorded to these filings.").

Second, the Requested Redactions relate to information that is irrelevant to the merits of Defendant's Motion to Dismiss. Defendant seeks to submit a portion of the UMG Agreement for the sole purposes of showing that Plaintiff had long been aware of this matter and that UMG disclaimed liability in the agreement; any specific settlement term is not relevant to the grounds

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 12, 2024
Page 3

on which Defendant moves to dismiss.  "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of access] is low and amounts to little more than a prediction of public access absent a countervailing reason." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).  Under these circumstances, sealing by redaction is appropriate.  *See Monk v. Goldman Sachs & Co. LLC*, No. 22-CV-6056 (JMF), 2023 WL 22618, at *7 (S.D.N.Y. Jan. 3, 2023) ("[T]he Court concludes that the settlement amount may be redacted from the Settlement Agreement.  The settlement amount had no relevance to the Goldman Defendants' motion to compel arbitration, and the law favors confidentiality of such information to incentivize the resolution of disputes."); *Rubik's Brand Ltd. v. Glambeau, Inc.*, No. 17-cv-6559, 2021 WL 1085338, at *2 (S.D.N.Y. Mar. 22, 2021) (agreeing to seal preliminary report that was "only marginally relevant to the claims asserted in this case").  The Requested Redactions involve a contract resolving a dispute about a *sound recording* copyright that is not at in this dispute regarding a copyright in the *musical composition* of a work and therefore provides no specific benefit to the public.  If this Court grants the request to redact, the public will still have ample information available to it to understand the underlying dispute.  *See Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 311 F. Supp. 3d 653, 666 (S.D.N.Y. 2018) (permitting proposed redactions where a "member of the public reviewing the parties' redacted submissions . . . would have information sufficient to understand the parties' arguments and the Court's adjudication").

Third, there is a strong countervailing interest in maintaining the confidentiality of competitively sensitive business information.  The Requested Redactions include sensitive and confidential commercial information, including sales information, the disclosure of which would cause competitive harm to non-party UMG in the music industry because it could affect UMG in negotiating future settlements or licensing agreements.  *See, e.g.*, *Rubik's Brand*, 2021 WL 1085338, at *1  (agreeing that disclosure of trademark licensing agreement "could harm [plaintiff] and/or its business partners by disadvantaging them in negotiating future licensing agreements.").  Courts in this District routinely seal documents related to royalty and sales figures.  *See, e.g.*, *Red Hawk, LLC v. Colorforms Brand LLC*, 2024 WL 1075282, at *1-2 (S.D.N.Y. Feb. 9, 2024) (granting motion to seal when parties requested redactions, included "confidential royalty rates between [defendant] and a third party, . . . financial terms of a contract between [defendant] and a third party, and confidential sales information.").  The competitive disadvantages that would flow to UMG if such information were disclosed outweigh the general public interest in disclosure.  *See Lugosch*, 435 F.3d at 120.  Moreover, the Requested Redactions are narrowly tailored just to avoid competitive harm.  *See, e.g.*, *Rubik's Brand*, 2021 WL 1085338, at *2  (agreeing that disclosure of testimony related to "projected sales, net sales, and revenue figures for the relevant time period . . . cover material that, if disclosed, would competitively harm Flambeau[, because] . . . a competitor could use information concerning sales figures to upend the puzzle cube market and disrupt the Quick Cube's business model.  Further, the Court also finds that the proposed redactions are narrowly tailored to avoid that potential harm.").

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 12, 2024
Page 4

Fourth, the public interest in the details that Defendant seeks to redact is limited compared to the interest of private parties, including the legitimate privacy interest of non-party UMG. Indeed, the Second Circuit has held that "'the privacy interest of innocent third parties . . . should weigh heavily in a court's balancing equation.'" *Amodeo*, 71 F.3d at 1050 (citation omitted). For example, when parties in *Red Hawk, LLC v. Colorforms Brand LLC* requested that the court allow them to redact information related to "confidential royalty rates between [defendant] and a third party, . . . financial terms of a contract between [defendant] and a third party, and confidential sales information", the court found that "as nonparties to this litigation, [defendant]'s contractual counterparties—including licensees and licensors—have a legitimate privacy interest that 'should weigh heavily in a court's balancing equation'" 2024 WL 551543, at *1-2 (quoting *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79-90 (2d Cir. 1990)). The Court should similarly find here that UMG's privacy interest in its confidential contractual terms, which includes confidential royalty information, should weigh heavily in the court's balancing analysis.

For these reasons, Sealing Movants respectfully requests that the Court permit the Requested Redactions identified by highlighting in Exhibit A to the Declaration of Joelle A. Milov in Support of Defendant and UMG's Motion to Seal. We thank the Court for its attention to this matter.

Respectfully,

COWAN, LIEBOWITZ & LATMAN, P.C.
*Attorneys for Defendant and UMG*
*Recordings, Inc.*

By:_____
         Joelle A. Milov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                                    :

                Plaintiff,                        :    Case No. 1:24-cv-2585-DEH

           v.                                           :

SONGS OF UNIVERSAL, INC.,                                   :

                Defendant.                        :

------------------------------------------------------------x

### DECLARATION OF JOELLE A. MILOV IN SUPPORT OF DEFENDANT AND NON-PARTY UMG'S MOTION TO SEAL

      1.     I am an attorney at Cowan, Liebowitz & Latman, P.C., attorneys for Defendant Songs of Universal, Inc. ("Defendant"). This firm also represents non-party UMG Recordings, Inc. ("UMG" and with Defendant, collectively, "Sealing Movants") in connection with this motion to seal. I submit this declaration in support of Defendant and UMG's Motion to Seal. This declaration is based on my personal knowledge of the events and matters discussed herein.

      2.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of portions of a Confidential Settlement Agreement and General Release between Plaintiff TufAmerica, Inc. and non-party UMG. The portions of the document that Sealing Movants seek to redact are highlighted in yellow.

      3.     Sealing Movants have submitted a publicly accessible version of the document with redactions over the yellow highlighted portions of the document. That redacted document was submitted as Exhibit J to the Declaration of Joelle A. Milov (ECF Dkt # 49-10) in Support of Defendant's Motion to Dismiss, filed concurrently with this Motion to Seal.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT.  EXECUTED ON NOVEMBER 12, 2024 AT PITTSBURGH, PENNSYLVANIA.

Joelle A. Milov



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY  10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Joelle A. Milov**
(212) 790-9247
jam@cll.com

November 15, 2024

**VIA ECF**

Hon. Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square, Courtroom 905
New York, New York 10007

      Re:    *TufAmerica, Inc. d/b/a Tuff City Records v. Songs of Universal, Inc.*,
            24- cv-2585 (DEH): Defendant's Letter Motion to Stay Discovery Pending
            <u>Defendant's Motion to Dismiss</u>

Dear Judge Ho:

      We represent Defendant Songs of Universal, Inc. ("SOU") in the above-captioned action. We write to request that the Court stay discovery into the merits of the action pending resolution of SOU's Motion to Dismiss (ECF Dkt # 46-49).  Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff") joins in SOU's request to stay discovery, but not in SOU's assertions and arguments, and reserves its right to submit its own letter on the matter next week.

      Plaintiff filed its copyright infringement Complaint on April 4, 2024, alleging that the composition "Real Love" contains an uncleared sample from its composition, "Impeach the President."  Compl., ECF Doc. No. 1, ¶ 11.  Defendant Universal Music Publishing, Inc. ("UMP") filed its motion to dismiss the Complaint on September 23, 2024, and, in response Plaintiff filed its First Amended Complaint against SOU on October 29, 2024.  On November 12, 2024, SOU moved to dismiss Plaintiff's First Amended Complaint, contending, *inter alia*, that the First Amended Complaint failed to state a claim because the works at issue were not substantially similar as a matter of law.  ECF Dkt # 46-49.

      The Court So-Ordered the Parties' Civil Case Management Plan and Scheduling Order (the "Scheduling Order") on August 29, 2024.  Under the Scheduling Order, all fact discovery is to be completed by February 3, 2025.  By consent, the deadlines in 7(b)-(c) in the Scheduling Order for service of document requests and interrogatories was extended until November 25, 2024.  As of the date of this letter, neither party has served document requests or interrogatories. However, based on the initial disclosures the Parties have exchanged, fact discovery will likely be broad, covering Plaintiff's authorship and/or ownership of the composition "Impeach the President," including an implicated written transfer agreement; the creation of the "Real Love" composition and consent obtained for use of a separate composition, "Top Billin'", in connection with "Real Love"; the fame and popularity of "Real Love", including Plaintiff's knowledge

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 15, 2024
Page 2

thereof; and discovery on Plaintiff's damages claim.  Given that the "Impeach the President" and "Real Love" compositions were released many decades ago, discovery of relevant documents is likely going to prove more difficult to complete than other cases where relevant documents may be stored in easily accessible digital files.  Moreover, the Parties will each likely utilize one or more experts during expert discovery.

"Under Federal Rule of Civil Procedure 26(c), a court has discretion to stay discovery 'for good cause.'  'Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay.'" *Boelter v. Hearst Communs., Inc.*, No. 15-cv-03934, 2016 WL 361554, at *4 (S.D.N.Y. Jan. 28, 2016) (citation omitted).  In determining whether a stay of discovery is appropriate, "'a court should consider the breadth of discovery sought and the burden of responding to it, as well as the strength of the underlying motion.'"  *Id.*  Here, all factors weigh in favor of staying discovery pending a decision on Defendant's motion to dismiss.

First, the discovery at issue will require significant effort, particularly because locating documents from decades ago and witnesses from whom no one has heard in many years will likely prove logistically challenging to both Plaintiff and Defendant.  This burden militates in favor of granting a stay.  *See id.* at *14 ("Defendant contends (and Plaintiff does not deny) that her other requests require the production of significant additional information that covers a different time period. Plaintiff's requests are broad and demand extensive responses.").

Second, Defendant has submitted a well-grounded motion to dismiss that, if granted, would dispose of the entire action.  Specifically, SOU has moved to dismiss the Amended Complaint on the basis that "Impeach the President" and "Real Love" are not substantially similar as a matter of law.  *See Turman v. Abyssinian Baptist Church*, No. 23-cv-11304, 2024 U.S. Dist. LEXIS 100813, at *2 (S.D.N.Y. June 6, 2024) (Ho, J.) (granting stay pending motion to dismiss); *see generally Gong v. Savage*, No. 23-cv-7355 (S.D.N.Y.), Dkt. #70 (granting letter motion to stay pending resolution of motion to dismiss complaint that included copyright infringement claim).  Under these circumstances, "ordering discovery to proceed at this time would result in an excessive burden on Defendant."  *Boelter*, 2016 WL 361554, at *5.

Finally, Plaintiff can make no claim of prejudice due to the stay and joins in the request to stay discovery.  *See supra*.  As discussed in Defendant's motion to dismiss (*see* ECF Dkt # 47), Plaintiff has known about its potential infringement claim for more than three years prior to the date when it filed this action.  Having waited to so long to bring its claim, Plaintiff cannot be heard now to complain that a short delay for resolution of a potentially dispositive motion would be prejudicial to its position.  *See Marchante v. Reuters Am. LLC*, No. 23-CV-8864 (DEH), 2023 U.S. Dist. LEXIS 218037, at *2-3 (S.D.N.Y. Dec. 7, 2023) (Ho, J.) ("Finally, and of particular significance to the Court's decision, is the lack of prejudice to Plaintiff caused by a stay. Plaintiff's written and oral submissions do not establish that he would suffer any prejudice by waiting for a decision on Defendants' motion.").  Given that discovery into this matter would be costly, and Defendant has raised serious concerns as to whether Plaintiff has stated claims for relief as a matter of law, "it is . . . prudent to postpone the significant costs of discovery at this juncture."  *Boelter*, 2016 WL 361554, at *5.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 15, 2024
Page 3


     While SOU believes that a stay of discovery pending decision on its pending motion to dismiss is appropriate, should the Court not be inclined to grant the stay, SOU requests, in the alternative, that the Court order the Parties to submit a Revised Civil Case Management Plan and Scheduling Order, pursuant to Rule 2(e)(iv) of Your Honor's Individual Practices. The discovery deadlines set forth in the Scheduling Order are no longer feasible. The Scheduling Order was completed prior to the time when UMP filed its motion to dismiss and prior to when UMP consented to a three-week extension of time for Plaintiff to respond to UMP's motion to dismiss. ECF Dkt. #s 23, 25-28, 33. Further, Plaintiff has recently filed an Amended Complaint. ECF Dkt. # 36. Given these delays, it is SOU's view that the Parties will be unable to complete fact discovery by February 3, 2025 or expert discovery by March 19, 2025 and should accordingly revise the Scheduling Order. As with the request for a stay of discovery, Plaintiff joins in this alternative request, but does not join in SOU's assertions and arguments, and reserves its right to submit its own letter on the matter next week.

     We thank the Court for its time and consideration.


     Respectfully,

     COWAN, LIEBOWITZ & LATMAN, P.C.
     *Attorneys for Defendant Songs of Universal, Inc.*


     By:_____
         Joelle A. Milov

**A124**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

TUFAMERICA, INC. d/b/a TUFF CITY RECORDS,

                                            Index No. 24-cv-2585

                      Plaintiff,

     - against-

SONGS OF UNIVERSAL, INC.

                      Defendant.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION
<u>TO DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

PROCEDURAL POSTURE ...................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT .............................................................................................................. 5

    I.     Legal Standard on Motion to Dismiss ................................................... 5

    II.    Plaintiff Has Met Its Burden to Plead Facts Sufficient to Support a Claim of Copyright Infringement ........................................................................ 5

    III.   Defendant Misstates the Law With Respect to the Scope of Copyright Protection for Musical Compositions ...................................................... 8

    IV.   The TufAmerica-UMG Settlement Agreement is Highly Probative of the Disputed Issues .................................................................................... 11

    V.    Plaintiff Agrees the Copyright Act Imposes a Three-Year Lookback on Damages in Copyright Infringement Cases ........................................ 14

    VI.   Plaintiff's Claims for Declaratory and Injunctive Relief Should Remain ............ 14

CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 5

*Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) ......................................................... 5

*Johnson v. Magnolia Pictures LLC*, No. 18 CV 9337 (VB), 2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019) ........................................................................................................ 7, 15

*Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188 (S.D.N.Y. 2021) ................ 5

*Parker v. Hinton*, No. 22-5348, 2023 WL 370910 (6th Cir. Jan. 24, 2023) ................... 9

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) .................. 5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) ...................................... 14

*Skidmore for Randy Craig Wolfe Tr. v. Led Zeppelin*, 905 F.3d 1116 (9th Cir. 2018), *on reh'g en banc sub nom. Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .............................................................................................. 9, 11

*Structured Asset Sales, LLC v. Sheeran*, __ F.4th __, No. 23-905, 2024 WL 4644955 (2d Cir. Nov. 1, 2024) ............................................................................................... 9

**Statutes**

17 U.S.C. § 114(b) ....................................................................................................... 10

17 U.S.C. § 412 ............................................................................................................ 14

17 U.S.C. § 504(c) ....................................................................................................... 14

17 U.S.C. § 507(b) ....................................................................................................... 14

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1

Fed. R. Civ. P. 26(a)(2) ................................................................................................. 6

**Other Authorities**

1 Nimmer on Copyright § 2.05[B] (2024) ............................................................... 10, 11

1 Nimmer on Copyright § 7.17[A] (2024) ................................................................... 11

1 Nimmer on Copyright § 9.05[A][2] (2024) ............................................................. 11

*Compendium of Copyright Office Practices* ........................................................ 9, 10

**PRELIMINARY STATEMENT**

Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff"), through the undersigned

litigation counsel, submits this Memorandum of Law, along with the Declaration of Ethan

Lustig, Ph.D. ("Lustig Dec."), and the Declaration of Hillel I. Parness, and the exhibits attached

thereto, in Opposition to Defendant Songs of Universal, Inc.'s Motion to Dismiss the Amended

Complaint.  ECF 36.

**PROCEDURAL POSTURE**

On April 4, 2024, Plaintiff filed this action against Defendant.  ECF 1.  On September 23,

2024, Defendant moved to dismiss the Complaint.  ECF 25-28.  As part of its submission,

Defendant included a declaration by Dr. Lawrence Ferrara, a well-known musicology expert who

testifies regularly for major record labels and music publishers (ECF 27), as well as an attorney

declaration that attached 10 exhibits.  ECF 28 through 28-11.

On October 29, 2024, Plaintiff filed the Amended Complaint.  ECF 36.  On November

12, 2024, Defendant moved to dismiss the Amended Complaint.  ECF 46-49.  Once again,

Defendant attached a declaration from Dr. Ferrara (ECF 48), and the attorney declaration with its

10 exhibits.  ECF 49 through 49-11.

The Complaint concerns copyright infringement of musical compositions, specifically,

Defendant's infringement of the copyright in the musical composition "Impeach the President"

through Defendant's publication of "Real Love."  Plaintiff asserts claims for copyright

infringement, declaratory judgment and injunctive relief.

## STATEMENT OF FACTS[1]

"Impeach the President" was created and published in 1973, and registered by Plaintiff with the United States Copyright Office in 1991 (SR0000136339 (ECF 1-1)). The "deposit copy" submitted to the U.S. Copyright Office in connection with the registration for the "Impeach the President" musical composition was the commercially-released sound recording (in vinyl record format) of the composition. Defendant is the music publisher of the musical composition entitled "Real Love," which composition was recorded by Mary J. Blige for non-party UMG Recordings, Inc. ("UMG"). UMG is a corporate affiliate of Songs of Universal.

The "Real Love" sound recording and the "Real Love" musical composition contain uncleared samples from "Impeach the President." "Real Love" sampled drum sounds from the opening of Audio Two's "Top Billin'," which in turn sampled drum sounds of "Impeach the President." "Real Love," by sampling and copying drum sounds from "Top Billin'," is also sampling and copying drum sounds from "Impeach the President."

By way of example, "Top Billin'," beginning at time index 0:00,[2] incorporates the drum sounds from "Impeach the President" beginning at time index 0:22, in a manner with strong musicological similarities, as shown in the figure below, which compares the drums at time index 0:22 of "Impeach the President" (above) with 0:00 of "Top Billin'" (below) (red boxes indicate identical drum rhythms):

---

[1] The facts set forth herein are drawn from the Complaint and assumed for purposes of this motion to be true.

[2] All time indices herein refer to the commercially-released sound recordings of the musical compositions.



By way of further example, "Top Billin'," beginning at time index 0:11, incorporates the drum sounds from "Impeach the President" beginning at time index 0:22, in a manner with strong musicological similarities, as shown in the figure below, which compares the drums at time index 0:22 of "Impeach the President" (above) with 0:11 of "Top Billin'" (below) (red boxes indicate identical drum rhythms):



"Real Love" samples the drum sounds from "Top Billin'" with limited modifications. Among the limited modifications are the addition of the addition of an extra hi-hat layer, mostly on eighth notes. As a result, "Real Love," by way of example, not only incorporates the drum

sounds from "Impeach the President" that were used in "Top Billin'," but modifies "Top Billin'"

in a manner that brings "Real Love" closer, musicologically, to "Impeach the President," as

shown in the figure below[3] (red squares and circles show identical drum rhythms):



Plaintiff advised Defendant repeatedly of the presence of the uncleared samples from

"Impeach the President" in "Real Love," and Defendant repeatedly refused to engage Plaintiff in

substantive negotiations to rectify the foregoing, let alone agreed to compensate Plaintiff for the

past infringement or on an ongoing basis.

Effective July 1, 2022, Plaintiff and UMG entered into an agreement with respect to the

uncleared samples from "Impeach the President" on the master sound recording of "Real Love"

(the "Settlement Agreement").  Defendant submitted one substantive page from 12-page

Settlement Agreement to the Court under seal (with a redacted version of that page filed on

ECF).  Plaintiff is submitting a complete copy of the Settlement Agreement to the Court under

seal, with a redacted version of the complete Settlement Agreement filed on ECF.

In the Settlement Agreement, UMG agreed to each of the following:

- 

---

[3] This transcription was prepared by Defendant's expert, and is assumed to be accurate solely for purposes of this pleading.

4

- ████████████████████████████ and

- ████████████████████████████

<u>ARGUMENT</u>

**I.      Legal Standard on Motion to Dismiss**

For purposes of this motion Defendant and the Court "accept all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiffs' favor." *Nicklen v. Sinclair Broad. Grp., Inc*., 551 F. Supp. 3d 188, 193 (S.D.N.Y. 2021) (*quoting Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 61 (2d Cir. 2010) (*quoting Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Plaintiff acknowledges that "[t]hreadbare recitals of the elements of a cause of action" and conclusory allegations are not presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but that is not the case with the Amended Complaint.

**II.     Plaintiff Has Met Its Burden to Plead Facts Sufficient to Support a Claim of Copyright Infringement**

In its original motion to dismiss, Defendant focused almost obsessively on the fact that Plaintiff did not explicitly state that "Real Love" is substantially similar to "Impeach the President," but that is not a dismissible offense.  The burden on a plaintiff is not to parrot the legal standard (indeed merely doing so <u>could</u> result in dismissal), but rather to allege the <u>facts</u> that – if true – would support a claim.  In the Amended Complaint, Plaintiff added statements to satisfy that concern, but also went into significant additional detail as to <u>how</u> "Real Love" infringes "Impeach the President."  *Compare* ECF 1 ¶ 11 with ECF 36 ¶¶ 14-20.  Defendant attempts to marginalize these paragraphs, referring derisively to "boxes and circles."  The

analysis set forth in the Amended Complaint is derived from the initial work of Dr. Ethan Lustig,

who explains in his Declaration,[4] *inter alia*:

> 3.      In my professional expert opinion, "Top Billin'" does more than merely sample the individual drum sounds of "Impeach the President"; "Top Billin'" is also a compositional interpolation of the drum composition in "Impeach the President", which I will demonstrate below.

> 4.      It therefore follows that "Real Love", by sampling and copying the drums of "Top Billin'", is also sampling and copying the drums of "Impeach the President".

> 5.      Defendant's expert [referring to Dr. Ferrara] has notated the drums at 0:00 of "Impeach the President" and claimed that they are different from the drum pattern at 0:00 of "Top Billin'". However, this is a straw man, because the drum part of compositional interest, which is highly similar to that of "Top Billin'", is found beginning at 0:22 of "Impeach the President".

> 6.      The following figure compares the drums at 0:22 of "Impeach the President" (above) with 0:00 of "Top Billin'" (below). As can be seen, there are strong similarities, especially in the first measure (red boxes show identical drum rhythms; see attached drum legend):



> 7.      In addition to sampling and copying the drums from 0:00 of "Top Billin'", "Real Love" also (beginning at 1:44) samples and copies the drums from 0:11 of "Top Billin'". The following figure compares the drums at 0:22 of "Impeach the President" (above) with 0:11 of "Top Billin'" (below). As can be seen, the vast majority of the two grooves are identical (red boxes and circles show identical drum rhythms):

---

[4] For the avoidance of doubt, Dr. Lustig's Declaration – like that of Dr. Ferrara submitted by Defendant, presumably – is not intended to serve as an expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2), but rather a guide to assist the Court at this early stage of the case.



8.      From these figures, we can see that both songs' drums feature an emphasis on off-beat hi-hats (on the "and" of each beat), a distinctive feature that is quite uncommon in hip-hop records, and would have been even more novel in soul/funk records circa 1973, when "Impeach the President" was released.

Lustig Dec. ¶¶ 3-8.

Indeed, Dr. Lustig even addresses Defendant's attempt to distinguish "Real Love" from

"Impeach the President" based on the use of "open" and "closed" hi-hats, writing:

10.      Note that "Impeach the President" uses a mix of open and closed hi-hats, while "Top Billin'" and "Real Love" use only closed hi-hats. However, having served as a drummer myself in multiple studio albums, I can confirm that open vs. closed hi-hats are entirely interchangeable and functionally equivalent. This can be easily demonstrated, for instance, by records in the genres of house or techno, which often alternate between closed or open hi-hats even within the same record (for example, "Music's In Me" (1999)  by Paul Johnson).

11.      The only substantive difference between the drums in "Real Love" and those of "Top Billin'" are the addition of an extra hi-hat layer, mostly on eighth notes. However, this does not change the fact that the drums from "Top Billin'" are used and audible in "Real Love". The added hi-hat in "Real Love" is panned leftward in the mix, but the original "Top Billin'" drum sample remains in the center (mono) of the mix, as heard in "Real Love" from 0:03 on, and particularly at 1:44.

12.      The added 8th-note hi-hats in "Real Love" are hardly transformative and do not succeed in modifying the interpolation and sampling of "Top Billin'" (and, in turn therefore, interpolates and samples "Impeach the President" as well). 8th-note closed hi-hats are commonplace, in many hit songs in the funk, rock, R&B, and soul genres, from "Drive My Car" (1965) by The Beatles, to "Superstition" (1972) by Stevie Wonder, to "Billie Jean" (1982) by Michael Jackson, to name a few, all of which precede "Real Love".

7

13.     In fact, we can even use Defendant's own transcriptions to demonstrate that the added eighth-note hi-hats in "Real Love" bring the song even closer to "Impeach the President" than "Top Billin'" was. Red squares and circles show identical drum rhythms:



Lustig Dec. ¶¶ 10-13.

Like most modern cases of this type, Defendant and Plaintiff have turned to musicology experts to assist with the analysis of the works in question.  As reflected by the competing early-stage approaches of Drs. Ferrara and Lustig, this case will likely involve not only questions of musicological fact (*e.g.*, what drum notes are found in each composition and from where they were taken) but also questions of law, including whether and under what conditions the underlined rearrangement of sampled elements gives rise to copyright infringement, and when perhaps it does not.  These issues must be left for fact and expert discovery and – we respectfully submit – are not capable of determination at this stage of the case.

### III.     Defendant Misstates the Law With Respect to the Scope of Copyright Protection for Musical Compositions

Just as importantly, Defendant blatantly misstates the law with respect to the scope of copyright protection for musical compositions, suggesting that it is far narrower, and in all instances different, than the scope of protection for sound recordings of the same musical composition.

In a series of recent cases, three United States Courts of Appeal (the Second Circuit, most recently) have all ruled that the deposit copy – the materials submitted to the Copyright Office

8

along with a copyright application – defines the scope of copyright protection inherent in the

resulting registration, and thus when applicants filed sheet music deposit copies with the

Copyright Office, the sheet music defined the scope of protection afforded the owner. *Skidmore*

*as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. *en banc* 2020)

("[t]he inescapable conclusion is that the scope of the copyright is limited by the deposit copy");

*Parker v. Hinton*, No. 22-5348, 2023 WL 370910, at *4 (6th Cir. Jan. 24, 2023) ("a copyright

protects original material to the extent it is contained in the deposit copy") (*citation omitted*);

*Structured Asset Sales, LLC v. Sheeran*, __ F.4th __, No. 23-905, 2024 WL 4644955, at *4 (2d

Cir. Nov. 1, 2024) ("the scope of a copyright in a musical work…is limited to the elements found

in the copy of the work deposited with the Copyright Office").

These conclusions are consistent with the longstanding position of the Copyright Office

in the *Compendium of Copyright Office Practices* (the "*Compendium*"),[5] which states:

> As a general rule, a registration for a work of authorship covers the entire
> copyrightable content of the authorship that (i) is claimed in the application, (ii) is
> owned by the claimant, and (iii) is contained in the deposit copy(ies).

*Compendium* § 504 (The Scope of a Registration for a Work of Original Authorship) (emphasis

added).

> To be clear, when a musical work is published solely in a phonorecord, the
> phonorecord constitutes the only representation of the work. In such cases, the
> applicant should submit the phonorecord, as discussed in Section 1509.2(A)(2)(a).
> There is no need to transcribe or notate the work in a visually perceptible form.

*Compendium* § 1509.2(A)(2)(b) (Musical Works Published in the United States in Printed

Copies) (emphasis added).

The Amended Complaint contains the following allegation:

---

[5] The current edition of the *Compendium* is available at https://www.copyright.gov/comp3/.

9. The "deposit copy" submitted to the U.S. Copyright Office in connection with the registration was the commercially-released sound recording (in vinyl record format) of the composition.

NYSCEF 36 ¶ 9.

Assuming the truth of this allegation, and applying the prevailing caselaw and the view of the Copyright Office as reflected in the *Compendium*, it becomes clear that in the case of "Impeach the President," the scope of protection granted by the Copyright Act to the musical composition is identical to that granted to the sound recording, as the same deposit copy was used for both. Dr. Ferrara's analysis – based on his transcription of sheet music based on the transcribable elements from the "Impeach the President" sound recording – therefore fails to capture the full scope of protection given by the Copyright Act to the "Impeach the President" musical composition. Dr. Ferrara's comparison of three transcriptions that he created (*see* ECF 48 ¶ 2) of the three sound recordings – "Impeach the President," "Top Billin'" and "Real Love" – is fundamentally flawed and should be disregarded, certainly at this stage of the case.

Defendant writes the following in its moving brief:

[T]he copyright in a sound recording protects the actual sounds embodied in a recording, *see* 17 U.S.C. §114(b), where as [sic] a copyright in a musical composition protects the melody, harmony, rhythm and other musical elements of a musical composition. *See* 1 Nimmer on Copyright § 2.05[B].

NYSCEF 47 at 17. This statement is also – critically and fundamentally – incorrect.

17 U.S.C. § 114(b) does state that the right of the copyright owner in a sound recording is to the "actual sounds fixed in the recording," but the suggestion that those "actual sounds" are something different than or exclusive from "melody, harmony, rhythm and other musical elements" is obviously ludicrous.

As reflected above, the prevailing view of three Courts of Appeal and the Copyright Office is that whatever is in the deposit copy is protected. In the case of a musical composition

for which the applicant files a sound recording as the deposit copy, the scope of protection for the composition is coextensive with everything embodied in the "actual sounds" on the sound recording deposit copy.

Critically, Professor Nimmer <u>did not say anything to support Defendant's argument</u>. The actual quote from Nimmer reads as follows, in its entirety: "It has been said that a musical work consists of rhythm, harmony, and melody – and that the requisite creativity must inhere in one of these three." 1 Nimmer on Copyright § 2.05 (2024). Professor Nimmer did not say that the scope of copyright for musical compositions is limited to that which <u>could be</u> reduced to sheet music.

In fact, Professor Nimmer said just the opposite, <u>anticipating the emergence of a case exactly like this one</u>:

> It nonetheless remains possible for a different rule to apply to works that were published before 1978 but not registered for protection until thereafter. See 905 F.3d at 1133 (Treatise cited as to 7.17[A] *infra*). Consider a work published in 1975 but not registered in the Copyright Office until shortly before its renewal term was scheduled to commence in 2003. See § 9.05[A][2] *infra*. <u>The deposit copy, in that instance, might potentially inhere in a sound recording, possibly leading to a different result</u>.

*Id*. n. 24.2 (emphasis added).

Plaintiff has met (and, we submit, exceeded) the pleading requirements for a copyright infringement claim. We respectfully urge the Court to deny Defendant's motion to dismiss and allow the case to proceed to fact and expert discovery.

## IV.   The TufAmerica-UMG Settlement Agreement is Highly Probative of the Disputed Issues

In both versions of the Complaint Plaintiff referenced without attaching the Settlement Agreement between Plaintiff and non-party (and corporate affiliate of Defendant) UMG, careful to avoid any mention of the commercial terms at issue, and stating merely that "Defendant's

refusal to cooperate with Plaintiff is difficult to reconcile with the fact that Plaintiff reached an agreement with UMG Recordings, Inc. with respect to the presence of the uncleared samples from 'Impeach the President' on the master sound recording of 'Real Love.'" ECF 36 ¶ 22.

Defendant responded with the mistaken argument, addressed in the previous section, that "the copyright in a sound recording [and] the copyright in a musical composition [] are different species of copyrights and protect different types of expression." ECF 47 at 16. Defendant also responded by attaching just one redacted substantive page from the 12-page Settlement Agreement (providing the same page in unredacted form to the Court), for the sole purpose of being able to argue that the Settlement Agreement "disclaims any admission of liability or wrongdoing on the part of UMG." *Id*. at 17 (*citing* ECF 49-10).

Defendant did not mention, however, that the first WHEREAS clause on the one substantive page that Defendant <u>did</u> submit reads as follows, without qualification:

> WHEREAS, on July 20, 1992 (the "Release Date"), Uptown Records and MCA Records, Inc. (predecessor-in-interest to UMG) ("Uptown/MCA") released the Mary J. Blige ("UMG Artist") album entitled "What's The 411?" (the "Album"), <u>which Album embodied the master recording entitled "Real Love" which includes a portion of the Sampled Master (the "UMG Master")</u>.

"Sampled Master," defined in the next WHEREAS clause, is "sample of the sound recording entitled 'Impeach The President.'" ECF 49-10 at 1 (emphasis added).

UMG's denial of liability notwithstanding, it conceded that the sampling occurred. This conclusion is reinforced by additional statements on pages that Defendant did <u>not</u> include, either in the publicly-filed version or the unredacted version filed under seal, including:





Plaintiff submits that the foregoing – in an agreement between Plaintiff and Defendant's record label corporate affiliate concerning the admitted sampling in the <u>sound recording</u> of "Real Love" from the <u>sound recording</u> of "Impeach the President" – is highly relevant to Plaintiff's allegations of copyright infringement across the corresponding musical compositions.  This is especially so in view of the legal analysis set forth above, which posits that when it comes to "Impeach the President," by virtue of the use of the sound recording as the deposit copy for the registration of the musical composition, the scope of copyright protection afforded to the musical composition is coextensive and identical with that afforded to the sound recording.

Plaintiff's invocation of the Settlement Agreement is probative to the merits of this case, and provides further support for the conclusion that Plaintiff has met the pleading standards necessary to overcome a Rule 12(b)(6) motion.

## V.     Plaintiff <u>Agrees</u> the Copyright Act Imposes a Three-Year Lookback on Damages in Copyright Infringement Cases

In the Complaint, Plaintiff seeks actual damages or – in the alternative at its election – statutory damages for Defendant's infringement of the "Impeach the President" musical composition.  This was entirely proper, as the alleged infringement took place after the effective date of the copyright registration at issue, and Plaintiff can elect to seek statutory damages, rather than actual damages, at any time before final judgment.  17 U.S.C. §§ 412, 504(c).  Plaintiff did not specify the start date for its actual damages, but takes no issue with Defendant's position that it is permitted to seek actual damages for the period commencing no earlier than three years before it filed suit.  17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663, 671, 677 (2014).

Plaintiff strongly disagrees, however, with Defendant's half-hearted argument that Plaintiff is asserting a claim of copyright ownership over "Real Love," rather than an infringement claim by "Real Love" of "Impeach the President."  The Complaint could not be clearer, as Plaintiff alleges throughout that it owns "Impeach the President," never alleges that it owns "Real Love," and alleges repeatedly that "Real Love" infringes "Impeach the President," culminating in paragraph 2 of the Prayer for Relief:

> Declaratory Judgment that Plaintiff is the owner of the copyright in the musical composition "Impeach the President," that Defendant has infringed Plaintiff's copyright in the musical composition "Impeach the President," and that Defendant must pay Plaintiff for the damages arising from said infringement;

ECF 36 at 11.  To suggest otherwise is not worthy of serious discussion.

## VI.    Plaintiff's Claims for Declaratory and Injunctive Relief Should Remain

Defendant expresses concern that Plaintiff asserted separate Causes of Action for Declaratory Judgment and Injunctive Relief, while apparently recognizing that Plaintiff can seek both types of relief.  This procedural argument – as long as the right to seek the relief is

preserved – is ultimately of no moment, and Plaintiff will gladly defer to the Court's preference

in this instance.  Plaintiff will point out, however, that in *Johnson v. Magnolia Pictures LLC*, No.

18 CV 9337 (VB), 2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019), which Defendant cites in

support of dismissal of each of these claims, the court dismissed the declaratory judgment claim

<u>because</u> it had dismissed the substantive copyright infringement claim, and therefore "'[p]laintiff

has no independent substantive claim' against the moving defendants potentially entitling

plaintiff to declaratory relief."  *Id*., 2019 WL 4412483 *3.  That court similarly held that

"Plaintiff cannot seek the remedy of an injunction absent a viable cause of action."  *Id*., 2019 WL

4412483 *4 n. 4.

<div align="center">

**CONCLUSION**

</div>

Defendant Songs of Universal, Inc.'s Motion to Dismiss the Amended Complaint should

be denied.[6]


Dated:  New York, New York         Respectfully submitted,
       November 26, 2024

                                   _____/s/ Hillel I. Parness_____
                                   Hillel I. Parness
                                   PARNESS LAW FIRM, PLLC
                                   136 Madison Ave., 6th Floor
                                   New York, New York  10016
                                   212-447-5299
                                   hip@hiplaw.com
                                   *Attorneys for Plaintiff TufAmerica, Inc.*

---

[6] Defendant argues that if the Court grants its motion, it should be granted without leave to amend.  Plaintiff respectfully disagrees.  As discussed above, there are complex factual and legal issues at play in this case, and if the Court concludes that the Amended Complaint is lacking in any respect, Plaintiff respectfully requests the opportunity to quickly rectify any remaining issues so that this case can move forward on the merits.

<div align="center">15</div>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TUFAMERICA, INC. d/b/a TUFF CITY RECORDS,

                              Index No. 24-cv-2585

                Plaintiff,

    - against-                          **DECLARATION OF**
                                        **<u>ETHAN LUSTIG, Ph.D.</u>**

SONGS OF UNIVERSAL, INC.

                Defendant.
------------------------------------------------------------------X

ETHAN LUSTIG, Ph.D., pursuant to 28 U.S.C. § 1746, declares as follows:

    1.    I have been retained to assess the musical similarity between The Honey

Drippers' "Impeach the President" (1973)[1] and Mary J. Blige's "Real Love" (1992).[2]  A copy

of my *curriculum vitae* is attached as **<u>Exhibit 1</u>**.

    2.    I assume for purposes of this report that "Real Love" at 0:03 samples the

opening of Audio Two's "Top Billin'" (1987),[3] which in turn sampled the drum sounds of

"Impeach the President".[4] My understanding is that master rights have even been granted by

the rights holders of "Real Love" for their sampling of "Impeach the President".

    3.    In my professional expert opinion, "Top Billin'" does more than merely sample

the individual drum sounds of "Impeach the President"; "Top Billin'" is also a compositional

interpolation of the drum composition in "Impeach the President", which I will demonstrate

below.

    4.    It therefore follows that "Real Love", by sampling and copying the drums of

"Top Billin'", is also sampling and copying the drums of "Impeach the President".

    5.    Defendant's expert has notated the drums at 0:00 of "Impeach the President"

---

[1] https://www.youtube.com/watch?v=wVycUX1y0XE. Timepoints in this document refer to those of the link.
[2] https://www.youtube.com/watch?v=OSmGu5LBs7E. Timepoints in this document refer to those of the link.
[3] https://www.youtube.com/watch?v=2eZhzPoKmFs. Timepoints in this document refer to those of the link.
[4] https://www.whosampled.com/Mary-J.-Blige/Real-Love/;
https://www.whosampled.com/sample/2964/Audio-Two-Top-Billin%27-The-Honey- Drippers-Impeach-the-President/; https://en.wikipedia.org/wiki/Real_Love_(Mary_J._Blige_song).  Using audio algorithms, I have extracted the drums only from "Impeach the President" (file attached as **<u>Exhibit 2</u>**) for your listening convenience.

and claimed that they are different from the drum pattern at 0:00 of "Top Billin'". However, this is a straw man, because the drum part of compositional interest, which is highly similar to that of "Top Billin'", is found beginning at 0:22 of "Impeach the President".

6. The following figure compares the drums at 0:22 of "Impeach the President" (above) with 0:00 of "Top Billin'" (below). As can be seen, there are strong similarities, especially in the first measure (red boxes show identical drum rhythms; see attached drum legend):



7. In addition to sampling and copying the drums from 0:00 of "Top Billin'", "Real Love" also (beginning at 1:44) samples and copies the drums from 0:11 of "Top Billin'". The following figure compares the drums at 0:22 of "Impeach the President" (above) with 0:11 of "Top Billin'" (below). As can be seen, the vast majority of the two grooves are identical (red boxes and circles show identical drum rhythms):



8.      From these figures, we can see that both songs' drums feature an emphasis on off-beat hi-hats (on the "and" of each beat), a distinctive feature that is quite uncommon in hip-hop records, and would have been even more novel in soul/funk records circa 1973, when "Impeach the President" was released.

9.      As I assume for purposes of this report that "Top Billin'" samples the drums of "Impeach the President", it is clearly no coincidence that the drum grooves of "Top Billin'" (as at 0:00 and at 0:11) are highly similar in structure to the drums of "Impeach the President" (as at 0:22), particularly in both grooves' emphases on off-beat hi-hats.

10.      Note that "Impeach the President" uses a mix of open and closed hi-hats, while "Top Billin'" and "Real Love" use only closed hi-hats. However, having served as a drummer myself in multiple studio albums, I can confirm that open vs. closed hi-hats are entirely interchangeable and functionally equivalent. This can be easily demonstrated, for instance, by records in the genres of house or techno, which often alternate between closed or open hi-hats even within the same record (for example, "Music's In Me" (1999)[5] by Paul Johnson).

11.      The only substantive difference between the drums in "Real Love" and those of "Top Billin'" are the addition of an extra hi-hat layer, mostly on eighth notes. However, this does not

---

[5] https://www.youtube.com/watch?v=S3H4PrbQjsc.

change the fact that the drums from "Top Billin'" are used and audible in "Real Love". The added hi-hat in "Real Love" is panned leftward in the mix, but the original "Top Billin'" drum sample remains in the center (mono) of the mix, as heard in "Real Love" from 0:03 on, and particularly at 1:44.

12.     The added 8th-note hi-hats in "Real Love" are hardly transformative and do not succeed in modifying the interpolation and sampling of "Top Billin'" (and, in turn therefore, interpolates and samples "Impeach the President" as well). 8th-note closed hi-hats are commonplace, in many hit songs in the funk, rock, R&B, and soul genres, from "Drive My Car" (1965) by The Beatles, to "Superstition" (1972) by Stevie Wonder, to "Billie Jean" (1982) by Michael Jackson, to name a few, all of which precede "Real Love".

13.     In fact, we can even use Defendant's own transcriptions to demonstrate that the added eighth-note hi-hats in "Real Love" bring the song even closer to "Impeach the President" than "Top Billin'" was. Red squares and circles show identical drum rhythms:



I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON NOVEMBER 26, 2024 AT MEXICO CITY, MEXICO.

_____/s/ Ethan Lustig, Ph.D._____
By: Ethan Lustig, Ph.D.



# EXHIBIT 1

# ETHAN LUSTIG, Ph.D.

585-210-0688
Ethan@EthanLustig.com
EthanLustig.com



## Education

2016–21   Ph.D., Music Theory, Eastman School of Music, University of Rochester (Advisor: David Temperley)
- Dissertation on a new cognitive model and algorithm for predicting music taste.

2014–16   M.A., Music Theory, Eastman School of Music, University of Rochester
- Schenkerian analysis, music perception & cognition, post-tonal music, history of theory, pedagogy, keyboard skills, counterpoint, statistics, and experimental design.

2014   Study abroad, Université de Mons, Belgium
- Created new performance environments by integrating motion capture, dance, and new musical interfaces. Collaboration with engineering students.

2010–14   B.A., Music Theory (Honors), University of British Columbia (Advisor: John Roeder)
- Pop analysis, composition, film scoring, rhythm & meter, world music, and acoustics.

## Publications

2023   "Comparing Christmas Carols: IP Issues In Mariah Carey Case." In *Law360: Expert Analysis*. www.law360.com/articles/1774541

2023   "The FAV Corpus: An audio dataset of favorite pieces and excerpts, with formal analyses and music theory descriptors." With David Temperley. *Proceedings of the 24th International Society for Music Information Retrieval (ISMIR)*, Milan.

2023   "Copyright Cheat Sheet: Finding Substantially Similar Songs." In *Law360: Expert Analysis*. www.law360.com/articles/1712559

2021   "The effect of perceived complexity and formal location on musical preference." Ph.D. Dissertation, Eastman School of Music. Advisor: David Temperley.

2020   "All about that bass: Audio filters on basslines determine groove and liking in electronic dance music." With Ivan Tan. *Psychology of Music* 48/6, 861-875.

2019   "Anticipatory syncopation in rock: A corpus study." With David Temperley and Ivan Tan. *Music Perception* 36/4, 353-370.

2018      "Part–invariant model for music generation and harmonization." With Yujia Yan, Joseph VanderStel, and Zhiyao Duan. *Proceedings of the 19th International Society for Music Information Retrieval (ISMIR)*, Paris.

## Presentations

2024      Invited presentation on forensic musicology, Massachusetts Institute of Technology (MIT), class on computational models of music, via Zoom.

2024      "AI and the future of music and audio." *AI CDMX*, Art/Works Creative Co-Working, Mexico City.

2023      Invited presentation on forensic musicology for Oppenheim + Zebrak Law firm, via Zoom.

2023      "The FAV Corpus: An audio dataset of favorite pieces and excerpts, with formal analyses and music theory descriptors." With David Temperley. *24th International Society for Music Information Retrieval (ISMIR)*, Milan.

2018      "Part–invariant model for music generation and harmonization." With Yujia Yan, Joseph VanderStel, and Zhiyao Duan. *19th International Society for Music Information Retrieval (ISMIR)*, Paris.

2017      "Anticipatory syncopation in rock." With Ivan Tan and David Temperley. *Society for Music Perception and Cognition (SMPC)*, San Diego.

2016      "All about that bass: Timbre and groove perception in synthesized bass lines." With Ivan Tan. *International Conference for Music Perception and Cognition (ICMPC)*, San Francisco.

2016      "Groove perception in music." Research presentation, Eastman School of Music.

2014      "Toward a naive analysis: Transcribing Western art music." *Joint Meeting of Analytical Approaches to World Music (AAWM) and the British Forum for Ethnomusicology (BFE)*, London.

## Grants, scholarships, & fellowships

2015-19   Social Sciences and Humanities Research Council (SSHRC) Doctoral Fellowship ($80,000)

2014–19   Robert L. and Mary L. Sproull Fellowship, Eastman School of Music, University of Rochester ($90,000)

2011     Student Scholarships in Arts, University of British Columbia

2010     President's Entrance Scholarship, University of British Columbia

## Disciplinary and university service

2020-    Music Theory Tutor, *JMTP (Journal of Music Theory Pedagogy) Tutoring Program*

2019     Reviewer, *Psychology of Music*

2016     Volunteer, *Society for Music Theory/American Musicological Society*

2015-18  Publicity Manager, *Intégral*
- *Intégral* is a music theory journal run by Eastman graduate students. I designed and distributed flyers, e-announcements, calls for papers, and ad exchanges with other journals.

## Work experience

2022-    Artificial intelligence trainer (Online)
- Optimizing artificial intelligence chatbots through iterative conversations, correcting its music theory reasoning, etc. Clients include Anthropic, Meta, Google.

2020-    Forensic musicologist
Some cases/clients include:
- *Johnson and Johnson, LLP Law Firm* (Beverly Hills, CA): In 2020, I was the musicology expert for plaintiffs in the Bad Bunny "Safaera" case, which settled out of court (AOM Music, Inc. v. Benito Antonio Martínez Ocasio et al., 2:21-cv-07691, US District Court, Central District of California). (Client: Neville L. Johnson)
- *Billionaire Burke* (NYC): In 2021, I assessed the similarity of two hip-hop songs. (Client: Billionaire Burke)
- *Heninger Garrison Davis, LLC Law Firm* (Birmingham, AL): In 2022, I provided my in-depth expert opinion on music used in a Fortune Top 5 corporation's TV commercial. (Client: W. Lewis Garrison, Jr.)
- *McLaughlin & Stern, LLP Law Firm* (NYC): In 2023, I was retained to produce an opinion letter on alleged infringement in rap music. (Client: Chester R. Ostrowski)
- *Landry Legal, PLLC* (NYC): In 2023, I opined on the similarity of two R&B songs. Client: James Landry.
- *Werge & Corbin Law Group* (Denver, CO): In 2024, ongoing expert consulting involving a global Billboard #1 hit song. Client: Tom Werge.

2019-    Music and audio professional (Online)
- Music consulting, sonic branding/jingle creation, audio engineering (mixing & mastering), custom production, songwriting, and composition for music libraries (incl. ScoreKeepers, Triple Scoop Music) for film & TV. Music featured by companies including Adobe.

**2019-** Director, Talent Speaks Voice-Over Agency (Online)
- TV spots, radio spots, audio books, explainer videos, phone trees. Client communication, audio editing, and post-production. Recruiting, training, and managing voice artists in four languages (English, Spanish, Italian, German).

**2018-** Music educator (Online students)
- Lessons and tutoring in production, composition, mixing & mastering, music theory, ear training, sight-singing, piano. Creating custom lesson plans and homework assignments for my students. Ranging from kids to advanced doctoral students.

**2021-22** Music licensing, EtherWorks Media (Palm Springs, CA)
- Synch licenses, cue sheets, liaison for cable TV music-documentary series.

**2019-21** Artist management & audio engineer, MXU Beats (Los Angeles)
- Production, mixing & mastering, promotion (blogs, radio, playlists).

**2019-20** Consultant, Avec Audio (Los Angeles)
- Avec Audio is a startup bridging the production music library and custom music request spaces. I developed a criteria/quality-rating system for uploads, as well as consulting on the UX and building the FAQ and explainer video.

**2019** Recording studio manager (Los Angeles)
- Assisted with recording sessions. Managed scheduling. Oversaw a media campaign (content, ads, outreach, discount codes) to promote the studio and gain clients. Kept studio clean, handled food & gear orders. Recruited, trained, and managed interns.

**2019** Private English tutor (Guadalajara, Mexico)
- Taught lessons in grammar, business English, conversational English.

**2018** Composer & arranger (Rochester, New York)
- Edited and arranged a high school musical, prepared scores and parts.

**2018** Church pianist (Rochester, New York)
- Played hymns, classical, and pop music in Episcopal, Baptist, and progressive churches. Sunday services, weddings, and funerals.

**2018** Editor & proofreader for *The Architecture of Music* by Greg Aranda (Online)
- Edited the prose for clarity; proofread the figures; penned the foreword.

**2017-18** Music Cognition Lab Assistant (Eastman School of Music, University of Rochester)
- Marketing and facilitating symposia and meals; office maintenance.

**2016-17** Coder, Natural History of Song Discography team (Online)
- Analyzed transcriptions of field recordings from around the world; made decisions about musical features (key, meter, form, etc.).

2015-18 DJ & promoter (Rochester, New York)
- DJ'ed in bars, clubs, raves, fundraisers, private parties. Marketed and organized events. DJ crew featured on front cover of newspaper with over 200,000 weekly readers.

2013 Research Assistant, German Department (University of British Columbia)
- Edited and formatted the bibliography of German Professor Kyle Frackman.

2006-14 Rock and jazz musician (Victoria & Vancouver, Canada)
- Played drums and keyboards in five rock and jazz groups, completed three albums, and played live shows.

## Media appearances

2021 "PlaneTones" (ABC, CBS)
- TV series about electronic music. I provided musicological commentary.

## Teaching experience

2024- Instructor, Faculty of Music, UNAM (Mexico City)
- UNAM (Universidad Nacional Autónoma de México) is often considered the top teaching and research institution in Mexico, indeed in all of Latin America. I teach English in the Music Faculty to undergraduates.

2024- Instructor, Faculty of Communication, Universidad Anáhuac (Mexico City)
- Anáhuac is consistently ranked in the top five best private universities in Mexico. I teach Sound Design (in English) to undergraduates in the Faculty of Communication.

2023- Instructor, CENTRO (Mexico City)
- CENTRO is an elite private arts university in Mexico City. I teach audio post-production (in Spanish) to undergraduates.

As a teaching assistant at the Eastman School of Music, I taught:

2017-18 Model Composition & Tonal Analysis III/IV
- Sophomore written theory. Chromatic harmony; composition of fugue, sonata expositions, art song; popular music harmony and form.

2016-17 Aural Musicianship III/IV
- Sophomore aural skills. Chromatic dictation and sight-singing; keyboard skills; tenor and soprano clef; performing complex rhythms; hearing sonata form.

2015-16 Model Composition & Tonal Analysis I/II
- Freshman written theory. Harmonic counterpoint; keyboard skills; diatonic harmony; sequences; binary and ternary form; composition of minuets.

2014-15   Aural Musicianship I/II
- Freshman aural skills. Dictation of diatonic melody and harmony; scale-degree skills; sight-singing; alto clef.

2014-   Private tutor
- Years of experience with one-on-one tutoring of dozens of different students, ranging from kids to advanced doctoral students.

## Additional experience

Won multiple tournaments and championships as a debater, attending the Nationals, Provincials, & the World championship qualifier.

## Technological skills

Ableton Live, AI Prompting, Audacity, Adobe Illustrator, ChatGPT, iZotope Ozone, iZotope RX, Logic Pro X, Max/Msp, Music21, Photoshop, Praat, Python, Sonic Visualizer, SPSS, SubmitHub, Traktor, Zotero.

# EXHIBIT 2

**"Impeach the President" Drums only**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

TUFAMERICA, INC. d/b/a TUFF CITY RECORDS,                Index No. 24-cv-2585

                              Plaintiff,                **DECLARATION OF**
     - against-                                         **HILLEL I. PARNESS**
                                                        **IN OPPOSITION TO**
SONGS OF UNIVERSAL, INC.                                **MOTION TO DISMISS**
                                                        **AMENDED COMPLAINT**
                              Defendant.
-------------------------------------------------------------------X

     1.    I am counsel for Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff").  I submit this declaration in support of Plaintiff's Opposition to Defendant Songs of Universal, Inc.'s ("Defendant") Motion to Dismiss the Amended Complaint. This declaration is based on my personal knowledge of the events and matters discussed herein.

     2.    Attached as **Exhibit 1** is a true, correct and complete copy of a Settlement Agreement between Plaintiff and non-party UMG Recordings, Inc. ("UMG"), which has been redacted. An unredacted copy of the Settlement Agreement is being filed with Plaintiff's separately-filed Letter Motion to Seal.

     I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON NOVEMBER 26, 2024 AT NEW YORK, NEW YORK.

                              _____/s/ Hillel I. Parness_____
                              Hillel I. Parness

DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE9199B06

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made as of this 1st day of July, 2022 (the "Effective Date") by and between TufAmerica, Inc. (collectively, the "Claimant"), at 444 West 50th Street, New York, NY 10019, on the one hand, and UMG Recordings, Inc. ("UMG"), at 2220 Colorado Avenue, Santa Monica, CA 90404, on the other hand (UMG and Claimant individually, a "Party," and together, the "Parties,") and each of their subsidiaries, affiliates, and assigns, with respect to the following:

WHEREAS, on July 20, 1992 (the "Release Date"), Uptown Records and MCA Records, Inc. (predecessor-in-interest to UMG) ("Uptown/MCA") released the Mary J. Blige ("UMG Artist") album entitled "What's The 411?" (the "Album"), which Album embodied the master recording entitled "Real Love" which includes a portion of the Sampled Master (the "UMG Master").

WHEREAS, On March 9, 2021 (the "Notification Date"), Claimant contacted UMG, asserting that UMG had been exploiting the UMG Master, embodying a sample of the sound recording entitled "Impeach The President" (the "Sampled Master") by the recording artist professionally known as "The Honey Drippers" ("Sampled Artist"), without a proper sample license agreement (the "Dispute"), and demanded, among other things, that UMG render to Claimant a full accounting with corresponding royalty payments for a period covering three (3) years prior to the Notification Date.

WHEREAS, on January 1, 2021, UMG advised and confirmed to the Claimant that the total worldwide royalties that would have been paid to Claimant from July 1, 2017 through June 30, 2021 (the "Focused Period"), based on the market value royalty rates set forth hereunder, would have amounted to approximately ███████████ (the "Unpaid Royalties");

WHEREAS, so as to avoid the risk, expense and inconvenience of litigation, and without any admission of fact, circumstance, wrongdoing, or liability whatsoever, the Parties now desire to compromise, settle, and fully resolve any and all disputes that exist between them concerning the Dispute or matters arising out of the Dispute in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE,** for and in consideration of the respective representations, covenants, agreements, warranties, payment, promises, releases and conditions herein contained and other good and valuable consideration, the receipt, legal adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:



1

DocuSign Envelope ID: 60255512-9B25-48B9-A78F-9A4AE9199B66

DocuSign Envelope ID: 86255512-9D2S-49B9-A76F-9A4AE9199B06



DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE9199B06



DocuSign Envelope ID: 882553129B25-49B9-A10F-9AAAE9199B60



DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE9199B06



DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE5199B06

To The Claimant:

TufAmerica, Inc.
444 West 50th Street,
New York, NY 10019
Attn: Aaron Fuchs, President

To UMG:

UMG Recordings, Inc.
2220 Colorado Avenue
Santa Monica, CA 90404
Attn: EVP, Legal & Business Affairs

**IN WITNESS WHEREOF,** the Parties hereto have executed this Settlement Agreement as of the day and year first above written.

**UMG RECORDINGS, INC.**

By: _____
       An Authorized Signatory

**TUFAMERICA, INC.**

By: _____
       An Authorized Signatory

Aaron Fuchs

7

DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE9189B06



8

**A165**

DocuSign Envelope ID: 862555512-9D25-49B9-A76F-9A4AE9199B06



DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE9199B06



10

DocuSign Envelope ID: 86255512-9D25-49B9-A76F-9A4AE9199B06



//
//
//
//
//
//
//

DocuSign Envelope ID: ...

TUFAMERICA, INC.

CAPITOL MUSIC GROUP, A DIVISION OF UMG
RECORDINGS, INC.

By: _____
      An Authorized Signatory

By: _____
      An Authorized Signatory

Aaron Fuchs

# PARNESS LAW FIRM, PLLC

November 26, 2024

136 Madison Avenue, 6th Floor • New York, New York  10016
Hillel I. Parness • www.hiplaw.com • hip@hiplaw.com
(Cell) 646-526-8261 • (Office) 212-447-5299 • (Fax) 212-202-6002

VIA ECF

United States District Judge Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:    TufAmerica, Inc. v. Universal Music Publishing, Inc., 24-cv-2585

Dear Judge Ho:

I represent Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff") in the above-referenced action.  Plaintiff writes to request leave to file a document, submitted in support of Plaintiff's Opposition to Defendant Songs of Universal, Inc.'s ("Defendant") Motion to Dismiss the Amended Complaint.

The document in question is the same July 1, 2022 Settlement Agreement (the "Settlement Agreement") between Plaintiff and non-party UMG Recordings, Inc.'s ("UMG") that is the subject of Defendant's and UMG's November 12, 2024 Letter Motion to Seal (ECF 50), except that whereas Defendant and UMG only provided the Court with one substantive page from the 12-page Settlement Agreement (ECF 52-1), Plaintiff is providing the Court with the full Settlement Agreement as **Exhibit 1** to the Declaration of Hillel I. Parness in Support of Plaintiff's Motion to Seal.  The portions of the Settlement Agreement that Plaintiff seek permission to redact are marked with blue highlighting, and a version of the Settlement Agreement so redacted has been filed publicly as **Exhibit 1** to the Declaration of Hillel I. Parness in Opposition to the Motion to Dismiss.  ECF 55-4.

Without agreeing with, and while reserving all rights to challenge Defendant's and UMG's description of the case and the legal issues in play therein (ECF 50 at 1-2), Plaintiff agrees with their arguments in favor of sealing (ECF 50 at 2-4), namely:

1. The requested redactions are narrowly-tailored to include only what is necessary to support Plaintiff's positions, to the exclusion of commercially-sensitive business and financial information;
2. The requested redactions do not relate to the merits of Defendant's Motion to Dismiss, or to Plaintiff's Opposition to same;
3. The requested redactions do include commercially-sensitive business and financial information that is important for the parties to the Settlement Agreement to keep from public disclosure; and
4. The public interest in the requested redactions is limited, compared with the strong need for the parties to the Settlement Agreement to protect their

**United States District Judge Dale E. Ho**    |    **November 26, 2024**

commercially-sensitive business and financial information.

In their letter motion, Defendant and UMG represented that the <u>unredacted</u> portions of the Settlement Agreement (on page 1) were necessary to support their argument that UMG "disclaimed any admission of liability or wrongdoing to controvert Plaintiff's description of the agreement."  ECF 50 at 2.

Similarly, the additional unredacted portions of the Settlement Agreement proposed by Plaintiff (on pages 3, 8 and 10) are necessary to support Plaintiff's arguments that, notwithstanding the fact that Plaintiff and UMG agreed that neither was making an "admission of fact, circumstance, wrongdoing, or liability whatsoever," UMG also agreed to the following:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiff respectfully requests that the Court permit the requested redactions identified by blue highlighting in **Exhibit 1** to the Declaration of Hillel I. Parness in Support of Plaintiff's Motion to Seal.

Respectfully submitted,

Hillel I. Parness

cc:    Counsel of Record (via ECF)

**MEMO ENDORSED**

 **COWAN LIEBOWITZ & LATMAN**

Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Joelle A. Milov**
(212) 790-9247
jam@cll.com

November 12, 2024

**VIA ECF**

Hon. Dale E. Ho
United States District Court
Southern District of New York
40 Foley Square, Courtroom 905
New York, New York 10007

>        Re:    *TufAmerica, Inc. d/b/a Tuff City Records v. Songs of Universal, Inc.*,
>               24- cv-2585 (DEH): Defendant and Non-Party UMG Recordings, Inc.'s Letter
>               <u>Motion to Seal</u>

Dear Judge Ho:

We represent Defendant Songs of Universal, Inc. ("Defendant") in the above-referenced action. We also represent non-party UMG Recordings, Inc. ("UMG") in connection with this motion to seal. Defendant and UMG (collectively, "Sealing Movants") write to request leave to file one document, submitted in connection with Defendant's Motion to Dismiss ("Defendant's Motion to Dismiss"), in redacted form. Sealing Movants request permission to redact portions of a document that includes confidential, commercially sensitive information of UMG that is also subject to a confidentiality provision (collectively, the "Requested Redactions"). The Requested Redactions are identified by yellow highlighting in Exhibit A to the Declaration of Joelle A. Milov in Support of Defendant and Non-Party UMG's Motion to Seal. The Requested Redactions have been redacted from Exhibit J to the Declaration of Joelle A. Milov (ECF Dkt # 43-10) in Support of Defendant's Motion to Dismiss, filed concurrently with this Motion to Seal.

In its Amended Complaint, Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff") alleges that the composition "Real Love" contains an uncleared "sample" of a few "drum sounds" from its composition, "Impeach the President." Am. Compl., ECF Dkt # 36, ¶ 13. On this basis, Plaintiff alleges that "Real Love" infringes the musical composition of "Impeach the President." There exist two separate copyrights in music—one related to the composition of a work and the other to a sound recording—and the alleged infringement of a composition does not ineluctably follow from the infringement of a sound recording. *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019); *see, e.g., Newton v. Diamond*, 349 F.3d 591 (9th Cir. 2003). Nonetheless, Plaintiff insinuates that Defendant infringes the *composition* of "Impeach the President" because non-party UMG settled Plaintiff's claim of infringement based on "Real Love" having allegedly sampled the *sound recording* of "Impeach

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 12, 2024
Page 2

the President." *See* Am. Compl. ¶¶ 13-22. According to Plaintiff, Defendant's failure to compensate it for the alleged usage of an uncleared sample of "Impeach the President" in the composition of "Real Love" "is difficult to reconcile with the fact that Plaintiff reached an agreement with UMG [] [the "UMG Agreement"] with respect to the presence of the uncleared samples from 'Impeach the President' on the master sound recording of 'Real Love.'" *Id.* ¶¶ 21-22.

Although the UMG Agreement, which contains a confidentiality provision, was not attached to the Complaint, it was incorporated by reference and can be considered in conjunction with Defendant's Motion to Dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Sealing Movants seek to submit a redacted portion of the first page of the UMG Agreement, as well as a non-redacted signature page from the agreement, in connection with Defendant's Motion to Dismiss to show that Plaintiff was aware of its claim more than three years prior to filing the Complaint, as is relevant to Defendant's statute of limitations argument. Defendant also wishes to refer to that portion of the UMG Agreement in which UMG disclaimed any admission of liability or wrongdoing to controvert Plaintiff's description of the agreement.

The Requested Redactions comport with Second Circuit case law, which applies the three-step test described in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Under this test, the Court must determine: (1) whether the documents subject to a sealing request qualify as "judicial documents"; (2) the weight of the presumption of public access attaching to any judicial document; and (3) if any countervailing factors or higher values outweigh the right of public access to any judicial documents. *Id.* at 119–20. This Court has "considerable discretion in determining whether good cause exists to overcome the presumption of open access" to documents filed on its docket. *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000).

First, the request is consistent with the Second Circuit's recognition that the right of public access to judicial documents is not absolute, and that the "court must balance competing considerations" and seal documents or information where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *See Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). The Requested Redactions are "narrowly tailored" because they only redact confidential, commercially sensitive, and previously non-disclosed business and commercial information that should be protected from disclosure. *See Vinci Brands LLC v. Coach Servs.*, No. 23-cv-5138, 2023 WL 6289969, at *2 (S.D.N.Y. Sept. 27, 2023) ("[W]here the parties seek to redact financial information such as licensing fees and [a] loan amount, production timelines and information about manufacturers, suppliers or distributors, the proposed redactions are narrowly tailored to protect against competitive harm, which outweighs the presumption of access accorded to these filings.").

Second, the Requested Redactions relate to information that is irrelevant to the merits of Defendant's Motion to Dismiss. Defendant seeks to submit a portion of the UMG Agreement for the sole purposes of showing that Plaintiff had long been aware of this matter and that UMG disclaimed liability in the agreement; any specific settlement term is not relevant to the grounds

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 12, 2024
Page 3

on which Defendant moves to dismiss.  "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of access] is low and amounts to little more than a prediction of public access absent a countervailing reason." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).  Under these circumstances, sealing by redaction is appropriate.  *See Monk v. Goldman Sachs & Co. LLC*, No. 22-CV-6056 (JMF), 2023 WL 22618, at *7 (S.D.N.Y. Jan. 3, 2023) ("[T]he Court concludes that the settlement amount may be redacted from the Settlement Agreement.  The settlement amount had no relevance to the Goldman Defendants' motion to compel arbitration, and the law favors confidentiality of such information to incentivize the resolution of disputes."); *Rubik's Brand Ltd. v. Glambeau, Inc.*, No. 17-cv-6559, 2021 WL 1085338, at *2 (S.D.N.Y. Mar. 22, 2021) (agreeing to seal preliminary report that was "only marginally relevant to the claims asserted in this case").  The Requested Redactions involve a contract resolving a dispute about a *sound recording* copyright that is not at in this dispute regarding a copyright in the *musical composition* of a work and therefore provides no specific benefit to the public.  If this Court grants the request to redact, the public will still have ample information available to it to understand the underlying dispute.  *See Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 311 F. Supp. 3d 653, 666 (S.D.N.Y. 2018) (permitting proposed redactions where a "member of the public reviewing the parties' redacted submissions . . . would have information sufficient to understand the parties' arguments and the Court's adjudication").

Third, there is a strong countervailing interest in maintaining the confidentiality of competitively sensitive business information.  The Requested Redactions include sensitive and confidential commercial information, including sales information, the disclosure of which would cause competitive harm to non-party UMG in the music industry because it could affect UMG in negotiating future settlements or licensing agreements.  *See, e.g.*, *Rubik's Brand*, 2021 WL 1085338, at *1  (agreeing that disclosure of trademark licensing agreement "could harm [plaintiff] and/or its business partners by disadvantaging them in negotiating future licensing agreements.").  Courts in this District routinely seal documents related to royalty and sales figures.  *See, e.g.*, *Red Hawk, LLC v. Colorforms Brand LLC*, 2024 WL 1075282, at *1-2 (S.D.N.Y. Feb. 9, 2024) (granting motion to seal when parties requested redactions, included "confidential royalty rates between [defendant] and a third party, . . . financial terms of a contract between [defendant] and a third party, and confidential sales information.").  The competitive disadvantages that would flow to UMG if such information were disclosed outweigh the general public interest in disclosure.  *See Lugosch*, 435 F.3d at 120.  Moreover, the Requested Redactions are narrowly tailored just to avoid competitive harm.  *See, e.g.*, *Rubik's Brand*, 2021 WL 1085338, at *2  (agreeing that disclosure of testimony related to "projected sales, net sales, and revenue figures for the relevant time period . . . cover material that, if disclosed, would competitively harm Flambeau[, because] . . . a competitor could use information concerning sales figures to upend the puzzle cube market and disrupt the Quick Cube's business model.  Further, the Court also finds that the proposed redactions are narrowly tailored to avoid that potential harm.").

**Cowan, Liebowitz & Latman, P.C.**
Hon. Dale E. Ho
November 12, 2024
Page 4

Fourth, the public interest in the details that Defendant seeks to redact is limited compared to the interest of private parties, including the legitimate privacy interest of non-party UMG. Indeed, the Second Circuit has held that "'the privacy interest of innocent third parties . . . should weigh heavily in a court's balancing equation.'" *Amodeo*, 71 F.3d at 1050 (citation omitted). For example, when parties in *Red Hawk, LLC v. Colorforms Brand LLC* requested that the court allow them to redact information related to "confidential royalty rates between [defendant] and a third party, . . . financial terms of a contract between [defendant] and a third party, and confidential sales information", the court found that "as nonparties to this litigation, [defendant]'s contractual counterparties—including licensees and licensors—have a legitimate privacy interest that 'should weigh heavily in a court's balancing equation'" 2024 WL 551543, at *1-2 (quoting *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79-90 (2d Cir. 1990)). The Court should similarly find here that UMG's privacy interest in its confidential contractual terms, which includes confidential royalty information, should weigh heavily in the court's balancing analysis.

For these reasons, Sealing Movants respectfully requests that the Court permit the Requested Redactions identified by highlighting in Exhibit A to the Declaration of Joelle A. Milov in Support of Defendant and UMG's Motion to Seal. We thank the Court for its attention to this matter.

The Court is in receipt of the endorsed sealing request. Defendant's application is GRANTED. The document in question, ECF No. 52-1, is a "judicial document" in that it is relevant to this Court's performance of its judicial function. *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). Thus, there's a "strong presumption" of public access to it, and the Court may not order it sealed without making a "specific, on-the-record finding that sealing is necessary to preserve higher values" and issuing a "narrowly tailored" sealing order. *Id.*

Here, the Court finds that sealing, in the form of a partial redaction, is necessary to preserve higher values. The information that Defendant seeks to have redacted relates to the terms of a settlement agreement between Plaintiff and a commercial non-party. It is well-established that sensitive commercial information is not afforded a presumption of public access. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). It is also common in this district for courts to order sealing or redaction of documents in the name of a third party's personal privacy interests. *See Under Seal v. Under Seal*, 273 F. Supp.3d 460, 467 (S.D.N.Y. 2017).

Defendant seeks to use the document as a whole to support its motion to dismiss, but the specific information to be redacted (i.e., the settlement terms and amount) has no bearing on the merits of Defendant's motion. Absent such relevance, the Court finds that partial sealing (i.e., redacting this information) is appropriate. *Cf. United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (finding low presumption of public access to documents and testimony that "play only a negligible role in the [Court's] performance of [its] Article III duties.").

Moreover, the Court also finds that the request is sufficiently narrowly tailored insofar as it redacts only financial information that is confidential and commercially sensitive. *Cf. Johnson v. Esports Entertainment Group, Inc.*, No. 22 Civ. 10861, 2023 WL 6035668, at *2 (S.D.N.Y. Sept. 14, 2023) ("The Court finds that the redactions are narrowly tailored as they do not redact non-financial terms that are relevant to this action.").

For the reasons outlined above, Defendant's application is GRANTED. Defendant shall file a redacted version of the document on the public docket. SO ORDERED. The Clerk of Court is directed to terminate ECF No. 50.

Dated: November 26, 2024                     Dale E. Ho
New York, New York                           United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                                         :

              Plaintiff,           :     Case No. 1:24-cv-2585-DEH

           v.                        :     **ORAL ARGUMENT REQUESTED**

SONGS OF UNIVERSAL, INC.,                :

            Defendant.          :

----------------------------------------------------------------x

 

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

I.    Plaintiff Concedes Most of Defendant's Arguments ............................................. 1

II.   The Works Are Not Substantially Similar ............................................................. 4

III.  The UMG Agreement is Irrelevant ........................................................................ 6

   A.  Musical Compositions and Sound Recordings Are Two Different Copyrights ................ 7

   B.  Plaintiff's Invocation of the UMG Agreement to Prove Liability Violates Fed. R. Evid.
       408 ................................................................................................................ 8

IV.   The Complaint Should Be Dismissed with Prejudice Because any Amendment Would Be
      Futile ............................................................................................................... 10

CONCLUSION ................................................................................................................. 10

29988/008/4776325

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
    150 F.3d 132 (2d Cir. 1998) ............................................................... 3

*Chun Lan Guan v. Long Island Bus. Instute, Inc.*,
    No. 15-cv-2215, 2017 WL 11703860 (E.D.N.Y. Sept. 30, 2017) ............................................ 1

*Collister Alley Music v. Warner Bros. Records*,
    No. 96-cv-1762, 1997 WL 198081 (S.D.N.Y. Apr. 21, 1997) ................................................. 10

*Exclusive Auto Collision Ctr. v. Geico Ins. Co.*,
    No. 17-cv-13166, 2018 WL 5033753 (D.N.J. Oct. 16, 2018) ................................................. 2

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ....................................................................... 4

*Goodman v. Port Auth. of N.Y. & N.J.*,
    850 F. Supp. 2d 363 (S.D.N.Y. 2012) ......................................................... 2

*Greene v. Warner Music Grp.*,
    No. 23-cv-1555, 2024 WL 3045966 (S.D.N.Y. June 18, 2024) ................................................ 4

*Guity v. Uniondale Union Free Sch. Dist.*,
    No. 15-cv-5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) ................................................ 2

*Hines v. Roc-A-Fella Records, LLC*,
    No. 19-cv-4587, 2020 WL 188832 (S.D.N.Y. Apr. 16, 2020) ................................................. 4

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
    327 F. Supp. 3d 606 (S.D.N.Y. 2018) ......................................................... 9

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ............................................................. 9

*Logfret, Inc. v. Gerber Fin., Inc.*,
    559 F. Supp. 3d 348 (S.D.N.Y. 2021) ......................................................... 6

*Matthews v. City of N.Y.*,
    No. 23-cv-3959, 2024 WL 4135483 (S.D.N.Y. Sep. 10, 2024) ................................................ 10

*Neu Prods. Inc. v. Outside Interactive, Inc.*,
    No. 23-cv-4125, 2024 WL 2992351 (S.D.N.Y. June 13, 2024) ................................................ 3

*Newton v. Diamond*,
    204 F. Supp. 2d 1244 (C.D. Cal. 2002) ....................................................... 7

29988/008/4776325

*Newton v. Diamond*,
  349 F.3d 591 (9th Cir. 2004) ................................................................7

*Perry v. Mary Ann Liebert, Inc.*,
  No. 17-cv-5600, 2018 WL 256129 (S.D.N.Y. June 4, 2018) ...................5

*Pickett v. Migos Touring, Inc.*,
  420 F. Supp. 3d 197 (S.D.N.Y. 2019) ....................................................7

*Pyatt v. Raymond*,
  No. 10-cv-8764, 2011 WL 2078531 (S.D.N.Y. May 19, 2011) .................4

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
  568 F.3d 345 (2d Cir. 2009) ..................................................................8

*Richards v. Warner Music Grp.*,
  No. 22-cv-6200, 2024 WL 4307994 (S.D.N.Y. Sep. 25, 2024) ...............2

*Rumble Mgmt. v. Profile Records, Inc.*,
  No. 95-cv-0246, 1997 WL 158364 (S.D.N.Y. Apr. 2, 1997) ...................4

*Structured Asset Sales, LLC v. Sheeran*,
  124 F.4th 1066 (2d Cir. 2024) ............................................................6, 8

*TechnoMarine SA v. Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014) ................................................................10

*TufAmerica, Inc. v. Diamond*,
  968 F. Supp. 2d 588 ..............................................................................8

*TufAmerica, Inc. v. WB Music Corp.*,
  67 F. Supp. 3d 590 (S.D.N.Y. 2014) .....................................................6

*United States v. Am. Soc'y of Composers*,
  No. 13-cv-95, 1989 WL 222654 (S.D.N.Y. Oct. 12, 1989) ...................10

*Williams v. Broadus*,
  No. 99-cv-10957, 2001 WL 984714 (S.D.N.Y. Aug. 27, 2001) ...............3

**Statutes**

17 U.S.C. § 507 ..............................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12 ...........................................................................................9

Fed. R. Evid. 408 ....................................................................................7, 8, 9

2 Weinstein's Federal Evidence § 408.02 .......................................................8

2 Weinstein's Federal Evidence § 408.04 .....................................................10

29988/008/4776325

**PRELIMINARY STATEMENT**[1]

Plaintiff's Opposition fails to respond to most of the arguments in Defendant's Moving Brief.  Of the 11 pages of substantive argument in the Opposition, Plaintiff fills two and a half of those pages with regurgitated block quotations from an expert that attempts to cure fatal pleading errors in the Amended Complaint, three pages dedicated to an argument about the scope of protection of a deposit copy that is not implicated in Plaintiff's Moving Brief, and more than two pages dedicated to an agreement Plaintiff signed with a non-party about a copyright not at issue in the current Action.

Unaddressed, and therefore conceded, in Plaintiff's Opposition is the fact that Plaintiff's Amended Complaint failed to plead that any elements that Defendant allegedly appropriated were original.  Plaintiff attempts to ameliorate its Amended Complaint by submitting an expert declaration in connection with its Opposition, but Second Circuit precedent makes clear that a party cannot amend its pleading through papers submitted in connection with its opposition to a motion to dismiss.  Further, and most striking, is the Opposition's failure to address the fact that no ordinary observer would recognize any perceptible similarities between "Impeach the President" and "Real Love" in terms of drum rhythms or any other musical element.  This concession requires immediate dismissal with prejudice of the Amended Complaint.

**ARGUMENT**

**I.    Plaintiff Concedes Most of Defendant's Arguments**

Where a plaintiff fails to respond to arguments in a motion to dismiss, it is deemed to have "waived whatever claim [it] might have had."  *See Chun Lan Guan v. Long Island Bus.*

---

[1] Defined terms in this brief have the same meaning assigned to them in Defendant's Moving Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint ("Moving Br.").

*Instute, Inc.*, No. 15-cv-2215, 2017 WL 11703860, at * 6 (E.D.N.Y. Sept. 30, 2017) (citing

cases); *Richards v. Warner Music Grp.*, No. 22-cv-6200, 2024 WL 4307994, at *4 (S.D.N.Y.

Sep. 25, 2024) (Ho, J.) (citation and internal quotation marks omitted) ("Numerous courts in this

District have held that a party's failure to address an issue in its response to a Rule 12(b)(6)

motion amounts to a concession or waiver of the argument."). Here, Plaintiff concedes multiple

grounds for dismissal.

  First, Plaintiff tacitly concedes that the Amended Complaint failed to plead that the

compositional elements it claims "Impeach the President" and "Real Love" share are original.

Moving Br. at 10-11. Recognizing this failure, Plaintiff attempts to cure its complaint by

submitting the declaration of Evan Lustig, Ph.D. (the "Lustig Decl.", ECF # 55-1). The Lustig

Declaration feebly endeavors to shore up Plaintiff's pleading deficits by claiming that off-beat hi

hats are "a distinctive feature that is quite uncommon in hip-hop records, and would have been

even more novel in soul/funk records circa 1973, when 'Impeach the President' was released."

Opp. Br. at 7 (quoting Lustig Decl. ¶ 8). But it is entirely improper to attempt to cure a defective

pleading by submitting new materials in opposing a motion to dismiss. *See, e.g.*, *Guity v.*

*Uniondale Union Free Sch. Dist.*, No. 15-cv-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31,

2017); *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012)

(citation omitted) ("memoranda and supporting affidavits in opposition to a motion to dismiss

cannot be used to cure a defective complaint"); *Exclusive Auto Collision Ctr. v. Geico Ins. Co.*,

No. 17-cv-13166, 2018 WL 5033753, at *2 (D.N.J. Oct. 16, 2018) (rejecting exhibits filed in

opposition to a motion to dismiss, because "a party cannot amend its complaint through its

opposition brief"). Moreover, the allegation in the Lustig Declaration does not fully articulate

the distinctiveness of off-beat hi-hats and is silent as to the other undefined set of "drum beats"

that are part of Plaintiff's claim.

Second, the Plaintiff concedes that the Court should use the ordinary observer test to assess substantial similarity and not the fragmented literal similarity test that is sometimes used when a defendant has sampled plaintiff's work. As Defendant argued in its Moving Brief, the fragmented literal similarity test should not be used because "Real Love" does not copy "Impeach the President "note for note" or by "direct quotation[] or close paraphrasing" of any musical elements. *Williams v. Broadus*, No. 99-cv-10957, 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998); Moving Br. at 13-16. Indeed, Plaintiff is silent in the face of Defendant's contention in its Moving Brief that *if sampling occurred, the amount sampled of "Impeach the President" in "Top Billin'" amounts to less than 1 second of the composition or 0.418% or 0.417% of the entire "Impeach the President" track*. *See* Moving Br. at 15. That silence is damning given the emphasis in Plaintiff's original and Amended Complaints on allegations of sampling.

Third, Plaintiff concedes that its second and third causes of action are remedies and not causes of action. Plaintiff fails to cite even one case where a court found that a Plaintiff could maintain such remedies as causes of action alongside a separate infringement claim. Nor is Plaintiff able to justify its bizarre claim for declaratory relief that it owns the rights to the musical composition "Impeach the President" and that Defendant has infringed Plaintiff's right to create derivative works. *See* Am. Compl ¶¶ 43, 48. A request for a declaration that Plaintiff owns a copyright is not a cognizable claim under the Copyright Act. *See Neu Prods. Inc. v. Outside Interactive, Inc.*, No. 23-cv-4125, 2024 WL 2992351, at *3 (S.D.N.Y. June 13, 2024). Should the case proceed past the pleadings stage, Plaintiff will, of course, be required to prove ownership of its copyright, but that is an affirmative showing it must make as part of its claim for

3

relief; not a separate cause of action. [2]  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).  With no explanation, Defendant is left to assume that the second cause of action is, in fact, an ownership claim.  A court in this district made a similar deduction when faced with a claim by a plaintiff seeking a declaration that it owned the work and that defendant's work was an unauthorized derivative work.  *See Greene v. Warner Music Grp.*, No. 23-cv-1555, 2024 WL 3045966, at *13 (S.D.N.Y. June 18, 2024).  Any ownership claim in this case is definitively time barred.  Moving Br. at 19-20.  Plaintiff presents no defense as to why it had not brought this Action more than thirty years after the commercially successful release of "Real Love."

## II.    <u>The Works Are Not Substantially Similar</u>

Plaintiff's Opposition fails to grapple with what is readily apparent to any lay listener: "Impeach the President" and "Real Love" sound nothing alike.  Given that the Court may assess the works' substantial similarity by listening to the songs, Plaintiff's failure to even put forth any contrary characterization is surprising.  *See, e.g.*, *Pyatt v. Raymond*, No. 10-cv-8764, 2011 WL 2078531, at *4 (S.D.N.Y. May 19, 2011).

With no plausible argument that the works bear an aural similarity to one another, Plaintiff attempts to revive its deficient Amended Complaint by supplementing it with the Lustig Declaration.  But even if the Lustig Declaration could be properly considered in opposition to a motion to dismiss, Plaintiff still fails to articulate precisely "which aspects of the [offending work] allegedly infringed Plaintiff's [work]."  *Hines v. Roc-A-Fella Records, LLC*, No. 19-cv-

---

[2] For purposes of this motion alone, Defendant accepted that Plaintiff pleaded ownership of a copyright.  Should this case proceed, Plaintiff will, of course, need to establish its ownership of a valid copyright—a burden a court in this district found Plaintiff was unable to sustain more than 25 years ago.  *See Tuff 'N' Rumble Mgmt. v. Profile Records, Inc.*, No. 95-cv-0246, 1997 WL 158364, at *2-3 (S.D.N.Y. Apr. 2, 1997) (holding that plaintiff failed to prove it owned a valid copyright in "Impeach the President").

4

4587, 2020 WL 188832, at *34 (S.D.N.Y. Apr. 16, 2020) (citation and internal quotation marks

omitted).  Plaintiff's original complaint did not specifically identify any portion of Plaintiff's

work that Defendant infringed, relying only on an allegation that "the 'Real Love' musical

composition contain[s] an uncleared sample from 'Impeach the President'".  Compl., ECF # 1,

¶ 11.  Plaintiff's Amended Complaint fares no better when it alleged that "Real Love" used

unidentified "drum sounds" from "Impeach the President" that Plaintiff highlighted with

scrawled circles and squares over drum beats.  Am. Compl. ¶ 20.  In Plaintiff's Opposition, there

is a further shift in Plaintiff's articulation of the work it claims Defendant infringed.

Specifically, despite his hand drawn notations, Dr. Lustig makes no actual verbal mention of

snare or kick drum rhythms and only specifically mentions the similarities of off-beat high hats

between "Impeach the President" and "Top Billin'", not "Real Love".  Plaintiff's consistent

failure to articulate which original elements it alleges Defendant infringes is a telling admission

that requires immediate dismissal.  *See Perry v. Mary Ann Liebert, Inc.*, No. 17-cv-5600, 2018

WL 256129, at *5 (S.D.N.Y. June 4, 2018), *aff'd*, 765 Fed. Appx. 470 (2d Cir. 2019).

      Further, the Lustig Declaration does not serve as a panacea to the Amended Complaint's

infirmities.  First, Defendant's Moving Brief noted that the Amended Complaint drew circles and

boxes around elements that were not similar in order to make the works appear more alike.

Moving Br. at 9-10.  Plaintiff Opposition concedes that it circled as similar elements open hi-hats

in "Impeach the President" and closed hi-hats in "Real Love" even though they are different, but

Dr. Lustig impliedly claims he was justified in doing so because he is a "drummer [himself] in

multiple studio albums, [and] can confirm that open vs. closed hi-hats are entirely

interchangeable."[3]  Lustig Decl. ¶ 10.  Dr. Lustig's attempts to rehabilitate the Amended

Complaint are improper, and even if the allegation were to be considered, it does nothing to

explain why the hi-hat rhythms here should be treated as similar when they plainly are not.  *See*

*Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021) (citation and

quotation marks omitted) ("New facts and allegations, first raised in a Plaintiff's opposition

papers, may not be considered in deciding a motion to dismiss."); *TufAmerica, Inc. v. WB Music*

*Corp.*, 67 F. Supp. 3d 590, 596 (S.DN.Y. 2014) ("[T]he Court notes that it evaluates qualitative

significance by reference to the allegedly infringed work not to plaintiff's descriptions of that

work.").  *Cf. Structured Asset Sales, LLC v. Sheeran*, 124 F.4th 1066, 1072-73 (2d Cir. 2024)

(affirming exclusion of expert who "inferred [a] bass line" in a deposit copy, "[e]mphasiz[ing]

that 'copyright law protects only that which is literally expressed, not that which might be

inferred or possibly derived from what is expressed.'").

Second Plaintiff and Dr. Lustig illustrate similarities between "Impeach the President"

and "Top Billin'" without any comparative analysis to "Real Love".  Lustig Decl. ¶¶ 6-9; Am.

Compl. ¶ 17.  This Action concerns "Real Love," not "Top Billin'", and any similarities between

"Impeach the President" and "Top Billin'" that are not found in "Real Love" are irrelevant.

Similarly, it is irrelevant that the drums in "Top Billin'" can be heard in "Real Love" if musical

elements of "Impeach the President" are not heard in "Real Love."  *See* Lustig Decl. ¶¶ 11-12.

## III.    The UMG Agreement is Irrelevant

With no sufficient allegation of substantial similarity, Plaintiff persists in invoking the

UMG Agreement.  As explained in Defendant's Moving Brief, the UMG Agreement is irrelevant

---

[3] Plaintiff is silent as to other elements it treated as similar such as treating two hi-hats as similar when the one in "Impeach the President" is combined with a snare and the one in "Real Love" is combined with a kick drum.

in that it relates to a non-party and a different copyright and because a settlement agreement does not constitute an admission or a finding of liability.  In Opposition, Plaintiff unresponsively discusses the scope of protection in a deposit copy and violates Fed. R. Evid. 408 in attempting to prove liability through the submission of a settlement agreement.

    A.    <u>Musical Compositions and Sound Recordings Are Two Different Copyrights</u>

      Despite Plaintiff's attempts to elide the differences between musical compositions and sound recordings, the Copyright Act recognizes separate copyrights in each.  *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019); *see also Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002) (citing 17 U.S.C. § 102(a)(2), (7)) ("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights. . . .  the rights of a copyright in a sound recording do not extend to the song itself, and *vice versa*."), *aff'd*, 349 F.3d 591 (9th Cir. 2004).  For example, in *Newton v. Diamond*, a court found that even though The Beastie Boys licensed "a six-second, three-note segment" of Plaintiff's *sound recording*, it did not infringe the underlying *musical composition* because the note sequence was unprotectable.  *Newton*, 349 F.3d 591.  The Ninth Circuit affirmed, finding that even if the sequence were protectable, the use of the three-note segment was *de minimis* and was insufficient to establish liability under the Copyright Act.  *Id.*

      Rather than substantively respond to *Newton*, Plaintiff spends more than 25% of its substantive argument and over 30% of its case law citations dedicated to the scope of protection afforded to deposit copies.  Opp. Br. 8-11.  That discussion is utterly non-responsive to Defendant's argument.  Whether the Copyright Compendium permits a party to submit a sound recording as a deposit copy to the Copyright Office for its composition is immaterial to the question of whether the portions of "Impeach the President" Plaintiff claims Defendant

29988/008/4776325

appropriated are original.  To the extent Plaintiff argues that all portions of a registered work are

deemed original, it is incorrect.  Indeed, Plaintiff's citation of *Structured Asset Sales, LLC v.*

*Sheeran* proves Defendant's point: the Second Circuit affirmed the district court's finding that

"the selection and arrangement of two musical elements—*Let's Get It On*'s chord progression

and syncopated rhythm—[were not] original enough to warrant copyright protection," despite the

work as a whole being registered.  120 F.4th at 1079.  Plaintiff should be aware that a

registration for a musical composition as a whole does not mean that all individual elements are

protectable, given that it has been unsuccessful in another copyright litigation in this district on

this precise point.  *See TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 593, 604 (granting

motion to dismiss claim that The Beastie Boys infringed through the use of the first *Drop the*

*Bomb* sample because such sequence was unoriginal, despite plaintiff's work, *Drop the Bomb*,

from which the sample derived, being registered).

        B.      <u>Plaintiff's Invocation of the UMG Agreement to Prove Liability Violates Fed. R.</u>
<u>Evid. 408</u>

      Under Fed. R. Evid. 408, a party may not use a settlement agreement "to prove or

disprove the validity or amount of a disputed claim."  Fed. R. Evid. 408(a).  This rule

"essentially forbids a court from basing adverse findings on a party's concessions in settlement

negotiations."  *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351 (2d Cir.

2009).  "The Rule is based on the policy of promoting the compromise and settlement of

disputes."  2 Weinstein's Federal Evidence § 408.02.

      A party may, however, submit a statement made during settlement negotiations if it uses

it for a purpose other than to establish liability.  Fed. R. Evid. 408(b).  Accordingly, Defendant

offered a portion of the settlement agreement to show that UMG had disclaimed any liability and

that Plaintiff had long been aware of its claim of possible infringement, and therefore any

recoverable damages would need to have been limited to the last three years, pursuant to 17

U.S.C. § 507, a concession Defendant had not admitted in its original or Amended Complaints

and only now acknowledges in its Opposition. Opp. at 14. Such use of a portion of the

settlement agreement was permissible under the Federal Rules, and, as this Court recently

recognized, "the specific [settlement terms and amount] . . . has no bearing on the merits of

Defendant's motion." *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d

606, 628 (S.D.N.Y. 2018) (noting that Plaintiff could offer settlement agreement to show, *inter*

*alia*, "that Defendants were on notice of possible infringement"); Order, ECF Dkt # 59.

What Plaintiff seeks to do in its Amended Complaint and in its Opposition is to use the

UMG Agreement to state that UMG admitted to sampling "Impeach the President" sound

recording in the "Real Love" sound recording and that liability for such sampling formed the

basis of the settlement between the parties. Am. Compl ¶ 22; Opp. Br. at 11-13. Given that

Plaintiff is using the UMG Agreement to prove liability, this is a direct violation of Rule 408.

*Cf. Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992) (under Fed. R. Civ. P. 12(f) striking

from plaintiff's complaint references to settlement discussions because they violate Fed. R. Evid.

408).[4]

Worse yet, Plaintiff seeks to introduce the UMG Agreement to impute liability for

alleged infringement of the "Impeach the President" *musical composition* to Defendant, who is

not a signatory of the UMG Agreement. This, too, is impermissible, given the irrelevance of the

agreement at issue and the highly prejudicial nature of how Plaintiff seeks to use the agreement,

as "Rule 408 may bar introduction of settlement discussions, or agreements, even if the

---

[4] Should the Amended Complaint survive this motion, Defendant requests that Paragraph 22 of
the Amended Complaint be struck pursuant to Fed. R. Civ. P. 12(f).

settlement involved another case and a different party." *United States v. Am. Soc'y of Composers*, No. 13-cv-95, 1989 WL 222654, at *8 (S.D.N.Y. Oct. 12, 1989), *aff'd sub nom on other grounds*, *Am. Soc'y of Composers v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563 (2d Cir. 1990); *see Collister Alley Music v. Warner Bros. Records*, No. 96-cv-1762, 1997 WL 198081, at *1 (S.D.N.Y. Apr. 21, 1997) ("However, Rule 408 of the Federal Rules of Evidence clearly provides that the settlement agreement itself is not proof that the infringement alleged in [separate case] did in fact occur. In other words, the settlement in [separate case] simply does not prove, and by virtue of Rule 408 is not relevant to, the strength of the claims asserted in that matter."); *see also* 2 Weinstein's Federal Evidence § 408.04 ("Evidence of a completed compromise of a claim arising out of the same transaction between a third person and a party to the suit being litigated is also inadmissible."). The UMG Agreement is not relevant to the merits of the Amended Complaint.

## IV.   The Complaint Should Be Dismissed with Prejudice Because any Amendment Would Be Futile

Plaintiff filed this complaint nearly eight months ago, after knowing about the alleged dispute for years. That Plaintiff has been unable to sufficiently articulate a claim even after amending its complaint is indicative of the fact that any further leave to amend would be futile. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *Matthews v. City of N.Y.*, No. 23-cv-3959, 2024 WL 4135483, at *9 (S.D.N.Y. Sep. 10, 2024) (Ho, J.).

## CONCLUSION

For the aforementioned reasons, the Court should grant Defendant's motion to dismiss Plaintiff's Amended Complaint with prejudice.

29988/008/4776325

Dated: December 3, 2024

<div style="margin-left:40%">

COWAN, LIEBOWITZ & LATMAN, P.C.


_____
Richard S. Mandel (rsm@cll.com)
Joelle A. Milov (jam@cll.com)
114 West 47th Street
New York, NY 10036-1525
212.790.9200 (Telephone)
212.575.0671 (Facsimile)

*Attorneys for Defendant Songs of Universal, Inc.*

</div>

29988/008/4776325

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

┌─────────────────────────────────────┐

TufAmerica, Inc.,

                Plaintiff,

         v.

Songs of Universal, Inc.,

                Defendant.

└─────────────────────────────────────┘

24-CV-2585 (DEH)

ORDER

DALE E. HO, United States District Judge:

Currently before the Court are three Motions to Seal.  ECF Nos. 29, 46, and 56.  One of these Motions, ECF No. 29, was submitted in connection with Defendant's Motion to Dismiss the Complaint, ECF No. 25.  The other two Motions, ECF Nos. 56 & 60, were submitted in connection with Defendant's Motion to Dismiss the Amended Complaint, ECF No. 46.

The Court has already granted a motion to seal that was, functionally, the same as the pending Motion to Seal at ECF No. 29.  Both ECF No. 29, which is currently pending, and ECF No. 50, which has been granted, concern the exact same document: the "Settlement Agreement and General Release" between Plaintiff and a non-party, UMG Recordings, Inc.  Defendant requests that the unredacted version of this agreement remain sealed because it contains "confidential, commercially sensitive information of [the non-party] that is also subject to a confidentially provision."  Letter Mot. at 1, ECF No. 29.  In the versions publicly available on the docket, which are filed at ECF Nos. 28-10 and 49-10, the terms of the settlement payment and the settlement amount are redacted.  For the reasons explained in this Court's November 27, 2024 Order, ECF No. 59, Defendant's Motion to Seal at ECF No. 29 is **GRANTED**.  ECF No. 31-1 shall remain sealed with access limited to the applicable parties.

The remaining Motions to Seal, ECF Nos. 56 & 60, also concern the settlement agreement between Plaintiff and UMG Recordings, Inc. However, these pending requests differ from the prior ones in a critical way: Whereas the motions to seal at ECF Nos. 29 & 50 concerned "one substantive page of the 12-page Settlement Agreement," the Motions to Seal at ECF Nos. 56 & 60 concern proposed redactions to the "<u>full</u> Settlement Agreement." Letter Mot. ("Pl.'s Sealing Mot.") at 1, ECF No. 56. Both parties agree that the full settlement agreement should not be filed in unredacted form on the public docket. But they disagree on how much of the agreement must be redacted to protect Plaintiff and UMG Recordings, Inc.'s confidential, commercially sensitive business information. Plaintiff's proposed redactions are confined to portions of the agreement itself. *See* ECF No. 57 (under seal). Defendant's proposed redactions, on the other hand, concern not only parts of the full agreement but also sections of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 55 and portions of Plaintiff's Letter Motion to Seal, ECF No. 56.

Before determining which of the proposals is most appropriate, the Court recites the familiar tripartite framework for determining whether a document should be sealed at all and, if so, in what form that sealing should take (that is, whether the document should be sealed in its entirety or available in partially redacted form). Under established Second Circuit caselaw, certain documents—so called "judicial documents"—are "subject at common law to a potent and fundamental presumptive right of public access." *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020).[1] A document is a judicial document if it "is one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 59. If a court determines that "the record at issue is a judicial document . . . to which the

---

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

presumption of public access attaches," it next "determine[s] the weight of the presumption of access to that document, which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts"—the public. *Id.* "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*

This Court has already found that the settlement agreement is a judicial document to which the presumption of public access attaches. *See* Order ("Sealing Order"), ECF No. 59. It has also already found that there is a "there[ is] a 'strong presumption' of public access to [the settlement agreement], and the Court may not order it sealed without making a 'specific, on-the-record finding that sealing is necessary to preserve higher values' and issuing a 'narrowly tailored' sealing order. *Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). Therefore, the sole question before the Court is whether either party's proposed redactions is sufficiently narrowly tailored to justify partial sealing and, if so, which proposal is most appropriate.

The main difference between the two proposals is that Defendant proposes redacting the terms of the licensing agreement incident to settlement and Plaintiff does not. Because the terms of the licensing agreement incident to settlement constitute substantive terms of the settlement agreement, the Court holds that they should not be made public. In other words, the settlement agreement should be redacted according to Defendant's proposal. As the Court has already noted:

> The information that Defendant seeks to have redacted relates to the terms of a settlement agreement between Plaintiff and a commercial non-party. It is well-established that sensitive commercial information is not afforded a presumption of public access. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). It is also common in this district for courts to order sealing or redaction of documents in the name of a third party's personal privacy interests. *See Under Seal v. Under Seal*, 273 F. Supp.3d 460, 467 (S.D.N.Y. 2017). Defendant seeks to use the document as a whole to support its motion to dismiss, but the specific information to be redacted (i.e., the settlement terms and amount) has no bearing on the merits of Defendant's motion. Absent such relevance, the Court finds that partial

sealing (i.e., redacting this information) is appropriate. *Cf. United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (finding low presumption of public access to documents and testimony that "play only a negligible role in the [Court's] performance of [its] Article III duties.").

Sealing Order. Defendant notes that "Plaintiff does not agree to all of the Requested Redactions, and it reserves the right to respond to [Plaintiff's] letter motion with its own submission." Letter Mot. ("Def.'s Sealing Request") at 2 n.2, ECF No. 60. But Plaintiff never filed any such opposition, and it is not clear to the Court why Plaintiff wishes for the terms of the confidential settlement agreement to appear on the public docket. Therefore, the settlement agreement shall be filed in redacted form in accordance with Defendant's proposal.

For the reasons explained above:

- The Motion to Seal at ECF No. 29 is GRANTED.

- The Motion to Seal at ECF No. 60 is GRANTED.

- The Motion to Seal at ECF No. 56 is DENIED AS MOOT.

ECF Nos. 31-1, 55, 56, 57, and 62 shall remain under seal with access limited to the applicable parties. **By May 1, 2025**, Plaintiff shall file three documents on the public docket, all of which shall be redacted in accordance with Defendant's proposals at ECF No. 62: (1) the full, twelve-page settlement agreement; (2) Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 55; and (3) Plaintiff's Letter Motion to Seal, ECF No. 56.

The Clerk of Court is respectfully directed to terminate ECF Nos. 29, 56, and 60.

SO ORDERED.

Dated: April 24, 2025
    New York, New York

                                DALE E. HO
                        United States District Judge



**Copyright** | Public Records System

Home / Search / Detailed Record View

Keyword ▾ | sr136339 | [Search] | **Advanced Search**

## Detailed Record View
Registration record SR0000136339

Copyright Catalog
Displaying 1 of 1 entries

### Impeach the President ; Roy C.'s theme song /The Honey Drippers.          Share ↗  | Actions ▾

| | |
|---|---|
| Registration Number / Date | SR0000136339 / 1991-11-25 |
| Type of Work | Sound Recording and Music |
| Title | Impeach the President ; Roy C.'s theme song /The Honey Drippers. |
| Variant Title | Impeach the President |
| Other Title | Roy C.'s theme song |
| Date of Creation | 1973 |
| Date of Publication | 1973-10-01 |
| Copyright Claimant | © ℗ Tuff City Records |
| Authorship on Application | composition, performance, recording: Roy C. Hammond, 1934- a.k.a. Roy C. |
| Description | 1 sound disc : |
| | 45 rpm ; |
| | 7 in. |
| Publisher Label Number | Alaga Records AL 1017 |
| Imprint | c1973. |
| Names | Hammond, Roy C, 1934- |
| | C, Roy |
| | Honey Drippers |
| | Tuff City Records |
| | Roy C. |
| | Alaga Records |

**Menu**
Home
Recent Records
Recent Searches
Name Directory
Help

**Resources**
Request a Copy Estimate
Request a Search Estimate
FAQs

**Contact**
Contact Us
Feedback

**Copyright**
U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000 or
1 (877) 476-0778 (toll-free)

**Disclaimer:** The Copyright Public Records System (CPRS) enables access to records maintained by the U.S. Copyright Office, including searchable indexing information provided by remitters and applicants who certify the information to be accurate. The Office does not verify the accuracy of this information. In addition, the information maintained in the CPRS has been indexed according to cataloging practices and classification systems that have changed over time. For these reasons, there may be gaps and inaccuracies in your search results.

For information on searching copyright records, see How to Investigate the Copyright Status of a Work (Circular 22). You can also request that the Copyright Office perform a search of its records. To request a Search Report, please contact the Records Research and Certification Division. For information on removing personal information from Copyright Office public records, refer to Privacy: Public Copyright Registration Records (Circular 18).

U.S. Copyright Office  |  Library of Congress  |  Congress.gov  |  USA.gov  |  FOIA  |  Legal  |  Privacy Policy



**A196**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TUFAMERICA, INC.,

                              Plaintiff,

            v.

UNIVERSAL MUSIC PUBLISHING, INC.,

                              Defendant.

---

24 Civ. 2585 (DEH)

**OPINION**
**AND ORDER**

DALE E. HO, United States District Judge:

        In 1973, The Honey Drippers recorded and released a song called "Impeach the President,"

which Plaintiff TufAmerica, Inc. ("TufAmerica") holds the copyright for.  In 1992, Mary J. Blige

released a song called "Real Love," the musical composition of which Defendant Universal Music

Publishing, Inc. ("Universal") published.  Now, more than three decades later, TufAmerica brings

this suit against Universal for copyright infringement, claiming "Real Love" exploited uncleared

samples and corresponding compositional elements from "Impeach the President."  TufAmerica

also seeks a declaratory judgment and injunctive relief.  Universal moves to dismiss pursuant to

Rule 12(b)(6).[1]  ECF No. 46.  For the reasons explained below, Universal's Motion to Dismiss is

**GRANTED**.

<div align="center">

**BACKGROUND**

</div>

        Unless otherwise specified, the following facts are taken from TufAmerica's Amended

Complaint and the documents incorporated by reference therein.  See *Kinsey v. New York Times

Co.*, 991 F.3d 171, 174 (2d Cir. 2021).[2]  The Court assumes these facts are true for the purpose of

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

[2] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation
marks, and ellipses, unless otherwise indicated.

adjudicating this motion to dismiss.  *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).  The Court construes these facts in the light most favorable to TufAmerica as the non-moving party.  *See id.*

TufAmerica "is owner of all rights in and to the musical composition entitled 'Impeach the President,' and holds a U.S. Copyright Registration in connection with that musical composition and sound recording of the composition."  Am. Compl. ¶ 7.  "'Impeach the President' was created and published in 1973."  Pl.'s Mem. L. Opp'n Def.'s Mot. to Dismiss ("Pl.'s Mem.") at 2, ECF No. 55.  The song was performed by The Honey Drippers.  Copyright Registration, ECF No. 36-1.  TufAmerica registered the song with the United States Copyright Office in 1991.  Pl.'s Mem. at 2.

Universal "is the music publisher of the musical composition entitled 'Real Love,'" which "was recorded by Mary J. Blige for UMG Recordings."  Am. Compl. ¶ 11.  "'Real Love' sampled drum sounds and copied the corresponding compositional elements from" a song called "Top Billin,'" which was recorded by a group called Audio Two.  *See id.* ¶¶ 12-13.  "Top Billin,'" in turn, "sampled those same drum sounds and copied those same corresponding compositional elements from 'Impeach the President.'"  *Id.* ¶ 13.  Based on modifications "Real Love" made to the drum sounds in "Top Billin,'" TufAmerica alleges that "'Real Love' . . . not only incorporates the drum sounds and corresponding compositional from 'Impeach the President' that were used in 'Top Billin'' but modifies 'Top Billin'' in a manner that brings 'Real Love' closer, musicologically, to 'Impeach the President.'"  *Id.* ¶ 20.  The Amended Complaint contains a transcription comparing drumbeats in two segments of "Impeach the President" and "Real Love," purporting to identify certain "identical drum rhythms."  *Id.*  The two segments in question each amount to less than one second of the respective compositions.  *See* Def.'s Mot. to Dismiss ("Def.'s Mem.") at 15, ECF No. 47.

2

Based on the foregoing, TufAmerica brings claims for copyright infringement on the basis on Universal "incorporat[ing] uncleared samples and corresponding compositional elements from the musical composition 'Impeach the President' into the musical composition 'Real Love.'" Am. Compl. ¶ 27. TufAmerica also seeks a declaratory judgment "that it is the owner of all rights in and to the musical composition 'Impeach the President,' and a declaration that Defendant's ongoing exploitation of the musical composition . . . constitutes copyright infringement." *Id.* ¶ 48. Finally, TufAmerica seeks "preliminary and permanent injunctive relief enjoining and restraining Defendant, and anyone acting at its direction or under its control, from infringing Plaintiff's copyright in the musical composition 'Impeach the President.'" *Id.* ¶ 59.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

**I.    Counts Two (Declaratory Judgment) and Three (Injunctive Relief)**

The Amended Complaint contains three causes of action: one for copyright infringement (Count I), one for declaratory judgment (Count II), and one for injunctive relief (Count III). Am. Comp. ¶¶ 23-59. At the outset, the Court notes that neither a declaratory judgment nor injunctive relief are independent causes of action. *See, e.g.*, *Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 474 (S.D.N.Y. 2021) ("A request for relief in the form of a declaratory judgment does not

3

constitute an independent cause of action." (citing *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)); *U.S. Bank Nat'l Assn. v. Mattone*, 769 F. Supp. 3d 298, 316 (S.D.N.Y. 2025) ("An injunction (whether preliminary or final) is a form of relief, not an independent cause of action."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgment and injunctions are remedies, not causes of action.").  Therefore, the Court dismisses Counts II and III of the Amended Complaint to the extent that they are pled as independent causes of action.  The Court construes these causes of action as requests for declaratory judgment and injunctive relief in connection with Count I of the Amended Complaint—TufAmerica's copyright infringement claim.  *See Cisco Systems, Inc.*, 557 F. Supp. 3d at 747-74; *Mattone*, 769 F. Supp. 3d at 316 n.12 (citing *Chiste*, 756 F. Supp. 2d at 407).

## II.    Count I (Copyright Infringement)

### A.    Legal Standard

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Neither party disputes that TufAmerica owns the copyright for "Impeach the President," so "the Court's inquiry will turn on the second prong of the prima facie requirement," *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 595 (S.D.N.Y. 2013).  Proving that Universal is liable for "copying the constituent elements of ["Impeach the President"] that are original" requires TufAmerica to "demonstrate that: (1) [Universal] has actually copied [its] work; *and* (2) the copying is illegal because a substantial similarity exists between the ["Real Love"] and the protectable elements of ["Impeach the President"]."  *Abdin v. CBS Broadcasting Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (emphasis in original).

4

Universal appears to concede that the Amended Complaint sufficiently pleads that "Real Love" copied "Impeach the President."   In its Memorandum of Law supporting its Motion to Dismiss, Universal does not dispute this point, focusing instead whether there is substantial similarity between the two songs.   *See* Def.'s Mem. at 8-13.   The Motion to Dismiss, therefore, turns on that issue.

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same."   *Abdin*, 971 F.3d at 66.[3]   Courts apply this test—called the "ordinary observer test"—by asking "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."   *Gray v. Paramount Global*, No. 25 Civ. 3484, 2025 WL 2268046, at *6 (S.D.N.Y. Aug. 8, 2025) (quoting *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 66 (2d Cir. 2010)).   "In the context of music plagiarism, the Second Circuit has described this ordinary observer test as requiring proof that 'defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.'"   *Pyatt v. Raymond*, No. 10 Civ. 8764,

---

[3] The substantial similarity test is "used in most copyright infringement cases."   *Diamond*, 968 F. Supp. 2d at 596.   However, in a copyright infringement case "where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure," courts analyze the plaintiff's claim by evaluating the works' "fragmented literal similarity."   *Id.* at 597; *see also Williams v. Broadus*, No. 99 Civ. 10957, 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001) ("Fragmented literal similarity exists where . . . parts of the pre-existing work are copied, in this case note for note, in the new work.").   In this case, TufAmerica does not allege that "Real Love" copies all or a portion of "Impeach the President" exactly, nor does it respond (or object) to Universal's argument that the ordinary observer test should be used to evaluate its copyright infringement claim.   The Court therefore uses the ordinary observer test to evaluate the substantial similarity of "Impeach the President" and "Real Love."   *See Richards v. Warner Music Group*, No. 22 Civ. 6200, 2024 WL 4307994, at *4 (S.D.N.Y. Sept. 26, 2024) (noting "that a party's failure to address an issue in response to a Rule 12(b)(6) motion amunts to a concession or waiver of the argument").

2011 WL 2078531, at *4 (S.D.N.Y. May 19, 2011). "This analysis looks to the protectable elements of the work as a whole, rather than to any dissected portion thereof." *Diamond*, 968 F. Supp. 2d at 596; *see also Pyatt*, 2011 WL 2078531, at *5 ("[T]he Court is not required to dissect the works to compare only those elements which are themselves copyrightable. Rather, the Court is guided by comparing the [work's] total concept and overall feel with that of the allegedly infringed work as instructed by our good eyes and common sense.").

"District courts in this circuit may evaluate a question of substantial similarity at the motion to dismiss stage under Rule 12(b)(6)." *McDonald v. West*, 138 F.Supp.3d 448, 454 (S.D.N.Y. 2015) (citing *Peter F. Gaito*, 602 F.3d at 65). "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual or aural comparison of the works.'" *Diamond*, 968 F. Supp. 2d at 595 (citing *Peter F. Gaito*, 602 F.3d at 64). "If, in making that evaluation, the district court determines that the two works are not substantially similar as a matter of law, the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief." *Id.*

Having closely reviewed the parties' papers and media incorporated by reference therein,[4] and having "examin[ed] the 'total concept and feel' of the two songs with 'good eyes and common sense,'" *Pyatt*, 2011 WL 2078531, at *9, it is clear to the Court that "Impeach the President" and "Real Love" are not substantially similar such that TufAmerica's copyright infringement claim

---

[4] In support of its Motion to Dismiss, Universal submitted several exhibits, including audio files of "Impeach the President," ECF No. 49-1, and "Real Love," ECF No. 49-2. "The Court conside[ed] these audio files because the two works at issue 'themselves supersede and control' and were relied upon by plaintiff when crafting the complaint." *Guity v. Santos*, No. 18 Civ. 10387, 2019 WL 6619217, at *2 (S.D.N.Y. Dec. 5, 2019) (quoting *Peter F. Gaito*, 602 F.3d at 64). Moreover, "[c]ourts in this district regularly consider audio files in th[e] context" of adjudicating motions to dismiss copyright infringement cases where the alleged infringement concerns music. *Diamond*, 968 F. Supp. 2d at 595.

can survive the Motion to Dismiss. The songs do not sound the same;[5] a lay listener would not recognize Real Love as "having been appropriated from" Impeach the President. *See Gray*, 2025 WL 2268046, at *6 (quoting *Peter F. Gaito*, 602 F.3d at 67). "Impeach the President" is a protest song from the 1970s that fits squarely within the soul/funk genre. "Real Love," by contrast, is a hip-hop soul song about heartbreak, not politics. *See Pyatt*, 2011 WL 2078531 at *9 (contrasting the plaintiff's song, which "takes strong influence from Jamaican dancehall and hip hop, but it does not fall squarely into either category," and the defendant's song, which "is R & B with unmistakable Motown influences," and further noting "that each song addresses a different type of relationship"), *aff'd*, 462 F. App'x 22 (2d Cir. 2012), *as amended* (Feb. 9, 2012). "Impeach the President" is sung by a group of men performed in a call-and-response style, and prominently features horns and guitar, while "Real Love" is sung by a woman, and is driven by piano and drums. *See id.* (contrasting the plaintiff's song, "a call and response between a male and a female vocalist . . . styled as a conversation between two individuals," and the defendant's song, which features "a sole lead vocalist . . . accompanied by various back-up singers," and "is a monologue with a narrative in the first person."). And TufAmerica does not allege any similarities between the two songs in terms of their respective melodies or lyrics. *See Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066, 1082 (2d Cir. 2024) ("Neither the melody nor the lyrics of *Thinking Out Loud* bears any resemblance to those in *Let's Get It On*."), *cert. denied*, No. 24-981, 2025 WL 1678986 (U.S. June 16, 2025).

Overall "the musical motifs are extremely dissimilar," and "the overall musical impression of each song is also different." *Pyatt*, 2011 WL 2078531, at *9. Any purported similarities in certain drum beats, *see* Pl. Opp. at 4, cannot be discerned due to the songs' qualitatively different

---

[5] *Compare* THE HONEYDRIPPERS, Impeach the President (Spotify, Tuff City Records June 1, 1973) *with* MARY J. BLIGE, Real Love (Spotify, Uptown Records July 28, 1992).

sounds.  "Only substantial similarity—not any similarity—suffices. And similarity depends on context . . . . So while a similar chord progression and harmonic rhythm may create a similar sound and feel, that is not enough to show substantial similarity." *Structured Asset Sales, LLC*, 120 F.4th at 1081-82. In sum, "[t]he songs are lyrically and musically distinct," so TufAmerica's copyright infringement "claim fail[s] the ordinary observer test." *Pyatt v. Raymond*, 462 F.App'x 22, 24 (2d Cir. 2012).

TufAmerica's counter-arguments are either incognizable or unpersuasive.  In its Opposition, TufAmerica cites to a declaration submitted as an exhibit to its brief, which it claims demonstrates the compositional similarities between "Impeach the President," "Top Billin'," and "Real Love."  *See* Pl.'s Opp'n at 5-8 (citing and quoting from Decl. of Evan Lustig, ECF No. 55-1).  But "[t]he facts newly alleged in plaintiff's opposition brief and the attached exhibits were neither incorporated by reference into the complaint nor relied upon by plaintiff when crafting the complaint," *Guity v. Santos*, No. 18 Civ. 10387, 2019 WL 6619217, at *2 (S.D.N.Y. Dec. 5, 2019), so the Court declines to consider them in adjudicating the pending Motion.  *See, e.g.*, *Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021) ("The Court declines to take these assertions into account because new facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered in deciding a motion to dismiss.").  In any event, "the Court is not required to dissect the works" in this manner.  *Pyatt*, 2011 WL 2078531, at *5.  Instead, the Court need only "compar[e] the contested design's 'total concept and overall feel' with that of the allegedly infringed work' as instructed by our 'good eyes and common sense.'"  *Diamond*, 968 F. Supp. 2d at 596-97 (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338

8

F.3d 127, 133 (2d Cir.2003) and *Hamil Am. Inc. v. GFI,* 193 F.3d 92, 102 (2d Cir. 1999)).  As

explained above, the Court has done so and concludes that the songs are not substantially similar.[6]

_____

[6] To the extent the declaration TufAmerica submitted as an exhibit to its Opposition could be interpreted to support a claim that "Real Love" "copies a portion of ["Impeach the President"] exactly or nearly exactly, without appropriating ["Impeach the President's"] overall essence or structure," *Diamond*, 968 F. Supp. 2d at 597, such that the fragmented literal similarity test applies, this argument fails procedurally because it was not raised, *see supra* note 3, and also on the merits. TufAmerica claims that "Real Love" "samples the drum sounds and corresponding compositional elements from 'Top Billin'' with limited modifications," Am. Compl. ¶ 18, and that these modifications "bring[] 'Real Love' closer, musicologically, to 'Impeach the President,'" *id.* ¶ 20. Setting aside that TufAmerica's (hand drawn) notations on both songs' scores, which purports to show similarities in the songs' drum sounds, seems to, in fact, show that the songs' compositional elements are *dissimilar, see* Def.'s Mem. at 9, the bigger issue with TufAmerica's argument is that it does not explain how "the sample" of "Impeach the President" in "Real Love" "is quantitatively and qualitatively important to ["Impeach the President"] such that the fragmented similarity becomes sufficiently substantial for the use to become an infringement," *Diamond*, 968 F. Supp. 2d at 598.

"When using the fragmented literal similarity test to "determin[e] substantial similarity, a court considers whether the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred." *Id.* TufAmerica makes no argument about the qualitative significance of the drum beat in "Impeach the President." Moreover, even if the sampled drum sound were qualitatively significant to "Impeach the President," its use in "Real Love" is not quantitatively sufficient to support the TufAmerica's copyright infringement claim.  Assuming that "Real Love" copies the drum sounds from "Impeach the President" "exactly or nearly exactly" in the way TufAmerica appears to claim, such copying "amount[s] to less than 1 second of the composition . . . of the entire 'Impeach the President' track," Def.'s Reply Further Supp. Mot. Dismiss at 3, ECF No. 63, which is "3 minutes and 58.561 seconds long," Def.'s mem. at 15.  TufAmerica does not dispute this point, first raised by Universal in its opening brief.  *See id.*  Courts applying the fragmented literal similarity test to determine substantial similarity have found that such a brief use of copied material is *de minimis* in the copyright context.  *See, e.g., TufAmerica, Inc. v. WB Music Corp.*, 67 F. Supp. 3d 590, 595-96 (holding that an alleged sample that lasts "only a fraction of a second" was de minimis); *Diamond*, 968 F. Supp. 2d at 605 ("Quantitatively, the sample consists of a three-second drumbeat played once at the beginning of the song and constitutes at most three seconds of the 5:59 minute long song."); *Newton v. Diamond*, 388 F.3d 1189, 1195-96 (9th Cir. 2004) (holding that a "segment [that] lasts six seconds and is roughly two percent of the four-and-a-half-minute . . . sound recording" was not quantitatively significant); *cf. Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) ("In determining whether or not the allegedly infringing work falls below the quantitative threshold for substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied.").  So too here.  The allegedly sampled drum sounds from "Impeach the President" that appear in "Real Love" are not quantitively significant enough to establish substantial similarity under the fragmented literal similarity test.  Any such copying is *de minimis*, and cannot sustain TufAmerica's copyright infringement claim.

And TufAmerica's other cognizable arguments miss the mark.  For example, Section III of TufAmerica's Opposition concerns "the scope of copyright protections for musical compositions" as compared to "the scope of protection for sound recordings of the same musical composition." Pl.'s Mem. at 8-11.  But the issue before the Court is not whether copyright protection for musical compositions and sound recordings are coextensive.  Instead, the issue is whether, in its copyright infringement claim based on musical composition, *see* Am. Compl. ¶¶ 23-34, TufAmerica can show that "Impeach the President" is "substantially similar" to "Real Love."  As explained *supra*, it cannot.

Because TufAmerica's copyright infringement claim is dismissed, the Court need not reach its requests for declaratory judgment and injunctive relief.

### CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss is **GRANTED**.  Under Rule 15, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). That said, courts may deny leave to amend in cases of futility.  *See, e.g.*, *Foman v. Davis,* 371 U.S. 178, 182 (1962).  "Futility arises when a proposed amended complaint could not withstand a motion to dismiss."  *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024).  Here, amendment would be futile because TufAmerica cannot plead facts sufficient to establish the "substantial similarity" between "Impeach the President" and "Real Love."  Therefore, this case is **DISMISSED WITH PREJUDICE**.

10

The Clerk of Court is respectfully requested to terminate ECF Nos. 25 and 46.  The Clerk of Court is also directed to enter judgment and terminate this case.

SO ORDERED.

Dated:  September 23, 2025

     New York, New York

 

DALE E. HO

United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
TUFAMERICA, INC.,

                                Plaintiff,

                -against-                                    24 **CIVIL** 2585 (DEH)

                                                            **JUDGMENT**

UNIVERSAL MUSIC PUBLISHING, INC,

                                Defendant.
----------------------------------------------------------------X

      It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Opinion and Order dated September 23, 2025, Defendant's Motion to

Dismiss is GRANTED. Under Rule 15, "[t]he court should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2). That said, courts may deny leave to amend in cases of futility.

See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962). "Futility arises when a proposed amended

complaint could not withstand a motion to dismiss." Singh v. Deloitte LLP, 123 F.4th 88, 93 (2d

Cir. 2024). Here, amendment would be futile because TufAmerica cannot plead facts sufficient

to establish the "substantial similarity" between "Impeach the President" and "Real Love."

Therefore, this case is DISMISSED WITH PREJUDICE; accordingly, the case is closed.

**Dated:**  New York, New York

     September 23, 2025

                                        **TAMMI M. HELLWIG**
                                        _____
                                               **Clerk of Court**

                    **BY:**   _____
                                               **Deputy Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- **X**
TUFAMERICA, INC.,                                    :
                                                     :
              Plaintiff,                             :
                                                     :    Index No. 24-cv-2585-DEH
          v.                                         :
                                                     :
UNIVERSAL MUSIC PUBLISHING, INC.,                    :    **NOTICE OF APPEAL**
                                                     :
              Defendant.                             :
-------------------------------------------------------- **X**

      Notice is hereby given that Plaintiff TufAmerica, Inc. hereby appeals to the United States

Court of Appeals for the Second Circuit from, *inter alia*, the September 23, 2025 Opinion and

Order (ECF 71) and September 23, 2025 Judgment (ECF 72).[1]

Dated: New York, New York                    Respectfully submitted,
       September 29, 2025

     /s/ Hillel I. Parness
     Hillel I. Parness
     PARNESS LAW FIRM, PLLC
     136 Madison Ave., 6th Floor
     New York, New York  10016
     212-447-5299
     hip@hiplaw.com
     *Attorneys for Plaintiff TufAmerica, Inc.*

---

[1] "The notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal."  Fed. R. App. P. 3(c)(4).